22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

NO.                                                    DIVISION: "      "

DARNAY THIBODAUX

versus

KEVIN HIDALGO, CUSTODIAN, LOUISIANA DEPARTMENT OF CORRECTIONS

FILED: _____    _____
                                        DEPUTY CLERK

### PETITION FOR POST CONVICTION RELIEF

NOW INTO COURT, through undersigned counsel, comes Petitioner, **Darnay Thibodaux,** who, pursuant to Louisiana Code of Criminal Procedure Articles 926, *et seq.*, hereby submits the attached "Uniform Application for Post Conviction Relief", which application is incorporated as if copied herein *in extenso*, and requests that the relief contained therein be granted, and that undersigned counsel herein be enrolled as counsel of record for same.

WHEREFORE, Petitioner, **Darnay Thibodaux,** prays that defendant, **Kevin Hildalgo,** be duly cited to appear and answer this Petition for Post Conviction Relief, and be required to answer same, and that after all due proceedings are had, that relief requested in the attached "Uniform Application for Post Conviction Relief" be granted.  Petitioner further requests that undersigned counsel be enrolled as counsel of record in the above captioned matter.

Respectfully Submitted;

_____
CLAIBORNE W. BROWN (25594)
222 N. Vermont Street, Suite I
Covington, LA 70433
Telephone:  (985) 246-7063
Facsimile:  (985) 246-7080
*cwbrown@cwbrownlaw.com*

HC 12

**22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY**

**STATE OF LOUISIANA**

NO.                                                    DIVISION: "    "

**DARNAY THIBODAUX**

versus

**KEVIN HIDALGO, CUSTODIAN, LOUISIANA DEPARTMENT OF CORRECTIONS**

FILED: _____    _____
                                                                    **DEPUTY CLERK**

**O R D E R**

IT IS HEREBY ORDERED, that the name of Claiborne W. Brown, be entered as counsel

of record for the Petitioner, Darnay Thibodaux, in the above captioned matter.

Covington, Louisiana, this _____ day of _____, 2016.


_____
                                                    **JUDGE**

**PLEASE SERVE:**

**KEVIN HIDALGO:**
**District Administrator, Louisiana Department of Corrections**
**Division of Probation and Parole**
**1712 Columbia Street**
**Covington, LA 70434**

**THE HON. WARREN L. MONTGOMERY**
**District Attorney, 22nd Judicial District, State of Louisiana**
**701 N. Columbia Street**
**Covington, LA 70433**

CWB 899.0003

**APPENDIX "A" -- UNIFORM APPLICATION FOR POST-CONVICTION RELIEF**

## UNIFORM APPLICATION FOR POST-CONVICTION RELIEF

DARNAY THIBODAUX
_____
NAME OF PETITIONER

No. _____
(to be filled in by the clerk)

436792
_____
PRISON NUMBER

22nd____ JUDICIAL DISTRICT

1712 N. Columbia St.,
_____
Covington, LA 70434

PARISH OF  ST. TAMMANY_____

PLACE OF CONFINEMENT          STATE OF LOUISIANA

vs.

 KEVIN HIDALGO  District Administrator_____
CUSTODIAN (Warden, Superintendent, Jailor,
  or authorized person having custody of
  petitioner)
  Please Serve CUSTODIAN and ___, DISTRICT ATTORNEY, 22nd__ JUDICIAL DISTRICT, STATE OF
LOUISIANA.

### INSTRUCTIONS--READ CAREFULLY

(1) This petition must be legibly written or typed, signed by the petitioner and sworn to before a notary public or institutional officer authorized to administer an oath. Any false statement of a material fact may serve as the basis for a criminal prosecution. All questions must be answered concisely in the proper space on the form. Additional pages are not permitted except with respect to the facts which you rely upon to support your claims for relief. No citation of authorities or legal arguments are necessary.

(2) Only one judgment may be challenged in a single petition except that convictions on multiple counts of a single indictment or information may be challenged in one petition.

(3) YOU MUST INCLUDE ALL CLAIMS FOR RELIEF AND ALL FACTS SUPPORTING SUCH CLAIMS IN THE PETITION.

(4) When the petition is completed, the original must be mailed to the clerk of the district court in the parish where you were convicted and sentenced.

(5) You must attach official documentation showing your sentence and the crime for which you have been convicted. You may obtain that documentation from the clerk of court of the district court of the parish where you were sentenced or from the institution where you are confined. If that documentation is not attached, you must allege what steps were taken to obtain it.

(6) Petitions which do not conform to these instructions will be returned with a notation as to the deficiency.

# PETITION

1. Name and location of court which entered the judgment of conviction challenged

   22nd Judicial District Court, Parish of St. Tammany; 701 Columbia Street, Covington, LA

2. Date of judgment of conviction  December 17, 2014

3. Length of sentence  10 years (5 suspended)

4. Nature of offense involved (all counts)  La. R.S. 14:94.3 Exploitation of the Infirmed

5. What was your plea?  (check one)

   (a) Not guilty ( )

   (b) Guilty (X)

   (c) Not guilty and not guilty by reason of insanity ( )

   If you entered a guilty plea to one or more counts and not guilty to other counts, give details

   _____

   (d) Name and address of the lawyer representing you at your plea (if you had no lawyer, please
   indicate)
   Roy K. Burns, Jr.; 335 N. Hampshire Street; Covington, LA 70433
   Claiborne W. Brown; 222 N. Vermont Street, Suite I; Covington, LA 70433

   (e) Was the lawyer appointed ( ) or hired (X)? (check one)

6. Kind of trial:  (check one)

   (a) Jury (X)

   (b) Judge only ( )

7. (a) Name and address of the lawyer representing you at your trial:
   Roy K. Burns, Jr.; 335 New Hampshire Street; Covington, LA 70433
   Claiborne W. Brown; 222 N. Vermont Street, Suite I; Covington, LA 70433

   (b) Was the lawyer appointed ( ) or hired (X)? (check one)

8. Did you testify at the trial?   Yes ( ) No (X)

9. (a) Give the name and address of the lawyer who represented you at sentencing for the conviction being

   attacked herein.  Claiborne W. Brown; 222 N. Vermont Street, Suite I; Covington, LA 70433

   (b) Was the lawyer appointed ( ) or hired (X)?  (check one)

10. Did you appeal from the judgment of conviction?   Yes (X) No ( )

11. If you did appeal, give the following information:

    (a) Citation, docket number, and date of written opinion by the Supreme Court (if known)

    State v. Thibodaux; No. 2015 KK 0491; May 15, 2015

    (b) Name and address of lawyer representing you on appeal:

Claiborne W. Brown; 222 N. Vermont Street, Suite I; Covington, LA 70433

(c) Was the lawyer appointed ( ) or hired (X)?  (check one)

12. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any application for post-conviction relief with respect to this judgment in any state or federal court?   Yes ( ) No (X)

13. If your answer to 12 is "yes", give the following information:

(a)(1) Name of court _____

(2) Nature of proceeding _____

(3) Claims raised _____

(4) Did you receive an evidentiary hearing on your application?   Yes ( ) No ( )

(5) Was relief granted or denied? _____

(6) Date of disposition _____

(7) Citation of opinion (if known) _____

(8) Name and address of lawyer representing you [if none, so state]:

_____

(9) Was the lawyer appointed ( ) or hired ( )?  (check one)

(b) As to any second application give the same information:

(1) Name of court _____

(2) Nature of proceeding _____

(3) Claims raised _____

(4) Did you receive an evidentiary hearing on your application?

Yes ( ) No ( )

(5) Was relief granted or denied? _____

(6) Date of disposition _____

(7) Citation of opinion (if known) _____

(8) Name and address of lawyer representing you [if none, so state]:

_____

(9) Was the lawyer appointed ( ) or hired ( )?  (check one)

(c) Have you filed any other applications for post-conviction relief with respect to the challenged conviction?   Yes ( ) No ( )

If "yes", set forth the details (as above) on separate paper and attach.

(d) Did you appeal or seek writs of review from the denial of any post-conviction application?

(1) First petition, etc.  Yes ( ) No ( )

(2) Second petition, etc.  Yes ( ) No ( )

(e) If you did not appeal or seek writs from the denial of any post-conviction application, explain briefly why you did not:

_____

(f) Name of the lawyer who represented you on appeal from the denial of any post-conviction application [if none, so state]:

(1) First petition _____

(2) Second petition _____

## CLAIMS FOR RELIEF

State concisely facts supporting your claim that you are being held unlawfully.  If necessary, you may attach extra pages stating additional claims and supporting facts.  Do not argue points of law.

The following is a list of those claims, and only those claims, that may provide you with grounds for relief:

(1) Your conviction was obtained in violation of the constitution of the United States or the State of Louisiana;

(2) The court exceeded its jurisdiction;

(3) Your conviction or sentence subjected you to double jeopardy;

(4) The limitations on prosecution had expired;

(5) The statute creating the offense for which you were convicted and sentenced is unconstitutional;

(6) The conviction or sentence constitute the ex post facto application of law in violation of the Constitution of the United States or the State of Louisiana.

A REMINDER:  THE ABOVE LIST CONTAINS ONLY THOSE CLAIMS THAT YOU MAY RAISE FOR RELIEF.  YOU MUST SET FORTH ALL OF YOUR COMPLAINTS ABOUT YOUR CONVICTION IN THIS APPLICATION.  YOU MAY BE BARRED FROM PRESENTING ADDITIONAL CLAIMS AT A LATER DATE.  Remember that you must state the FACTS upon which your complaints about your conviction are based.  MERE CONCLUSORY ALLEGATIONS WILL NOT SUFFICE.

## REPETITIVE APPLICATIONS

The above claims may not provide grounds for relief if any of the following applies to you:

(1) Unless required in the interest of justice, any claim for relief which you fully litigated in an appeal shall not be considered.

(2) Any claim of which you had knowledge and inexcusably failed to raise in the proceeding leading to conviction may be denied by the court.

(3) Any claim which you raised in the trial court and inexcusably failed to pursue on appeal may be denied by the court.

(4) A successive application may be dismissed if it fails to raise a new or different claim.

(5) A successive application may be dismissed if it raises a new or different claim that was inexcusably

omitted from a prior application.

This application will provide space for you to explain the reasons why you failed to raise your claims in the proceedings leading to conviction, or failed to urge the claim on appeal, or failed to include the claim in a prior application.

## CLAIM I

Claim:   Conviction obtained in violation of the U.S. Constitution and Louisiana Constitution.

(a) Supporting FACTS (tell your story briefly without citing cases or law):
   [see attached]

(b) List names and addresses of witnesses who could testify in support of your claim.  If you cannot do so, explain why:   [see attached]

(c) If you failed to raise this ground in the trial court prior to conviction, on appeal or in a prior application, explain why: _____ [see attached]

## CLAIM II

Claim:   Conviction obtained in violation of the U.S. Constitution and Louisiana Constitution.

(a) Supporting FACTS (tell your story briefly without citing cases or law):
   [see attached]

(b) List names and addresses of witnesses who could testify in support of your claim.  If you cannot do so, explain why:   [see attached]

(c) If you failed to raise this ground in the trial court prior to conviction, on appeal or in a prior application, explain why: _____ [see attached]

## CLAIM III

Claim:

(a) Supporting FACTS (tell your story briefly without citing cases or law):

(b) List names and addresses of witnesses who could testify in support of your claim.  If you cannot do so, explain why:

(c) If you failed to raise this ground in the trial court prior to conviction, on appeal or in a prior application, explain why: _____

You may attach additional pages setting forth the required information (above) if additional claims are asserted.
   A. Do you have in a state or federal court any petition or appeal now pending as to the judgment challenged?

Yes [ ] No [X] If "yes", name the court

B. Do you have any future sentence to serve after you complete the sentence imposed by the judgment

challenged?   Yes [ ] No [X]

(1) If so, give name and location of court which imposed sentence to be served in the future:

_____

(2) Give date and length of sentence to be served in the future:

_____

(3) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?   Yes [ ] No [ ]

C. If a copy of the court order sentencing you to custody is not attached, explain why.

_____

WHEREFORE, petitioner prays that the Court grant petitioner relief to which he may be entitled.

_____
Signature of Petitioner

26 July 2016
Day/Month/Year


## APPLICATION FOR APPOINTMENT OF COUNSEL

I am unable to employ counsel to represent me in this matter because I have no assets or funds except:

_____

(Write "None" above if you have nothing;  otherwise, list your assets including funds in prison accounts.)

_____

Signature of Petitioner

## AFFIDAVIT

STATE OF LOUISIANA

PARISH OF _ST. TAMMANY_

DARNAY THIBODAUX _____, being first duly sworn says that she has read the
(Name of Petitioner)
foregoing application for post-conviction relief and swears or affirms that all of the information therein is true and correct. ~~He further swears or affirms that he is unable to employ counsel because he has no assets or funds which could be used to hire an attorney except as listed above.~~   [Delete reference to appointment of counsel if inapplicable.]

_____
Signature of Petitioner

SWORN TO AND SUBSCRIBED before me this 26th day of July , 19 2016.

_____
Notary Public or other person authorized to administer an oath.
  Claiborne W. Brown, La. Bar No. 25594

## CLAIM I

**A) Supporting Facts:**

In July of 2010, Petitioner and her husband, Calvin Thibodaux, met Mr. Sidney Dobronich ("Mr. Dobronich"), when they rented property next door to Mr. Dobronich's property.  Mr. Dobronich was an elderly man who lived alone in a single family trailer on his property.   Mr. Dobronich was not married and did not have any children or grandchildren. From 2011 through 2013, Claimant became friends with Mr. Dobronich and also began performing care-giving services for Mr. Dobronich.

Mr. Dobronich had a sizable estate which he maintained in an investment account and several bank accounts.  His primary concern was to be permitted to live out his life at his home on Nell Drive in Sun, Louisiana and to not be placed in a nursing home.  Consistent with this concern, from around 2009 through 2011, Mr. Dobronich attempted to form a relationship with his step grandson, Mr. Craig Burdine whereby he transferred control of all of his assets to Mr. Burdine and moved to the state of Washington to live with Mr. Burdine in return for Mr. Burdine providing care for him and allowing him to not be placed in a nursing facility.  During that time, Mr. Dobronich purchased real estate for Mr. Burdine in Washington State, as well as the property located at 20127 Nell Drive, along with purchasing a trailer to be placed on the property. The arrangement with Mr. Burdine failed, and Mr. Dobronich returned to Nell Drive and removed Mr. Burdine's control of his assets.   At the time Mr. Dobronich reacquired complete control of his assets in April of 2011, he had spent well over $300,000 of his estate during the attempted arrangement with Mr. Burdine.

Throughout the time that Petitioner was performing care-giving services to Mr. Dobronich, beginning in the Summer of 2012 through February of 2013, Mr. Dobronich attempted to form the same relationship with the Thibodauxs that he had previously attempted to form with Mr. Burdine.  Petitioner and Mr. Dobronich had several conversations whereby Mr. Dobronich expressed a strong desire not to be placed in a nursing home and to be allowed to live out his life at his home at 29127 Nell Drive, whereby Petitioner expressed to Mr. Dobronich her intention to continue to take care of Mr. Dobronich and not to allow him to be placed in a nursing home.   Petitioner and Mr. Dobronich also discussed Defendant and her husband developing and managing rental property with Mr. Dobronich's financial assistance, which

would include the property at Nell Drive, as well as other in the near vicinity.  Mr. Dobronich would then leave all of his assets to the Thibodauxs in his will.

In February of 2013, after suffering a heart attack for which Petitioner drove him to the hospital; Mr. Dobronich decided to enter into his previously discussed arrangement with the Thibodauxs.  Mr. Dobronich executed a statutory will and a power of attorney executed in favor of Petitioner, which provided Petitioner with access to Mr. Dobronich's finances.  From February through mid-March of 2013, Petitioner, at the specific direction of Mr. Dobronich, and with the use of Mr. Dobronich's power of attorney, engaged in several transactions in connection with their arrangement:   assets were moved from Mr. Dobronich's investment account to purchase undeveloped or dilapidated real estate property within the immediate vicinity of Mr. Dobronich's and the Thibodaux's home, as well as to purchase several items necessary to develop and renovate such property.   Mr. Dobronich also authorized the Thibodauxs to purchase vehicles and other personal items.   From February through March of 2013, Mr. Dobronich specifically authorized over 30 transactions, which included purchases, cash withdrawals and transfers, totaling over $334,000.

On March 12, 2013, Mr. Dobronich suffered a severely fractured hip from a fall at his home.  Requiring substantial rehabilitation, but not wanting to be placed in a nursing facility during his recovery, Mr. Dobronich and Petitioner decided to purchase a handicapped accessible camper, which would be placed adjoining the Thibodaux's residence to aid Petitioner in assisting with his recovery.

On or around March of 2013, two of Mr. Dobronich's nephews, George and Forest Dobronich ("the Nephews"), with the assistance of Mr. Burdine, discovered the expenditures made by Mr. Dobronich pursuant to his arrangement with the Thibodauxs.   The Nephews engaged Detective Stefan Montgomery of the St. Tammany Parish Sheriff's Office ("STPSO") to open a criminal investigation of the Petitioner for elder exploitation, which involved a search of Mr. Dobronich's financial records, interviews of Petitioner as well as representatives from various financial institutions.  Although Det. Montgomery was able to determine the true nature of the arrangement between Mr. Dobronich and the Thibodauxs and was specifically informed by Mr. Dobronich on March 21, 2013 of the nature of the arrangement and that all transactions were specifically authorized; Detective Montgomery assisted the Nephews in concealing Mr. Dobronich's assent to these transactions and in gaining physical control over Mr. Dobronich

through an illegally obtained power of attorney which the Nephews further used to obtain exclusive physical control over Mr. Dobronich.  These efforts by Det. Montgomery and the Nephews resulted in a criminal prosecution of Petitioner and her husband, *State v. Thibodaux*, No. 534840-1, 22nd J.D.C., Div. "C" for two counts of violations of La. R.S. 14:93.4, Exploitation of the Infirmed.  Due to involvement of a high ranking member of the St. Tammany Parish District Attorney's Office with the circumstances of the case (the illegally obtained power of attorney listed Mr. Leo Hemelt, Jr. as a witness thereto), the criminal matter was prosecuted by the Louisiana Department of Justice ("LaAg"), and particularly by Assistant Attorney General ("AAG") Jonathan Blake.

Using their illegally obtained power of attorney from Mr. Dobronich, the Nephews instituted a civil action, entitled, *Forest Dobronich and George Dobronich v. Darnay Thibodaux and Calvin Thibodaux*, No. 2013-11784, 22nd J.D.C., Div. "D", (hereinafter, "the Civil Revocation Action") to revoke several transactions and for return of assets.  Using Det. Montgomery's connections with the United States Secret Service ("USSS") as part of the USSS Financial Crimes Task Force, the Nephews and Det. Montgomery also leveraged a civil asset forfeiture proceeding, *United States v. 100,641.06, et al.*, No. 13-5566, USDC EDLa, Sect. "B", to seize assets and property known by Det. Montgomery to have been rightfully obtained with Mr. Dobronich's consent. The Nephews also admitted to the seizure and acquisition by both STPSO and USSS of at least $292,000 of the $334,000 that was expended by Mr. Dobronich via Petitioner pursuant to their arrangement.

During the pendency of the criminal investigation and the civil revocation action, and despite being under intense coercion and almost exclusive physical control of the Nephews, Mr. Dobronich had the opportunity to provide sworn testimony in two instances in which he attempted to state that all transactions performed by the Petitioner were specifically authorized and he did not want to prosecute the Petitioner or her husband.  The Nephews used their power of attorney to prevent not any further deposition testimony from Mr. Dobronich or even contact with anyone outside of the Nephews.  The Nephews also used their power of attorney to have Mr. Dobronich declared incompetent to testify by the Court in the civil revocation action, submitting to the Court medical reports of Dr. Paul Verrette ("the Verrette Reports") stating that Mr. Dobronich suffered from "dementia." Based on the Verrette Reports, the Court in the Civil Revocation Action issued a judgment declaring Mr. Dobronich incompetent to testify on August

27, 2013, and Petitioner was precluded from obtaining any potentially exculpatory testimony from Mr. Dobronich through his death on March 25, 2014.

Notwithstanding the death of Mr. Dobronich in March of 2014, in August of 2014; the Louisiana Department of Justice, which was handling the prosecution in the criminal case, procured expert testimony from Dr. Michelle Garriga regarding a forensic psychiatric analysis of Mr. Sidney Dobronich.   This expert testimony relied heavily upon the Verrette Reports and the statements of the Nephews and concluded that Mr. Dobronich suffered from Major Neurocognitive Disorder (Dementia) and lacked the capacity to consent to any of the transactions conducted within the last two years of his life, including between February and March of 2013 for which petitioner was being prosecuted.   Clearly, without this expert testimony, in light of the absence of Mr. Dobronich and the two instances of sworn testimony indicating that the transactions were authorized; the State of Louisiana would not have had legal sufficiency to bring the criminal prosecution against Petitioner or her husband.   More importantly, without Mr. Dobronich's availability; Petitioner was effectively required to rebut the State's evidence of the over 30 transactions of $334,000, conducted in less than one month's time with nothing but her own admittedly self serving testimony.

At around the same time that the State was procuring expert testimony regarding Mr. Dobronich's competence to authorize the transactions at issue, in August 2014, the nephews opened a succession of their uncle: *Succession of Dobronich*, No. 2014-30680, 22nd J.D.C., Div "I" ("the Succession")  In this Succession, the Nephews probated a hand written testament of Mr. Dobronich purporting to leave all of his property to his Nephews, and other nieces and nephews of Mr. Dobronich.  The hand written will was dated July 18, 2013, within two weeks of the date of the Verrette Reports declaring the diagnosis of dementia and the mental incapacity of Mr. Dobronich.  Additionally, the sworn descriptive list filed by the Nephews in connection with the successions proceedings, when compared to the evidence collected in Det. Montgomery's investigation of Mr. Dobronich's finances, reveal that the Nephews appropriated over $200,000 of Mr. Dobronich's estate during the time they had power of attorney over Mr. Dobronich's finances.  Further, the Nephews attempted to conceal this by improperly attributing those assets to the value of the claims in the Civil Revocation Action.

On November 7, 2014, Petitioner filed a Petition to Annul the July 18, 2014 testament. In that Petition to Annul, Petitioner herein explicitly raised the issue of Mr. Dobronich's mental

capacity to execute the July 18, 2013 hand written will based on the submission of the Verrette Reports to the Court in the Civil Revocation Action.   On November 10, 2014, AAG Blake tendered to Petitioner counsel, Mr. Roy Burns, what the State of Louisiana identified as *Brady* material regarding the July 18, 2013 purported testament of Mr. Dobronich, indicating at least its awareness of the Nephews attempt to probated a testament in direct contravention of its key piece of evidence against Petitioner.

Trial of the criminal matter was set for December 15, 2014.   On December 3, 2014, Petitioner's Counsel in this Petition filed a Motion to Enroll in the criminal matter with Mr. Burns and filed a Motion to Exclude the testimony of Dr. Garriga, based on a violation of Louisiana Rules of Evidence Rule 702 (*Daubert*).   Though not explicitly raised, the motion referenced the evidence of the Nephew's purported attempts to probate the July 18, 2013 hand written will.   On December 16, 2014, a hearing on the Petitioner's Motion to Exclude Expert Testimony was held, wherein the Court denied Petitioner's Motion.   Trial commenced on December 16, 2014.   As mentioned before, Petitioner was unduly penalized for Mr. Dobronich's lack of availability.   Not only was he not available for testimony, having been prevented from providing favorable testimony by the actions of the Nephews in preventing him from testifying and having him declared incompetent; but Petitioner was effectively forced to rebut the State's evidence of the over 30 transactions of $334,000, conducted in less than one month's time with nothing but her own self serving testimony, and under a prejudicial cloud of expert testimony as to Mr. Dobronich's lack of mental capacity.   Additionally, Petitioner had previously been convicted of a felony in 2001 for which the Stated threatened to file a multiple offender bill of information.

On December 17, 2014, Petitioner and her husband changed their pleas to guilty as charged. The prosecution, while agreeing to a sentence of probation for Petitioner's husband Calvin Thibodaux, insisted on a pre-sentence investigation as to Petitioner.   The Court set the sentencing hearing for January 29, 2015.

On January 9, 2015, Petitioner herein filed a Motion to Withdraw her guilty plea and to Dismiss the Indictment on the grounds that the Nephews, with the acquiescence and possible coordination with the State of Louisiana, deprived her of Mr. Dobronich's favorable testimony in violation of the Compulsory Process Clause of the 6th Amendment and the Due Process Clause

of the 5th and 14th Amendments to the United States Constitution.  The hearing on the Motions was set contemporaneously with the sentencing hearing on January 29, 2015.

From 17 December 2014 through January 29, 2015, the pre-sentence investigation was conducted on behalf of the Division of Probation and Parole ("PPO") by Parole Officer ("PO") Letitia Moore.  During the investigation, both the Nephews and Det. Montgomery provided information to PO Moore regarding the specific transactions occurring between February and March of 2013 and that the value of the transactions amounted to $334,000.  The Nephews and Det. Montgomery omitted to advise that the Nephew's obtained power of attorney over Mr. Dobronich on March 28, 2013 and that at least $292,000 of the purported $334,000 had been seized by state and Federal law enforcement or was in control of the Nephews via their power of attorney.  Nephew, Forest Dobronich specifically and falsely advised PO Moore that only "$70,000 to $100,000" of the $334,000 had been "recovered."  Additionally, PO Moore's investigation revealed only one unpaid medical bill, which was accrued during the time in which the Nephews had control over Mr. Dobronich through their power of attorney.

Prior to filing her motions with the court, Petitioner was interviewed by PO pursuant to the pre-sentence investigation.  PO Moore was specifically aware of the transactions contained in Det. Montgomery's investigation and proceeded to seek specific admissions of guilt with regards to each of the transactions made pursuant to Petitioner's arrangement with Mr. Dobronich.  Of considerable significance was the fact that the bill of information in the criminal matter contained two general counts of violations of La. R.S. 14:93.4 and did not contain detailed counts of specific transactions (i.e., the Petitioner's guilty pleas were not attributable to any specific transaction).  Also of considerable significance was that, at the time the pre-sentence investigation was conducted, all three civil actions, the Civil Revocation Action, the Successions Proceedings, and the Federal Civil Forfeiture were still pending.  In any event, Petitioner refused to admit to PO Moore of wrongfully appropriating any of Mr. Dobronich's property.

PO Moore submitted the PPO Pre-Sentence Investigation Report ("PSIR") to the District Court on the day of motions and sentencing, January 29, 2015.  The PSIR reflected a perceived lack of remorse on the part of Petitioner for refusing to "admit" that the specific transactions were wrongful.  The PSIR also falsely reflected that $230,000 to $260,000 was still "outstanding", that Petitioner spent Mr. Dobronich's money under the pretense of paying Mr.

Dobronich's medical bills, and that at least $1,000 of Mr. Dobronich's medical bills remained unpaid as a result of Petitioner's wrongful actions.

On January 29, 2015, the District Court denied the Motions to Withdraw Plea and to Dismiss the Indictment. The Court relied heavily upon the expert testimony and report of Dr. Garriga that Mr. Dobronich was incompetent and that he not have been permitted to testify on that basis. Sentencing followed. Consistent with the recommendations of the PSIR, the Court sentenced Defendant to 10 years in prison with 5 years suspended, and 5 years probation.

Petitioner filed her Application for Writ of Supervisory Review to the Louisiana First Circuit Court of Appeals on February 17, 2015, which application was denied on February 19, 2015. Petitioner filed her Application for Writ of Supervisory Review to the Louisiana Supreme Court on March 9, 2015, which application was denied on May 15, 2015.

Arguably, despite the legal arguments raised, given the discretion afforded to the District Court, the denial of writs could have been based on a finding that the District Court was within its discretion to find Mr. Dobronich incompetent as a potential witness throughout the pendency of the criminal prosecution up until his death, as there was no sworn testimony in the record to the contrary. Similarly, without sworn testimony; the State of Louisiana through the LaAg Office, argued in opposition to the Petitioner's Motions and Applications that the submission of the Garriga Report was did not constitute a knowing submission of false evidence and that the District Court's reliance on said report was within its discretion.

Subsequent to the District Court's rulings and sentence on January 29, 2015, on February 24, 2015, the Court in the Successions proceeding held a hearing on the petition to annul testament filed by Petitioner herein. Within that hearing, the proponents of the July 18, 2013 testament offered the sworn testimony of the Nephews, as well as Detective Stefan Montgomery of the St. Tammany Parish Sheriff's Office, that, at all times from February 2013 through his death in March of 2014, Mr. Dobronich was fully mentally competent. Additionally, upon attempting to introduce the Verrette Report, the critical evidence supporting the State's expert testimony against Petitioner, the Nephew's through their counsel, objected to the introduction of the report on the grounds that the Verrette Reports constituted unreliable hearsay. Pursuant to those occurrences, the Court in the successions proceedings accepted the testimony offered by the Nephews, sustained the hearsay objection as to the Verrette report, and issued a Judgment upholding Mr. Dobronich's execution of the July 18, 2013 hand written will.

On May 20, 2015, trial in the Civil Revocation Action was held.  At the conclusion of that trial, the Court held, in part, that all property subject to this *in Rem* proceeding was the property of the Nephews, as well as several other nieces and nephews of Mr. Dobronich. Significantly, the Court also held that the total value of the property at issue was $304,606.46 and there was no outstanding assets of the late Mr. Dobronich that had not been recovered and either returned or held by the State of Louisiana and the Federal Government.  That ruling was set forth in a written Judgment dated June 15, 2015.

On February 27, 2015, AAG Blake was apprised of the Court's February 24, 2015 ruling in the Succession Proceeding, and the specific sworn testimony of the Nephews disavowing the conclusions of the Verrette Report.  Notwithstanding this knowledge, on March 10, 2015, AAG Blake filed an opposition to Petitioner's Writ Application specifically noting the District Court's reliance on the knowingly false Garriga report.  Additionally, on September 21, 2015; the State of Louisiana filed a motion in the Criminal Matter seeking additional restitution from claimants herein.  Although AAG Blake was apprised of the existence of the June 15, 2015 Judgment on September 28, 2015, The LaAg's Office did not withdraw its motion until January 20, 2016, after which time it had been apprised of Petitioner's knowledge of the Nephew's misappropriation of approximately $200,000 of Mr. Dobronich's estate and Petitioner's intent to legitimately use that evidence to defend against the State's restitution motion.

Based on the totality of the evidence set forth, much of which was obtained after the fact, it is clear that both the Expert Report of Dr. Garriga regarding Mr. Dobronich's purported mental incompetency in February and March of 2013, and the January 29, 2015 Pre-Sentence Investigation Report averring the non-recovery of approximately $250,000 of Mr. Dobronich's assets, were patently false.  More disturbingly, the evidence overwhelmingly supports the conclusion that the Louisiana Department of Justice, as the prosecutor in the case, was not only aware that Garriga Report was patently false, but that it was submitted to the Court with the specific malicious intent to wrongfully benefit the Nephews of Mr. Dobronich in their attempt to acquire ownership of Mr. Dobronich's estate in the concurrent civil proceedings.  The false Garriga Report was critical for the prosecution of Petitioner, as the prosecution could not have been maintained against petitioner without it.  Likewise, the Pre-Sentence Investigation Report was instrumental not only in the unduly severe sentence imposed upon Petitioner, but also prejudiced the District Court's decision regarding her Motion to Withdraw her Guilty Plea.  Both

submissions violated Petitioner's Due Process right to be free from the knowing submission of false evidence in a criminal prosecution against her (which right not only confers a non-waivable duty upon the prosecutor not to knowingly offer false evidence, but an equally affirmative non-waivable duty to correct such an error when discovered). As such, the conviction and sentence against the Petitioner must be vacated.

**B) Names and Addresses of Witnesses Who Can Support Petitioner's Claim:**

Petitioner submits the following list of witnesses with potential favorable testimony in this matter:

1) Mr. Forest Dobronich
   1013 East St. Bernard
   Chalmette, LA 70043
   (competence of Mr. Dobronich; falsity of Garriga Report; falsity of Pre Sentence Investigation Report)

2) Det. Stefan Montgomery
   St. Tammany Parish Sheriff's Office
   2070 N. Collins Blvd., Bldg 1
   Covington, LA 70433
   (competence of Mr. Dobronich; falsity of Garriga Report; falsity of Pre Sentence Investigation Report)

3) PO Letitia Moore
   Louisiana Dep. Probation and Parole
   1712 N. Columbia St.
   Covington, LA 70434
   (Falsity of pre-sentence investigation report; State's knowledge of same)

4) Ms. Peggy G. Vallejo
   428 W. 21st St.
   Covington, LA 70433
   (competence of Mr. Dobronich; veracity of Verrette Reports)

5) Mr. Leo R. Hemelt, Jr.
   428 W. 21st St.
   Covington, LA 70433
   (competence of Mr. Dobronich)

6) Asst. Atty Gen. Jonathan D. Blake
   Louisiana Department of Justice
   1885 N. Third St.
   Baton Rouge, LA 70802
   (State's awareness of Nephew's testimony regarding veracity of Verrette Reports and expert testimony of Dr. Garriga)

7) The Hon. Peter J. Garcia
   22nd Judicial District Court, Div. "D"
   701 N. Columbia Street
   Covington, LA 70433
   (Nephews' assertion of mental incompetency of Mr. Dobronich and submission of Verrette Reports in Civil Revocation Action)

8) The Hon. Reginald T. Badeaux
   22nd Judicial District Court, Div. "I"
   701 N. Columbia Street

Covington, LA 70433
(Nephews' assertion of mental competency of Mr. Dobronich and objection to
veracity of Verrette Reports in Successions Proceeding)

**C) Reason for Not Raising this Specific Ground on Appeal:**

First and foremost, direct appeal of this conviction was not available, as the conviction

was obtained through a plea of guilty which Petitioner asserts was wrongfully obtained.

Additionally, Petitioner herein has specifically accused the Louisiana Department of

Justice of prosecutorial misconduct, further accusing that prosecutors and investigators, acting

under color of the State of Louisiana, maliciously submitted knowingly false evidence, and

wrongfully leveraged the State criminal justice process, for the benefit of Petitioner's adversaries

in several civil proceedings.   These accusations are not made lightly and should not and cannot

be made without a substantial basis for doing so.   Despite the existence of circumstantial

evidence of such wrongful conduct at the time the Garriga report was submitted; counsel for

Petitioner did not feel that an explicit accusation of prosecutorial misconduct was warranted.

Counsel for petitioner chose to address the issue indirectly through a Motion to Exclude Dr.

Garriga's Testimony.   Petitioner also sought to indirectly raise the issue through the Motion to

Withdraw Guilty Plea whereby the State's acquiescence in the Nephews fraudulent conduct was

asserted (see Claim II, *infra.*).   The denial of that motion was appealed through the supervisory

writ process and was ultimately denied by the Louisiana Supreme Court on May 15, 2015.   In

any event, given the serious nature of the allegations made by Petitioner herein, the

circumstances and the interest of justice indicated that Petitioner's actions in previously raising

this issue was appropriate.

Subsequent to the plea of guilty, sentencing and denial of the Petitioner's motions,

several circumstances occurred which justified an explicit charge of prosecutorial misconduct

herein:  the February 24, 2015 hearing in the Successions Proceeding in which the Nephews and

Det. Montgomery provided sworn testimony disavowing the basis of the Garriga Report, as well

as counsel for the Nephew's objecting to its introduction as inadmissible hearsay; the February

28, 2015 notification of the LaAg of said testimony and ruling; the LaAg's continued opposition

to Petitioner's writ application on March 10, 2015; the Court's ruling in the Civil Revocation

Action that all purportedly misappropriated property was in the possession of the Nephews, the

State of Louisiana and the Federal Government; and the State of Louisiana's subsequent Motion

for Restitution.  These circumstances, occurring after the guilty plea and conviction, constitute

subsequent evidence of the bad faith of the State of Louisiana in submitting the Garriga Report and the PSIR as evidence against Petitioner and warrant the charge of prosecutorial misconduct in this petition in the first instance.

Finally, under well established Federal law as provided in the case of *United States v. Mason*, 293 F.3d 826 (5ᵗʰ Cir. 2002), the Petitioner's Due Process rights confer not only a duty prohibiting the prosecutor in a criminal proceeding from knowingly introducing false evidence, but also an affirmative duty to correct such evidence if subsequently discovered. This duty, furthermore, cannot be "waived" by the Petitioner, or by her counsel, by any such action or inaction during the proceedings. As such, with respect, counsel's actions or inactions in the previous proceedings with respect to raising this Claim are not relevant to its viability.

## CLAIM II

**A) Supporting Facts:**

The Supporting Facts for Claim I are hereby incorporated by reference herein.

Given the evidence submitted and the result of the February 24, 2015 hearing in the Successions Proceeding, which was not before the District Court on January 29, 2015, and therefore not properly before the First Circuit Court of Appeals and the Supreme Court on Applications for Supervisory Review on February 17 and March 9, respectively; the District Court's ruling that Mr. Dobronich was incompetent and could not have provided favorable testimony for Petitioner was clearly erroneous and resulted in a fundamental deprivation of Petitioner's Constitutional rights. Furthermore, the sworn testimony provided and position taken by the Nephews regarding the Verrette Reports at the February 24, 2015 confirms that the State's expert testimony on Mr. Dobronich's competency was not only materially false, but was based on fraudulent evidence. Without this expert testimony, the State would not have had any legal basis for pursuing the prosecution of Petitioner herein and would not have been in a position to effectively force Petitioner to explain in excess of 30 transactions for $334,000 in less than one month's time with nothing but her own self serving testimony. As such, the actions of the State of Louisiana in obtaining a guilty plea in this case amounts to unlawful coercion in violations of the Compulsory Process Clauses and the Due Process Clauses of the Constitutions of the United States and the State of Louisiana.

**B) Names and Addresses of Witnesses Who Can Support Petitioner's Claim:**

Petitioner submits the following list of witnesses with potential favorable testimony in this matter:

1) Mr. Forest Dobronich
   1013 East St. Bernard
   Chalmette, LA 70043
   (competence of Mr. Dobronich; falsity of Garriga Report; falsity of Pre Sentence Investigation Report)

2) Det. Stefan Montgomery
   St. Tammany Parish Sheriff's Office
   2070 N. Collins Blvd., Bldg 1
   Covington, LA 70433
   (competence of Mr. Dobronich; falsity of Garriga Report; falsity of Pre Sentence Investigation Report)

3) PO Letitia Moore
   Louisiana Dep. Probation and Parole
   1712 N. Columbia St.
   Covington, LA 70434
   (Falsity of pre-sentence investigation report; State's knowledge of same)

4) Ms. Peggy G. Vallejo
428 W. 21st St.
Covington, LA 70433
(competence of Mr. Dobronich; veracity of Verrette Reports)

5) Mr. Leo R. Hemelt, Jr.
428 W. 21st St.
Covington, LA 70433
(competence of Mr. Dobronich)

6) Asst. Atty Gen. Jonathan D. Blake
Louisiana Department of Justice
1885 N. Third St.
Baton Rouge, LA 70802
(State's awareness of Nephew's testimony regarding veracity of Verrette Reports and
expert testimony of Dr. Garriga)

7) The Hon. Peter J. Garcia
22nd Judicial District Court, Div. "D"
701 N. Columbia Street
Covington, LA 70433
(Nephews' assertion of mental incompetency of Mr. Dobronich and submission of
Verrette Reports in Civil Revocation Action)

8) The Hon. Reginald T. Badeaux
22nd Judicial District Court, Div. "I"
701 N. Columbia Street
Covington, LA 70433
(Nephews' assertion of mental competency of Mr. Dobronich and objection to
veracity of Verrette Reports in Successions Proceeding)

**C) Reason for Not Raising this Specific Ground on Appeal:**

First and foremost, direct appeal of this conviction was not available, as the conviction

was obtained through a plea of guilty which Petitioner asserts was wrongfully obtained.

The unavailability of an appeal as of right notwithstanding, Petitioner submits that her

Compulsory Process Clause and Due Process Clause claims were raised in the District Court

prior to sentencing on her Motion to Withdraw Guilty Plea and Motion to Dismiss Indictment.

These claims were also raised in Writ Applications to the Louisiana First Circuit Court of

Appeals as well as to the Louisiana Supreme Court.  However, the critical evidence in the form

of sworn testimony as to Mr. Dobronich's competence and the position taken regarding the

Verrette Report was obtained in the February 24, 2015 hearing on Petitioner's Petition to Annul

Testament in the Successions Proceedings. This occurred after the District Court's rulings in the

criminal matter and could not be presented therein, nor could this evidence be presented to the

Louisiana First Circuit Court of Appeals and Louisiana Supreme Court in the subsequent Writ

Applications.

TWENTY-SECOND JUDICIAL DISTRICT COURT
FOR THE PARISH OF ST. TAMMANY
STATE OF LOUISIANA

NO. 536073-1                                          DIVISION "C"

STATE OF LOUISIANA                        **FILED**

VERSUS

DARNAY THIBODAUX                          AUG 2 6 2016

                                          MELISSA R. HENRY - CLERK
FILED: _____
                                          _____
                                          DEPUTY CLERK

JOINT MOTION TO VACATE JULY 31, 2013
ORDER RECUSING THE DISTRICT ATTORNEY

MAY IT PLEASE THE COURT:

This is an exploitation of the infirmed (La. R.S. 14:94.3) case. Darnay Thibodaux has

filed an application for post-conviction relief. The Court has ordered an answer from the district

attorney. However, the district attorney previously voluntarily recused himself from prosecution

of this matter. See Exhibit 1. Thereafter, the prosecution was handled by the Attorney General.

The factual basis for the July 2013 recusal of the district attorney was that an assistant

district attorney—Leo Hemelt—was a potential witness in the case. Mr. Hemelt has left the

employ of the district attorney's office. The basis for recusation therefore no longer exists.

The District Attorney and the Attorney General agree that this matter would most

appropriately be handled by the District Attorney at this juncture. The petitioner has been

notified and has no objection to this motion.

This motion also serves as a request by the 22nd Judicial District Attorney's Office to the

Louisiana State Attorney General to continue to assist in the prosecution of this case. See La.

Const. Art. 4, § 8.

WHEREFORE, the District Attorney and the Attorney General jointly move for an order vacating the July 31, 2013 recusal order so that this matter may be handled by the District Attorney.

Respectfully submitted,

| | |
|---|---|
| WARREN MONTGOMERY<br>22nd Judicial District Attorney<br><br>BY: _Matthew_____<br>Matthew Caplan, LSBA #31650<br>Assistant District Attorney | JEFF LANDRY<br>Louisiana State Attorney General<br><br>BY: _____<br>Colin Clark (La. Bar Roll No. 33775)<br>Chief of Appellate Section, Criminal Division<br>Terri Lacy (La. Bar Roll No. 31223)<br>Louisiana State Attorney General's Office<br>1885 North 3rd Street<br>P.O. Box 94005<br>Baton Rouge, Louisiana 70804-9005<br>Telephone: (225) 326-6200<br>Facsimile: (225) 326-6297<br>ClarkC@ag.louisiana.gov<br>LacyT@ag.louisiana.gov |

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing pleading to the petitioner through her counsel, Claiborne W. Brown, by email (cwbrown@cwbrownlaw.com) on this the 26th day of August, 2016.

Matthew Caplan, LSBA #31650
Assistant District Attorney

TWENTY-SECOND JUDICIAL DISTRICT COURT
FOR THE PARISH OF ST. TAMMANY
STATE OF LOUISIANA

NO. 536073-1                                                    DIVISION "C"

STATE OF LOUISIANA

VERSUS

DARNAY THIBODAUX

<u>ORDER</u>

Considering the foregoing motion filed in the above-captioned matter,

The July 31, 2013 order entered in case number 534840, concerning the recusal of the

district attorney, is hereby VACATED.

Covington, Louisiana, this _____ day of _____, 2016.


_____
J U D G E
Division "C"

**APPENDIX "A" -- UNIFORM APPLICATION FOR POST-CONVICTION RELIEF**

**UNIFORM APPLICATION FOR POST-CONVICTION RELIEF**

DARNAY THIBODAUX _____      No. _____
NAME OF PETITIONER              (to be filled in by the clerk)

 436792 _____            22nd___  JUDICIAL DISTRICT
PRISON NUMBER
 1712 N. Columbia St., _____  PARISH OF _ST. TAMMANY_____
 Covington, LA 70434

PLACE OF CONFINEMENT             STATE OF LOUISIANA

vs.
 KEVIN HIDALGO  District Administrator_____
CUSTODIAN (Warden, Superintendent, Jailor,
 or authorized person having custody of
 petitioner)
   Please Serve CUSTODIAN and ___, DISTRICT ATTORNEY, _22nd__ JUDICIAL DISTRICT, STATE OF
LOUISIANA.

**INSTRUCTIONS--READ CAREFULLY**

(1) This petition must be legibly written or typed, signed by the petitioner and sworn to before a notary public or institutional officer authorized to administer an oath. Any false statement of a material fact may serve as the basis for a criminal prosecution. All questions must be answered concisely in the proper space on the form. Additional pages are not permitted except with respect to the facts which you rely upon to support your claims for relief. No citation of authorities or legal arguments are necessary.

(2) Only one judgment may be challenged in a single petition except that convictions on multiple counts of a single indictment or information may be challenged in one petition.

(3) YOU MUST INCLUDE ALL CLAIMS FOR RELIEF AND ALL FACTS SUPPORTING SUCH CLAIMS IN THE PETITION.

(4) When the petition is completed, the original must be mailed to the clerk of the district court in the parish where you were convicted and sentenced.

(5) You must attach official documentation showing your sentence and the crime for which you have been convicted. You may obtain that documentation from the clerk of court of the district court of the parish where you were sentenced or from the institution where you are confined. If that documentation is not attached, you must allege what steps were taken to obtain it.

(6) Petitions which do not conform to these instructions will be returned with a notation as to the deficiency.

# PETITION

1. Name and location of court which entered the judgment of conviction challenged

22nd Judicial District Court, Parish of St. Tammany; 701 Columbia Street, Covington, LA

2. Date of judgment of conviction   December 17, 2014

3. Length of sentence   10 years (5 suspended)

4. Nature of offense involved (all counts)   La. R.S. 14:94.3 Exploitation of the Infirmed

5. What was your plea?  (check one)

   (a) Not guilty ( )

   (b) Guilty (X)

   (c) Not guilty and not guilty by reason of insanity ( )

If you entered a guilty plea to one or more counts and not guilty to other counts, give details

_____

   (d) Name and address of the lawyer representing you at your plea (if you had no lawyer, please

   indicate)
   Roy K. Burns, Jr.; 335 N. Hampshire Street; Covington, LA 70433
   Claiborne W. Brown; 222 N. Vermont Street, Suite I; Covington, LA 70433

   (e) Was the lawyer appointed ( ) or hired (X)? (check one)

6. Kind of trial:  (check one)

   (a) Jury (X)

   (b) Judge only ( )

7. (a) Name and address of the lawyer representing you at your trial:
   Roy K. Burns, Jr.; 335 New Hampshire Street; Covington, LA 70433
   Claiborne W. Brown; 222 N. Vermont Street, Suite I; Covington, LA 70433

(b) Was the lawyer appointed ( ) or hired (X)? (check one)

8. Did you testify at the trial?   Yes ( ) No (X)

9. (a) Give the name and address of the lawyer who represented you at sentencing for the conviction being

attacked herein.  Claiborne W. Brown; 222 N. Vermont Street, Suite I; Covington, LA 70433

(b) Was the lawyer appointed ( ) or hired (X)?  (check one)

10. Did you appeal from the judgment of conviction?   Yes (X) No ( )

11. If you did appeal, give the following information:

   (a) Citation, docket number, and date of written opinion by the Supreme Court (if known)

State v. Thibodaux; No. 2015 KK 0491; May 15, 2015

   (b) Name and address of lawyer representing you on appeal:

Claiborne W. Brown; 222 N. Vermont Street, Suite I; Covington, LA 70433

(c) Was the lawyer appointed ( ) or hired (X)?  (check one)

12. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any application for post-conviction relief with respect to this judgment in any state or federal court?   Yes ( ) No (X)

13. If your answer to 12 is "yes", give the following information:

(a)(1) Name of court _____

(2) Nature of proceeding _____

(3) Claims raised _____

(4) Did you receive an evidentiary hearing on your application?   Yes ( ) No ( )

(5) Was relief granted or denied? _____

(6) Date of disposition _____

(7) Citation of opinion (if known) _____

(8) Name and address of lawyer representing you [if none, so state]:

_____

(9) Was the lawyer appointed ( ) or hired ( )?  (check one)

(b) As to any second application give the same information:

(1) Name of court _____

(2) Nature of proceeding _____

(3) Claims raised _____

(4) Did you receive an evidentiary hearing on your application?

Yes ( ) No ( )

(5) Was relief granted or denied? _____

(6) Date of disposition _____

(7) Citation of opinion (if known) _____

(8) Name and address of lawyer representing you [if none, so state]:

_____

(9) Was the lawyer appointed ( ) or hired ( )?  (check one)

(c) Have you filed any other applications for post-conviction relief with respect to the challenged conviction?   Yes ( ) No ( )

If "yes", set forth the details (as above) on separate paper and attach.

(d) Did you appeal or seek writs of review from the denial of any post-conviction application?

(1) First petition, etc.  Yes ( ) No ( )

(2) Second petition, etc.  Yes ( ) No ( )

(e) If you did not appeal or seek writs from the denial of any post-conviction application, explain briefly why you did not:

_____

(f) Name of the lawyer who represented you on appeal from the denial of any post-conviction application [if none, so state]:

(1) First petition _____

(2) Second petition _____

## CLAIMS FOR RELIEF

State concisely facts supporting your claim that you are being held unlawfully.  If necessary, you may attach extra pages stating additional claims and supporting facts.  Do not argue points of law.

The following is a list of those claims, and only those claims, that may provide you with grounds for relief:

(1) Your conviction was obtained in violation of the constitution of the United States or the State of Louisiana;

(2) The court exceeded its jurisdiction;

(3) Your conviction or sentence subjected you to double jeopardy;

(4) The limitations on prosecution had expired;

(5) The statute creating the offense for which you were convicted and sentenced is unconstitutional;

(6) The conviction or sentence constitute the ex post facto application of law in violation of the Constitution of the United States or the State of Louisiana.

A REMINDER:  THE ABOVE LIST CONTAINS ONLY THOSE CLAIMS THAT YOU MAY RAISE FOR RELIEF.  YOU MUST SET FORTH ALL OF YOUR COMPLAINTS ABOUT YOUR CONVICTION IN THIS APPLICATION.  YOU MAY BE BARRED FROM PRESENTING ADDITIONAL CLAIMS AT A LATER DATE.  Remember that you must state the FACTS upon which your complaints about your conviction are based. MERE CONCLUSORY ALLEGATIONS WILL NOT SUFFICE.

## REPETITIVE APPLICATIONS

The above claims may not provide grounds for relief if any of the following applies to you:

(1) Unless required in the interest of justice, any claim for relief which you fully litigated in an appeal shall not be considered.

(2) Any claim of which you had knowledge and inexcusably failed to raise in the proceeding leading to conviction may be denied by the court.

(3) Any claim which you raised in the trial court and inexcusably failed to pursue on appeal may be denied by the court.

(4) A successive application may be dismissed if it fails to raise a new or different claim.

(5) A successive application may be dismissed if it raises a new or different claim that was inexcusably

omitted from a prior application.

This application will provide space for you to explain the reasons why you failed to raise your claims in the proceedings leading to conviction, or failed to urge the claim on appeal, or failed to include the claim in a prior application.

## CLAIM I

Claim:   Conviction obtained in violation of the U.S. Constitution and Louisiana Constitution.

(a) Supporting FACTS (tell your story briefly without citing cases or law):
   [see attached]

(b) List names and addresses of witnesses who could testify in support of your claim.  If you cannot do so, explain why:   [see attached]

(c) If you failed to raise this ground in the trial court prior to conviction, on appeal or in a prior application, explain why:   [see attached]

## CLAIM II

Claim:   Conviction obtained in violation of the U.S. Constitution and Louisiana Constitution.

(a) Supporting FACTS (tell your story briefly without citing cases or law):
   [see attached]

(b) List names and addresses of witnesses who could testify in support of your claim.  If you cannot do so, explain why:   [see attached]

(c) If you failed to raise this ground in the trial court prior to conviction, on appeal or in a prior application, explain why:   [see attached]

## CLAIM III

Claim:   Conviction obtained in violation of the U.S. Constitution and Louisiana Constitution.

(a) Supporting FACTS (tell your story briefly without citing cases or law):
   [see attached]

(b) List names and addresses of witnesses who could testify in support of your claim.  If you cannot do so, explain why:   [see attached]

(c) If you failed to raise this ground in the trial court prior to conviction, on appeal or in a prior application, explain why:   [see attached]

You may attach additional pages setting forth the required information (above) if additional claims are asserted.
   A. Do you have in a state or federal court any petition or appeal now pending as to the judgment challenged?

Yes [ ] No [X] If "yes", name the court

B. Do you have any future sentence to serve after you complete the sentence imposed by the judgment

challenged?  Yes [ ] No [X]

    (1) If so, give name and location of court which imposed sentence to be served in the future:

_____

    (2) Give date and length of sentence to be served in the future:

_____

    (3) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?  Yes [ ] No [ ]

C. If a copy of the court order sentencing you to custody is not attached, explain why.

_____

WHEREFORE, petitioner prays that the Court grant petitioner relief to which he may be entitled.

*Darnay Thibodaux*
Signature of Petitioner

*5 September 2016*
Day/Month/Year

## APPLICATION FOR APPOINTMENT OF COUNSEL

I am unable to employ counsel to represent me in this matter because I have no assets or funds except:

_____

(Write "None" above if you have nothing;  otherwise, list your assets including funds in prison accounts.)

_____

Signature of Petitioner

### AFFIDAVIT

STATE OF LOUISIANA

PARISH OF ST. TAMMANY

    DARNAY THIBODAUX _____, being first duly sworn says that she has read the
(Name of Petitioner)
foregoing application for post-conviction relief and swears or affirms that all of the information therein is true and correct. ~~He further swears or affirms that he is unable to employ counsel because he has no assets or funds which could be used to hire an attorney except as listed above.~~  [Delete reference to appointment of counsel if inapplicable.]

*Darnay Thibodaux*
Signature of Petitioner

SWORN TO AND SUBSCRIBED before me this 5th day of September 19 2016.

_____
Notary Public or other person authorized to administer an oath.
  Claiborne W. Brown, La. Bar No. 25594

# CLAIM I

## A) Supporting Facts:

In July of 2010, Petitioner and her husband, Calvin Thibodaux, met Mr. Sidney Dobronich ("Mr. Dobronich"), when they rented property next door to Mr. Dobronich's property. Mr. Dobronich was an elderly man who lived alone in a single family trailer on his property. Mr. Dobronich was not married and did not have any children or grandchildren. From 2011 through 2013, Claimant became friends with Mr. Dobronich and also began performing care-giving services for Mr. Dobronich.

Mr. Dobronich had a sizable estate which he maintained in an investment account and several bank accounts. His primary concern was to be permitted to live out his life at his home on Nell Drive in Sun, Louisiana and to not be placed in a nursing home. Consistent with this concern, from around 2009 through 2011, Mr. Dobronich attempted to form a relationship with his step grandson, Mr. Craig Burdine whereby he transferred control of all of his assets to Mr. Burdine and moved to the state of Washington to live with Mr. Burdine in return for Mr. Burdine providing care for him and allowing him to not be placed in a nursing facility. During that time, Mr. Dobronich purchased real estate for Mr. Burdine in Washington State, as well as the property located at 20127 Nell Drive, along with purchasing a trailer to be placed on the property. The arrangement with Mr. Burdine failed, and Mr. Dobronich returned to Nell Drive and removed Mr. Burdine's control of his assets. At the time Mr. Dobronich reacquired complete control of his assets in April of 2011, he had spent well over $300,000 of his estate during the attempted arrangement with Mr. Burdine.

Throughout the time that Petitioner was performing care-giving services to Mr. Dobronich, beginning in the Summer of 2012 through February of 2013, Mr. Dobronich attempted to form the same relationship with the Thibodauxs that he had previously attempted to form with Mr. Burdine. Petitioner and Mr. Dobronich had several conversations whereby Mr. Dobronich expressed a strong desire not to be placed in a nursing home and to be allowed to live out his life at his home at 29127 Nell Drive, whereby Petitioner expressed to Mr. Dobronich her intention to continue to take care of Mr. Dobronich and not to allow him to be placed in a nursing home. Petitioner and Mr. Dobronich also discussed Defendant and her husband developing and managing rental property with Mr. Dobronich's financial assistance, which

would include the property at Nell Drive, as well as other in the near vicinity.  Mr. Dobronich would then leave all of his assets to the Thibodauxs in his will.

In February of 2013, after suffering a heart attack for which Petitioner drove him to the hospital; Mr. Dobronich decided to enter into his previously discussed arrangement with the Thibodauxs.  Mr. Dobronich executed a statutory will and a power of attorney executed in favor of Petitioner, which provided Petitioner with access to Mr. Dobronich's finances.  From February through mid-March of 2013, Petitioner, at the specific direction of Mr. Dobronich, and with the use of Mr. Dobronich's power of attorney, engaged in several transactions in connection with their arrangement:  assets were moved from Mr. Dobronich's investment account to purchase undeveloped or dilapidated real estate property within the immediate vicinity of Mr. Dobronich's and the Thibodaux's home, as well as to purchase several items necessary to develop and renovate such property.   Mr. Dobronich also authorized the Thibodauxs to purchase vehicles and other personal items.  From February through March of 2013, Mr. Dobronich specifically authorized over 30 transactions, which included purchases, cash withdrawals and transfers, totaling over $334,000.

On March 12, 2013, Mr. Dobronich suffered a severely fractured hip from a fall at his home.  Requiring substantial rehabilitation, but not wanting to be placed in a nursing facility during his recovery, Mr. Dobronich and Petitioner decided to purchase a handicapped accessible camper, which would be placed adjoining the Thibodaux's residence to aid Petitioner in assisting with his recovery.

On or around March of 2013, two of Mr. Dobronich's nephews, George and Forest Dobronich ("the Nephews"), with the assistance of Mr. Burdine, discovered the expenditures made by Mr. Dobronich pursuant to his arrangement with the Thibodauxs.   The Nephews engaged Detective Stefan Montgomery of the St. Tammany Parish Sheriff's Office ("STPSO") to open a criminal investigation of the Petitioner for elder exploitation, which involved a search of Mr. Dobronich's financial records, interviews of Petitioner as well as representatives from various financial institutions.  Although Det. Montgomery was able to determine the true nature of the arrangement between Mr. Dobronich and the Thibodauxs and was specifically informed by Mr. Dobronich on March 21, 2013 of the nature of the arrangement and that all transactions were specifically authorized; Detective Montgomery assisted the Nephews in concealing Mr. Dobronich's assent to these transactions and in gaining physical control over Mr. Dobronich

through an illegally obtained power of attorney which the Nephews further used to obtain exclusive physical control over Mr. Dobronich.   These efforts by Det. Montgomery and the Nephews resulted in a criminal prosecution of Petitioner and her husband, *State v. Thibodaux*, No. 534840-1, 22nd J.D.C., Div. "C" for two counts of violations of La. R.S. 14:93.4, Exploitation of the Infirmed.  Due to involvement of a high ranking member of the St. Tammany Parish District Attorney's Office with the circumstances of the case (the illegally obtained power of attorney listed Mr. Leo Hemelt, Jr. as a witness thereto), the criminal matter was prosecuted by the Louisiana Department of Justice ("LaAg"), and particularly by Assistant Attorney General ("AAG") Jonathan Blake.

Using their illegally obtained power of attorney from Mr. Dobronich, the Nephews instituted a civil action, entitled, *Forest Dobronich and George Dobronich v. Darnay Thibodaux and Calvin Thibodaux*, No. 2013-11784, 22nd J.D.C., Div. "D", (hereinafter, "the Civil Revocation Action") to revoke several transactions and for return of assets.   Using Det. Montgomery's connections with the United States Secret Service ("USSS") as part of the USSS Financial Crimes Task Force, the Nephews and Det. Montgomery also leveraged a civil asset forfeiture proceeding, *United States v. 100,641.06, et al.*, No. 13-5566, USDC EDLa, Sect. "B", to seize assets and property known by Det. Montgomery to have been rightfully obtained with Mr. Dobronich's consent. The Nephews also admitted to the seizure and acquisition by both STPSO and USSS of at least $292,000 of the $334,000 that was expended by Mr. Dobronich via Petitioner pursuant to their arrangement.

During the pendency of the criminal investigation and the civil revocation action, and despite being under intense coercion and almost exclusive physical control of the Nephews, Mr. Dobronich had the opportunity to provide sworn testimony in two instances in which he attempted to state that all transactions performed by the Petitioner were specifically authorized and he did not want to prosecute the Petitioner or her husband.  The Nephews used their power of attorney to prevent not any further deposition testimony from Mr. Dobronich or even contact with anyone outside of the Nephews.  The Nephews also used their power of attorney to have Mr. Dobronich declared incompetent to testify by the Court in the civil revocation action, submitting to the Court medical reports of Dr. Paul Verrette ("the Verrette Reports") stating that Mr. Dobronich suffered from "dementia."  Based on the Verrette Reports, the Court in the Civil Revocation Action issued a judgment declaring Mr. Dobronich incompetent to testify on August

27, 2013, and Petitioner was precluded from obtaining any potentially exculpatory testimony from Mr. Dobronich through his death on March 25, 2014.

Notwithstanding the death of Mr. Dobronich in March of 2014, in August of 2014; the Louisiana Department of Justice, which was handling the prosecution in the criminal case, procured expert testimony from Dr. Michelle Garriga regarding a forensic psychiatric analysis of Mr. Sidney Dobronich.   This expert testimony relied heavily upon the Verrette Reports and the statements of the Nephews and concluded that Mr. Dobronich suffered from Major Neurocognitive Disorder (Dementia) and lacked the capacity to consent to any of the transactions conducted within the last two years of his life, including between February and March of 2013 for which petitioner was being prosecuted.   Clearly, without this expert testimony, in light of the absence of Mr. Dobronich and the two instances of sworn testimony indicating that the transactions were authorized; the State of Louisiana would not have had legal sufficiency to bring the criminal prosecution against Petitioner or her husband.   More importantly, without Mr. Dobronich's availability; Petitioner was effectively required to rebut the State's evidence of the over 30 transactions of $334,000, conducted in less than one month's time with nothing but her own admittedly self serving testimony.

At around the same time that the State was procuring expert testimony regarding Mr. Dobronich's competence to authorize the transactions at issue, in August 2014, the nephews opened a succession of their uncle:  *Succession of Dobronich*, No. 2014-30680, 22nd J.D.C., Div "I" ("the Succession")  In this Succession, the Nephews probated a hand written testament of Mr. Dobronich purporting to leave all of his property to his Nephews, and other nieces and nephews of Mr. Dobronich.  The hand written will was dated July 18, 2013, within two weeks of the date of the Verrette Reports declaring the diagnosis of dementia and the mental incapacity of Mr. Dobronich.  Additionally, the sworn descriptive list filed by the Nephews in connection with the successions proceedings, when compared to the evidence collected in Det. Montgomery's investigation of Mr. Dobronich's finances, reveal that the Nephews appropriated over $200,000 of Mr. Dobronich's estate during the time they had power of attorney over Mr. Dobronich's finances.  Further, the Nephews attempted to conceal this by improperly attributing those assets to the value of the claims in the Civil Revocation Action.

On November 7, 2014, Petitioner filed a Petition to Annul the July 18, 2014 testament. In that Petition to Annul, Petitioner herein explicitly raised the issue of Mr. Dobronich's mental

capacity to execute the July 18, 2013 hand written will based on the submission of the Verrette Reports to the Court in the Civil Revocation Action.   On November 10, 2014, AAG Blake tendered to Petitioner counsel, Mr. Roy Burns, what the State of Louisiana identified as *Brady* material regarding the July 18, 2013 purported testament of Mr. Dobronich, indicating at least its awareness of the Nephews attempt to probated a testament in direct contravention of its key piece of evidence against Petitioner.

Trial of the criminal matter was set for December 15, 2014.   On December 3, 2014, Petitioner's Counsel in this Petition filed a Motion to Enroll in the criminal matter with Mr. Burns and filed a Motion to Exclude the testimony of Dr. Garriga, based on a violation of Louisiana Rules of Evidence Rule 702 (*Daubert*).   Though not explicitly raised, the motion referenced the evidence of the Nephew's purported attempts to probate the July 18, 2013 hand written will.   On December 16, 2014, a hearing on the Petitioner's Motion to Exclude Expert Testimony was held, wherein the Court denied Petitioner's Motion.   Trial commenced on December 16, 2014.   As mentioned before, Petitioner was unduly penalized for Mr. Dobronich's lack of availability.   Not only was he not available for testimony, having been prevented from providing favorable testimony by the actions of the Nephews in preventing him from testifying and having him declared incompetent; but Petitioner was effectively forced to rebut the State's evidence of the over 30 transactions of $334,000, conducted in less than one month's time with nothing but her own self serving testimony, and under a prejudicial cloud of expert testimony as to Mr. Dobronich's lack of mental capacity.   Additionally, Petitioner had previously been convicted of a felony in 2001 for which the Stated threatened to file a multiple offender bill of information.

On December 17, 2014, Petitioner and her husband changed their pleas to guilty as charged. The prosecution, while agreeing to a sentence of probation for Petitioner's husband Calvin Thibodaux, insisted on a pre-sentence investigation as to Petitioner.   The Court set the sentencing hearing for January 29, 2015.

On January 9, 2015, Petitioner herein filed a Motion to Withdraw her guilty plea and to Dismiss the Indictment on the grounds that the Nephews, with the acquiescence and possible coordination with the State of Louisiana, deprived her of Mr. Dobronich's favorable testimony in violation of the Compulsory Process Clause of the 6th Amendment and the Due Process Clause

of the 5th and 14th Amendments to the United States Constitution.  The hearing on the Motions was set contemporaneously with the sentencing hearing on January 29, 2015.

From 17 December 2014 through January 29, 2015, the pre-sentence investigation was conducted on behalf of the Division of Probation and Parole ("PPO") by Parole Officer ("PO") Letitia Moore.  During the investigation, both the Nephews and Det. Montgomery provided information to PO Moore regarding the specific transactions occurring between February and March of 2013 and that the value of the transactions amounted to $334,000.  The Nephews and Det. Montgomery omitted to advise that the Nephew's obtained power of attorney over Mr. Dobronich on March 28, 2013 and that at least $292,000 of the purported $334,000 had been seized by state and Federal law enforcement or was in control of the Nephews via their power of attorney.  Nephew, Forest Dobronich specifically and falsely advised PO Moore that only "$70,000 to $100,000" of the $334,000 had been "recovered."  Additionally, PO Moore's investigation revealed only one unpaid medical bill, which was accrued during the time in which the Nephews had control over Mr. Dobronich through their power of attorney.

Prior to filing her motions with the court, Petitioner was interviewed by PO pursuant to the pre-sentence investigation.  PO Moore was specifically aware of the transactions contained in Det. Montgomery's investigation and proceeded to seek specific admissions of guilt with regards to each of the transactions made pursuant to Petitioner's arrangement with Mr. Dobronich.  Of considerable significance was the fact that the bill of information in the criminal matter contained two general counts of violations of La. R.S. 14:93.4 and did not contain detailed counts of specific transactions (i.e., the Petitioner's guilty pleas were not attributable to any specific transaction).  Also of considerable significance was that, at the time the pre-sentence investigation was conducted, all three civil actions, the Civil Revocation Action, the Successions Proceedings, and the Federal Civil Forfeiture were still pending.  In any event, Petitioner refused to admit to PO Moore of wrongfully appropriating any of Mr. Dobronich's property.

PO Moore submitted the PPO Pre-Sentence Investigation Report ("PSIR") to the District Court on the day of motions and sentencing, January 29, 2015.  The PSIR reflected a perceived lack of remorse on the part of Petitioner for refusing to "admit" that the specific transactions were wrongful.  The PSIR also falsely reflected that $230,000 to $260,000 was still "outstanding", that Petitioner spent Mr. Dobronich's money under the pretense of paying Mr.

Dobronich's medical bills, and that at least $1,000 of Mr. Dobronich's medical bills remained unpaid as a result of Petitioner's wrongful actions.

On January 29, 2015, the District Court denied the Motions to Withdraw Plea and to Dismiss the Indictment.  The Court relied heavily upon the expert testimony and report of Dr. Garriga that Mr. Dobronich was incompetent and that he not have been permitted to testify on that basis.  Sentencing followed.  Consistent with the recommendations of the PSIR, the Court sentenced Defendant to 10 years in prison with 5 years suspended, and 5 years probation.

Petitioner filed her Application for Writ of Supervisory Review to the Louisiana First Circuit Court of Appeals on February 17, 2015, which application was denied on February 19, 2015.  Petitioner filed her Application for Writ of Supervisory Review to the Louisiana Supreme Court on March 9, 2015, which application was denied on May 15, 2015.

Arguably, despite the legal arguments raised, given the discretion afforded to the District Court, the denial of writs could have been based on a finding that the District Court was within its discretion to find Mr. Dobronich incompetent as a potential witness throughout the pendency of the criminal prosecution up until his death, as there was no sworn testimony in the record to the contrary.  Similarly, without sworn testimony; the State of Louisiana through the LaAg Office, argued in opposition to the Petitioner's Motions and Applications that the submission of the Garriga Report was did not constitute a knowing submission of false evidence and that the District Court's reliance on said report was within its discretion.

Subsequent to the District Court's rulings and sentence on January 29, 2015, on February 24, 2015, the Court in the Successions proceeding held a hearing on the petition to annul testament filed by Petitioner herein.  Within that hearing, the proponents of the July 18, 2013 testament offered the sworn testimony of the Nephews, as well as Detective Stefan Montgomery of the St. Tammany Parish Sheriff's Office, that, at all times from February 2013 through his death in March of 2014, Mr. Dobronich was fully mentally competent.  Additionally, upon attempting to introduce the Verrette Report, the critical evidence supporting the State's expert testimony against Petitioner, the Nephew's through their counsel, objected to the introduction of the report on the grounds that the Verrette Reports constituted unreliable hearsay.  Pursuant to those occurrences, the Court in the successions proceedings accepted the testimony offered by the Nephews, sustained the hearsay objection as to the Verrette report, and issued a Judgment upholding Mr. Dobronich's execution of the July 18, 2013 hand written will.

On May 20, 2015, trial in the Civil Revocation Action was held. At the conclusion of that trial, the Court held, in part, that all property subject to this *in Rem* proceeding was the property of the Nephews, as well as several other nieces and nephews of Mr. Dobronich. Significantly, the Court also held that the total value of the property at issue was $304,606.46 and there was no outstanding assets of the late Mr. Dobronich that had not been recovered and either returned or held by the State of Louisiana and the Federal Government. That ruling was set forth in a written Judgment dated June 15, 2015.

On February 27, 2015, AAG Blake was apprised of the Court's February 24, 2015 ruling in the Succession Proceeding, and the specific sworn testimony of the Nephews disavowing the conclusions of the Verrette Report. Notwithstanding this knowledge, on March 10, 2015, AAG Blake filed an opposition to Petitioner's Writ Application specifically noting the District Court's reliance on the knowingly false Garriga report. Additionally, on September 21, 2015; the State of Louisiana filed a motion in the Criminal Matter seeking additional restitution from claimants herein. Although AAG Blake was apprised of the existence of the June 15, 2015 Judgment on September 28, 2015, The LaAg's Office did not withdraw its motion until January 20, 2016, after which time it had been apprised of Petitioner's knowledge of the Nephew's misappropriation of approximately $200,000 of Mr. Dobronich's estate and Petitioner's intent to legitimately use that evidence to defend against the State's restitution motion.

Based on the totality of the evidence set forth, much of which was obtained after the fact, it is clear that both the Expert Report of Dr. Garriga regarding Mr. Dobronich's purported mental incompetency in February and March of 2013, and the January 29, 2015 Pre-Sentence Investigation Report averring the non-recovery of approximately $250,000 of Mr. Dobronich's assets, were patently false. More disturbingly, the evidence overwhelmingly supports the conclusion that the Louisiana Department of Justice, as the prosecutor in the case, was not only aware that Garriga Report was patently false, but that it was submitted to the Court with the specific malicious intent to wrongfully benefit the Nephews of Mr. Dobronich in their attempt to acquire ownership of Mr. Dobronich's estate in the concurrent civil proceedings. The false Garriga Report was critical for the prosecution of Petitioner, as the prosecution could not have been maintained against petitioner without it. Likewise, the Pre-Sentence Investigation Report was instrumental not only in the unduly severe sentence imposed upon Petitioner, but also prejudiced the District Court's decision regarding her Motion to Withdraw her Guilty Plea. Both

submissions violated Petitioner's Due Process right to be free from the knowing submission of false evidence in a criminal prosecution against her (which right not only confers a non-waivable duty upon the prosecutor not to knowingly offer false evidence, but an equally affirmative non-waivable duty to correct such an error when discovered).  As such, the conviction and sentence against the Petitioner must be vacated.

**B) Names and Addresses of Witnesses Who Can Support Petitioner's Claim:**

Petitioner submits the following list of witnesses with potential favorable testimony in this matter:

1) Mr. Forest Dobronich
   1013 East St. Bernard
   Chalmette, LA 70043
   (competence of Mr. Dobronich; falsity of Garriga Report; falsity of Pre Sentence Investigation Report)

2) Det. Stefan Montgomery
   St. Tammany Parish Sheriff's Office
   2070 N. Collins Blvd., Bldg 1
   Covington, LA 70433
   (competence of Mr. Dobronich; falsity of Garriga Report; falsity of Pre Sentence Investigation Report)

3) PO Letitia Moore
   Louisiana Dep. Probation and Parole
   1712 N. Columbia St.
   Covington, LA 70434
   (Falsity of pre-sentence investigation report; State's knowledge of same)

4) Ms. Peggy G. Vallejo
   428 W. 21st St.
   Covington, LA 70433
   (competence of Mr. Dobronich; veracity of Verrette Reports)

5) Mr. Leo R. Hemelt, Jr.
   428 W. 21st St.
   Covington, LA 70433
   (competence of Mr. Dobronich)

6) Asst. Atty Gen. Jonathan D. Blake
   Louisiana Department of Justice
   1885 N. Third St.
   Baton Rouge, LA 70802
   (State's awareness of Nephew's testimony regarding veracity of Verrette Reports and expert testimony of Dr. Garriga)

7) The Hon. Peter J. Garcia
   22nd Judicial District Court, Div. "D"
   701 N. Columbia Street
   Covington, LA 70433
   (Nephews' assertion of mental incompetency of Mr. Dobronich and submission of Verrette Reports in Civil Revocation Action)

8) The Hon. Reginald T. Badeaux
   22nd Judicial District Court, Div. "I"
   701 N. Columbia Street

Covington, LA 70433
(Nephews' assertion of mental competency of Mr. Dobronich and objection to
veracity of Verrette Reports in Successions Proceeding)

**C) Reason for Not Raising this Specific Ground on Appeal:**

First and foremost, direct appeal of this conviction was not available, as the conviction

was obtained through a plea of guilty which Petitioner asserts was wrongfully obtained.

Additionally, Petitioner herein has specifically accused the Louisiana Department of

Justice of prosecutorial misconduct, further accusing that prosecutors and investigators, acting

under color of the State of Louisiana, maliciously submitted knowingly false evidence, and

wrongfully leveraged the State criminal justice process, for the benefit of Petitioner's adversaries

in several civil proceedings.  These accusations are not made lightly and should not and cannot

be made without a substantial basis for doing so.  Despite the existence of circumstantial

evidence of such wrongful conduct at the time the Garriga report was submitted; counsel for

Petitioner did not feel that an explicit accusation of prosecutorial misconduct was warranted.

Counsel for petitioner chose to address the issue indirectly through a Motion to Exclude Dr.

Garriga's Testimony.  Petitioner also sought to indirectly raise the issue through the Motion to

Withdraw Guilty Plea whereby the State's acquiescence in the Nephews fraudulent conduct was

asserted (see Claim II, *infra.*).  The denial of that motion was appealed through the supervisory

writ process and was ultimately denied by the Louisiana Supreme Court on May 15, 2015.  In

any event, given the serious nature of the allegations made by Petitioner herein, the

circumstances and the interest of justice indicated that Petitioner's actions in previously raising

this issue was appropriate.

Subsequent to the plea of guilty, sentencing and denial of the Petitioner's motions,

several circumstances occurred which justified an explicit charge of prosecutorial misconduct

herein:  the February 24, 2015 hearing in the Successions Proceeding in which the Nephews and

Det. Montgomery provided sworn testimony disavowing the basis of the Garriga Report, as well

as counsel for the Nephew's objecting to its introduction as inadmissible hearsay; the February

28, 2015 notification of the LaAg of said testimony and ruling; the LaAg's continued opposition

to Petitioner's writ application on March 10, 2015; the Court's ruling in the Civil Revocation

Action that all purportedly misappropriated property was in the possession of the Nephews, the

State of Louisiana and the Federal Government; and the State of Louisiana's subsequent Motion

for Restitution.  These circumstances, occurring after the guilty plea and conviction, constitute

subsequent evidence of the bad faith of the State of Louisiana in submitting the Garriga Report and the PSIR as evidence against Petitioner and warrant the charge of prosecutorial misconduct in this petition in the first instance.

Finally, under well established Federal law as provided in the case of *United States v. Mason*, 293 F.3d 826 (5th Cir. 2002), the Petitioner's Due Process rights confer not only a duty prohibiting the prosecutor in a criminal proceeding from knowingly introducing false evidence, but also an affirmative duty to correct such evidence if subsequently discovered.   This duty, furthermore, cannot be "waived" by the Petitioner, or by her counsel, by any such action or inaction during the proceedings.   As such, with respect, counsel's actions or inactions in the previous proceedings with respect to raising this Claim are not relevant to its viability.

## CLAIM III

**A) Supporting Facts:**

The Supporting Facts for Claim I are hereby incorporated by reference herein.

Given the evidence submitted and the result of the February 24, 2015 hearing in the Successions Proceeding, which was not before the District Court on January 29, 2015, and therefore not properly before the First Circuit Court of Appeals and the Supreme Court on Applications for Supervisory Review on February 17 and March 9, respectively; the District Court's ruling that Mr. Dobronich was incompetent and could not have provided favorable testimony for Petitioner was clearly erroneous and resulted in a fundamental deprivation of Petitioner's Constitutional rights.  Furthermore, the sworn testimony provided and position taken by the Nephews regarding the Verrette Reports at the February 24, 2015 confirms that the State's expert testimony on Mr. Dobronich's competency was not only materially false, but was based on fraudulent evidence.  Without this expert testimony, the State would not have had any legal basis for pursuing the prosecution of Petitioner herein and would not have been in a position to effectively force Petitioner to explain in excess of 30 transactions for $334,000 in less than one month's time with nothing but her own self serving testimony.  As such, the actions of the State of Louisiana in obtaining a guilty plea in this case amounts to unlawful coercion in violations of the Compulsory Process Clauses and the Due Process Clauses of the Constitutions of the United States and the State of Louisiana.

**B) Names and Addresses of Witnesses Who Can Support Petitioner's Claim:**

Petitioner submits the following list of witnesses with potential favorable testimony in this matter:

1) Mr. Forest Dobronich
   1013 East St. Bernard
   Chalmette, LA 70043
   (competence of Mr. Dobronich; falsity of Garriga Report; falsity of Pre Sentence
   Investigation Report)

2) Det. Stefan Montgomery
   St. Tammany Parish Sheriff's Office
   2070 N. Collins Blvd., Bldg 1
   Covington, LA 70433
   (competence of Mr. Dobronich; falsity of Garriga Report; falsity of Pre Sentence
   Investigation Report)

3) PO Letitia Moore
   Louisiana Dep. Probation and Parole
   1712 N. Columbia St.
   Covington, LA 70434
   (Falsity of pre-sentence investigation report; State's knowledge of same)

4) Ms. Peggy G. Vallejo
   428 W. 21st St.
   Covington, LA 70433
   (competence of Mr. Dobronich; veracity of Verrette Reports)

5) Mr. Leo R. Hemelt, Jr.
   428 W. 21st St.
   Covington, LA 70433
   (competence of Mr. Dobronich)

6) Asst. Atty Gen. Jonathan D. Blake
   Louisiana Department of Justice
   1885 N. Third St.
   Baton Rouge, LA 70802
   (State's awareness of Nephew's testimony regarding veracity of Verrette Reports and expert testimony of Dr. Garriga)

7) The Hon. Peter J. Garcia
   22nd Judicial District Court, Div. "D"
   701 N. Columbia Street
   Covington, LA 70433
   (Nephews' assertion of mental incompetency of Mr. Dobronich and submission of Verrette Reports in Civil Revocation Action)

8) The Hon. Reginald T. Badeaux
   22nd Judicial District Court, Div. "I"
   701 N. Columbia Street
   Covington, LA 70433
   (Nephews' assertion of mental competency of Mr. Dobronich and objection to veracity of Verrette Reports in Successions Proceeding)

**C) Reason for Not Raising this Specific Ground on Appeal:**

First and foremost, direct appeal of this conviction was not available, as the conviction was obtained through a plea of guilty which Petitioner asserts was wrongfully obtained.

The unavailability of an appeal as of right notwithstanding, Petitioner submits that her Compulsory Process Clause and Due Process Clause claims were raised in the District Court prior to sentencing on her Motion to Withdraw Guilty Plea and Motion to Dismiss Indictment. These claims were also raised in Writ Applications to the Louisiana First Circuit Court of Appeals as well as to the Louisiana Supreme Court.  However, the critical evidence in the form of sworn testimony as to Mr. Dobronich's competence and the position taken regarding the Verrette Report was obtained in the February 24, 2015 hearing on Petitioner's Petition to Annul Testament in the Successions Proceedings. This occurred after the District Court's rulings in the criminal matter and could not be presented therein, nor could this evidence be presented to the Louisiana First Circuit Court of Appeals and Louisiana Supreme Court in the subsequent Writ Applications.

# CLAIM III

**A) Supporting Facts:**

The Supporting Facts for Claim I are hereby incorporated by reference herein.

As confirmed by the February 24, 2015 hearing in the Successions Proceeding, whereby the Nephews and Det. Montgomery completely disavowed the State's contention that Mr. Dobronich was mentally incompetent; the evidence in this case supports the contention that Mr. Dobronich specifically told Det. Montgomery on March 21, 2013 that all transactions that were made by Petitioner on Mr. Dobronich's behalf were specifically authorized and that any allegations of the Nephews to the contrary were maliciously baseless.   The evidence also supports the contention that Mr. Dobronich's statement to Det. Montgomery was recorded by Det. Montgomery, which recording was subsequently destroyed by Det. Montgomery, as it did not fit his false narrative against Petitioner and her husband.   This contention is specifically supported by the evidence that was in Det. Montgomery's possession at the time he conducted his second interview of Mr. Dobronich on March 21, 2013, as well as the fact that Det. Montgomery's report reflects that his March 16, 2013 and April 2, 2013 interviews with Mr. Dobronich were recorded, but makes no mention of any recording of the March 21, 2013 interview.  As such, Det. Montgomery's destruction of this recording, and his falsification of the substance of the March 21, 2013 interview with Mr. Dobronich, constitutes bad faith spoliation of evidence in violation of the Due Process Clause of the United States Constitution and the Constitution of the State of Louisiana.

**B) Names and Addresses of Witnesses Who Can Support Petitioner's Claim:**

Petitioner submits the following list of witnesses with potential favorable testimony in this matter:

1) Mr. Forest Dobronich
   1013 East St. Bernard
   Chalmette, LA 70043
   (circumstances surrounding Det. Montgomery's bad faith destruction of the recording of Mr. Dobronich's March 21, 2013 statement)

2) Det. Stefan Montgomery
   St. Tammany Parish Sheriff's Office
   2070 N. Collins Blvd., Bldg 1
   Covington, LA 70433
   (circumstances surrounding Det. Montgomery's bad faith destruction of the recording of Mr. Dobronich's March 21, 2013 statement)

3) Mr. Joseph P. Romano
   14295 HWY 21S
   Bogalusa, LA 70427

Mr. Joseph P. Romano
20534 HWY 439
Franklinton, LA 70438
(circumstances surrounding Det. Montgomery's bad faith destruction of the recording
of Mr. Dobronich's March 21, 2013 statement)

**C) Reason for Not Raising this Specific Ground on Appeal:**

First and foremost, direct appeal of this conviction was not available, as the conviction

was obtained through a plea of guilty which Petitioner asserts was wrongfully obtained.

Furthermore, as mentioned in the previous responses for Claims I and II, the claim of bad

faith spoliation of evidence in violation of the Due Process Clause did not become sufficiently

evident as an actionable Constitutional violation until after the February 24, 2015 hearing in the

Successions Proceeding, in which the Nephews and Det. Montgomery completely disavowed the

State's contention that Mr. Dobronich was mentally incompetent at the times he authorized the

transactions at issue.

TWENTY-SECOND JUDICIAL DISTRICT COURT
FOR THE PARISH OF ST. TAMMANY
STATE OF LOUISIANA

NO. 538643-1                                           DIVISION "C"

STATE OF LOUISIANA

VERSUS

DARNAY THIBODAUX

**FILED**

OCT 2 7 2016

MELISSA R. HENRY - CLERK

FILED: _____                    DEPUTY CLERK

### STATE'S RESPONSE TO DARNAY THIBODAUX'S APPLICATION FOR POST-CONVICTION RELIEF

MAY IT PLEASE THE COURT:

This is an exploitation of the infirm case (La. R.S. 14:93.4). The victim was the late Sidney Dobronich. Darnay Thibodaux, who along with her husband Calvin Thibodaux, pleaded guilty. Darnay Thibodaux has filed an application for post-conviction relief. There is no next scheduled court date in this matter.

The facts underlying this case are unusually complex, and have resulted in four separate sets of proceedings—this criminal proceeding, two civil proceedings in this courthouse (2013-11784, 2014-30680), and an asset forfeiture proceeding in federal court (13-cv-5566, E.D. La.). It is this complexity that causes counsel to present a separately-bound appendix which contains twenty-nine exhibits and is eight hundred ten pages long.[1]

The State respectfully submits that these documents are sufficient to allow the Court to determine the factual and legal issues summarily and "without further proceedings" pursuant to Article 929(A) of the Code of Criminal Procedure.

The State ultimately submits:

-   The petitioner did in fact exploit Sidney Dobronich for private gain. Her allegation that the criminal charges are the product of a malicious conspiracy is baseless and contradicted by the available evidence.

---

[1] The *Appendix to State's Response to Darnay Thibodaux's Application for Post-Conviction Relief* has been organized thematically into five parts, as follows: (1) the police investigation, (2) proceedings held in the criminal case, docket number 538643-1, (3) proceedings held in the *Dobronich v. Thibodaux* civil suit, docket number 2013-11784, (4) proceedings held in the federal asset forfeiture case, docket number 2013-cv-5566; and (5) the proceedings held in *Succession of Dobronich*, docket number 2014-30680.

The exhibits have been consecutively numbered using computer software (Adobe Acrobat Pro DC). In citing to exhibits, counsel refers the exhibit number, to the internal page numbering of the attached document, and to the computer-generated page numbers. For example, a reference to "Exhibit 3, pg. 40 ( APPENDIX at 94)" would refer to page 40 of the attachments to Detective Stefan Montgomery's detailed supplemental report, which corresponds to page 94 of the computerized pagination of the *Appendix to State's Response*.

-       The report of Dr. Michelle Garriga is not false.

-       The pre-sentence investigation was not false.

-       The petitioner was not denied the right to compulsory process based upon the motion *she* filed to exclude testimony Sidney Dobronich's testimony.

-       None of the testimony given in the civil proceedings (2013-11784, 2014-30680) subsequent to the petitioner's guilty plea casts doubt on the petitioner's guilt.

-       There is no basis for the assertion that "Mr. Dobronich specifically told Det. Montgomery on March 21, 2013 that all transactions that were made by Petitioner on Mr. Dobronich's behalf were specifically authorized," or that Detective Montgomery recorded that interview and then destroyed the recording.

For ease of reference, counsel sets forth the following table of contents.

## TABLE OF CONTENTS

1.      STATEMENT OF THE FACTS...................................................................................3

2.      PROCEDURAL HISTORY.......................................................................................5

3.      THE PETITIONER'S CLAIMS LACK MERIT..........................................................6

        3.1.    The prosecution of the petitioner was not based upon false evidence....................6

                3.1a.   The testimony contained in the transcript of the proceedings
                        held February 24, 2015 is not inconsistent with the State's
                        theory of the case. ...........................................................................9

                3.1b.   There is no factual basis for the petitioner's assertion that
                        Detective Montgomery "was specifically informed by
                        Mr. Dobronich on March 21, 2013 . . . that all transactions
                        were specifically authorized".........................................................11

                3.1c.   There is no factual basis for the petitioner's claim that the
                        report authored by Dr. Michelle Garriga is "patently false."....................11

                3.1d.   There is no factual basis for the petitioner's claim that the
                        pre-sentence investigation was "patently false".........................................12

                3-1e.   The petitioner's assertion that the prosecutor knowingly
                        submitted false evidence is without merit because
                        none of the evidence is "false"...........................................................13

        3.2.    The petitioner has not been denied the right of compulsory process....................13

                3-2a.   Additional pertinent facts. ...................................................................13

                3-2b.   The testimony of Sidney Dobronich was excluded from
                        the criminal proceedings on motion of the petitioner. ..............................16

                3-2c.   The petitioner is not entitled to relief based upon this claim.....................16

        3.3.    There has been no intentional destruction of exculpatory evidence.....................17

                3-3a.   Additional pertinent facts.....................................................................17

                3-3b.   The petitioner is not entitled to relief based upon this claim.....................18

4.      CONCLUSION AND PRAYER...............................................................................18

1.    **STATEMENT OF THE FACTS.**

The factual basis for the prosecution of Darnay Thibodaux is set forth in the police reports, particularly the twenty-six page report authored by Detective Stefan Montgomery and the attachments thereto. Exhibit 2 (APPENDIX at 29-54); Exhibit 3 (APPENDIX at 55-286).

Detective Montgomery has testified to the details of his investigation on three separate occasions. See Exhibit 19 (Transcript – June 25, 2013), pp. 34-53 (APPENDIX at 462-481, 508-538); Exhibit 29 (Transcript – February 24, 2015), pp. 53-66 (APPENDIX at 771-784); Exhibit 24 (Transcript – May 20, 2015), pp. 22-101 (APPENDIX at 574-653).

Basically, in January 2013, Darnay Thibodaux—who was eighty-five year old Sidney Dobronich's neighbor and tenant—reported to her daughter that while cleaning Mr. Dobronich's house she discovered a deposit ticket showing that Mr. Dobronich had a lot of money (in the neighborhood of $800,000).[2] On February 10, 2013, Sidney Dobronich had a heart attack. Darnay Thibodaux accompanied him to the hospital, and proceeded to both (a) not tell any of Sidney Dobronich's friends or family that he had a heart attack or that he was in the hospital [3] and (b) obtain control over Sidney Dobronich's finances by calling a friend to come to the hospital to notarize a power of attorney and a last will and testament.[4]

During February and March of 2013, Darnay Thibodaux transferred a large quantity of money from Sidney Dobronich's investment account to his savings accounts,[5] and using his savings and checking accounts withdrew $115,800 in cash[6] and caused another $114,000 to be deposited into an account belonging to her husband, Calvin.[7]

---

2   Exhibit 2; APPENDIX at 51: Detailed Supplemental Report of Detective Montgomery, pg. 25.

3   Exhibit 13, pg. 2, paragraphs 5, 8 & pp. 11-12 (APPENDIX at 399, 408-409); Exhibit 19, pg. 107, lines 13-25 (APPENDIX at 535).

4   Exhibit 3; APPENDIX at 64-68: Attachments to Montgomery Report, pp. 10-12 ("Durable Procuration"); 13-14 ("Last Will and Testament"). See also Exhibit 2, APPENDIX at 47-49: Montgomery Report, pp. 19-21 (statement of notary Rebecca Crawford).

5   The investment banker, Joe Romano, discussed this in detail during testimony given June 25, 2013.  See Exhibit 19, pp. 10-15 (APPENDIX at 438-443). Darnay Thibodaux requested $30,000 for medical bills, then another $30,000 for additional medical bills, and then $179,000 to buy a house, and then $95,000 for "unforeseen closing costs." Id.
    See also Exhibit 3; APPENDIX at 58-60: Attachments to Montgomery Report, pp. 4-6 (written statement of Joe Romano provided to Detective Montgomery).

6   Exhibit 3 (Attachments to Montgomery Report): pg. 28 (APPENDIX at 82) ($4,800 withdrawn Feb. 11); pg. 24 (APPENDIX at 78) ($9,000 withdrawn Feb. 18); pg. 37 (APPENDIX at 91) ($3,000 withdrawn Feb. 19); pg. 38 (APPENDIX at 92) ($7,500 withdrawn Feb. 19); pg. 63 (APPENDIX at 117) ($5,000 withdrawn Feb. 20); pg. 41 (APPENDIX at 95) ($15,000 withdrawn Feb. 22); pg. 42 (APPENDIX at 96) ($10,000 withdrawn March 5); pg. 44 (APPENDIX at 98) ($4,500 withdrawn March 7); pg. 45 (APPENDIX at 99) ($10,000 withdrawn March 11); pg. 46 (APPENDIX at 100) (another $10,000 withdrawn March 11); pg. 64 (APPENDIX at 118) ($3,000 withdrawn March 12); pg. 65 (APPENDIX at 119) ($5,000 withdrawn March 12); pg. 55 (APPENDIX at 109) ($29,000 withdrawn March 19).

7   Exhibit 3, pg. 62 (APPENDIX at 116) ($14,000 check to Calvin Thibodaux); pp. 53-54 (APPENDIX at 107-108) ($100,000 converted to a cashier's check payable to Calvin Thibodaux); pg. 113 (APPENDIX at 167) (deposit ticket for $14,000); pg. 116 (APPENDIX at 170) (deposit ticket for $100,000).

In addition to numerous cash purchases, Darnay Thibodaux and her husband also used money from Sidney Dobronich's accounts to purchase:

- a new Nissan Altima car for Darnay Thibodaux (using a cashier's check in the amount of $26,000 which had "doctor bills" written in the memo line);[8]
- an extended-cab pickup truck for her husband, Calvin;[9]
- a new tractor;[10]
- a new camper;[11] and
- a plot of land at 29066 Ellis Drive.[12]

Darnay Thibodaux also called upon her notary friend to effect the donation of Sidney Dobronich's house and the land underneath it to Darnay Thibodaux and her husband.[13]

The family of Sidney Dobronich—particularly his nephews Forest and George, who lived in Mississippi—became aware of the situation in the middle of March 2013 when Sidney Dobronich's investment banker reached out because something seemed amiss.[14] Forest Dobronich and George Dobronich spoke to Sidney Dobronich, and then to the Thibodauxs, and then contacted the St. Tammany Parish Sheriff's Office.[15]

Detective Stefan Montgomery investigated on behalf of the St. Tammany Parish Sheriff's Office. As a result of Detective Montgomery's investigation, three separate legal proceedings were instituted:

- this criminal prosecution;[16]
- a proceeding by the United States of America to forfeit property purchased with Sidney Dobronich's money as proceeds of wire fraud

---

8   Exhibit 2, pp. 8-9 (APPENDIX at 36-37); Exhibit 3, pp. 39-40 (APPENDIX at 93-94) (counter withdrawal converted to cashier's check in the amount of $26,000); id. at 40 (APPENDIX at 94) (cashier's check deposited by Eddie Tourelle's Northpark Nissan, Inc.); id. at 72 (APPENDIX at 126) (bill of sale from Northpark Nissan).
   Darnay Thibodaux also wrote a check in the amount of $1,300.00 from one of Sidney Dobronich's checkbooks for the "Nissan Security Plus" extended warranty. See Exhibit 3, pp. 72, 74 (APPENDIX at 126, 128).

9   Exhibit 2, pg. 8 (APPENDIX at 36); Exhibit 3, pp. 29-30 (APPENDIX at 83-84) (check converted to cashier's check in the amount of $9,950.00 payable to Nationwide Auto Sales); Exhibit 3, pg. 66 (APPENDIX at 120) (bill of sale from Nationwide Auto Sales).

10  Exhibit 2, pg. 9 (APPENDIX at 37). Exhibit 3, pp. 49-50 (APPENDIX at 103-104) (counter withdrawal converted to cashier's check in the amount of $22,944.31, payable to Evergreen Tractor); id. at 76-78 (APPENDIX at 130-131) (invoice from Evergreen Tractor).

11  Exhibit 2, pg. 9 (APPENDIX at 37); Exhibit 3, pp. 82-88 (APPENDIX at 136-142). See particularly id. at 84 (APPENDIX at 138) (bill of sale, reflecting $19,500 down payment); id. at 86 (APPENDIX at 140) (detailed invoice, reflecting that the Thibodauxs paid an extra $735 for the "PLATINUM PACKAGE" and another extra $1,450 for the CONVENIENCE PKG—which included upgraded window treatments and cabinet hardware, tinted windows, a Serta mattress, and outside speakers—as well as an additional $795 for "LEATHER THEATRE SEATING").

12  Exhibit 2, pp. 9, 22 (APPENDIX at 37, 50); Exhibit 3, pp. 47-48 (APPENDIX at 101-102) (money order), pp. 79-80 (APPENDIX at 133-134).

13  Exhibit 2, pp. 3, 20 (APPENDIX at 31, 48); Exhibit 3, pp. 7-9 (act of donation) (APPENDIX at 61-63).

14  Exhibit 2, pp. 1-2 (APPENDIX at 29-30); Exhibit 13, ¶ 11 (APPENDIX at 400, 408-409) (sworn allegations of Forest and George Thibodaux); Exhibit 19, pg. 14, lines 25-32 (APPENDIX at 442) (testimony of Joe Romano).

15  Exhibit 2, pp. 1-2 (APPENDIX at 29-30); Exhibit 13, ¶ 11 (APPENDIX at 400, 408-409).

16  Exhibit 6 (APPENDIX at 318) (bill of information).

and bank fraud (case no. 13-cv-5566 on the docket of the United States District Court for the Eastern District of Louisiana);[17] and

- a civil suit by Sidney Dobronich, through his nephews, to recover the property wrongfully appropriated by the Thibodauxs (case no. 2013-11784 on the docket of the 22nd Judicial District Court, Division "D").[18]

In addition, after Sidney Dobronich died in 2014, his heirs initiated succession proceedings (case no. 2014-30680 on the docket of the 22nd Judicial District Court, Division "I").[19] The Thibodauxs intervened in the succession proceedings, alleging that they and not Sidney Dobronich's family members were the rightful heirs to his property.[20]

Ultimately, Darnay Thibodaux and Calvin Thibodaux pleaded guilty as charged in the state court criminal proceedings (this case).[21] The court in the civil wrongful-appropriation case granted relief to the plaintiffs (case 2013-11784).[22] The court in the succession proceeding rejected the Thibodauxs' claim that they were the rightful heirs to Sidney Dobronich's property (case 2014-30680).[23] And the federal court ordered forfeiture of the property seized as proceeds of bank and wire fraud (case no. 13-cv-5566).[24]

Additional details are provided as are necessary to address the petitioner's claims for post-conviction relief.

2.      PROCEDURAL HISTORY.

Darnay Thibodaux pleaded guilty on December 17, 2014 and, in doing so, affirmed that she was pleading guilty because she had "in truth and in fact committed the crime" charged in the bill of information.[25] The court imposed sentence on January 29, 2015.[26] The petitioner did not file a motion to reconsider sentence and did not appeal her sentence. The conviction thereafter became "final" within the meaning of La. C.Cr. P. art. 922(D) when the time period for seeking appellate review—30 days from the date of sentencing—passed. That date was February 29, 2015.

The State concedes that the *Application for Post-Conviction Relief* is timely filed.

---

17  Exhibit 25 (APPENDIX at 691-704) ("Complaint for Forfeiture in Rem").
18  Exhibit 13 (APPENDIX at 398-409) ("Petition for Revocation of Act of Donation, Return of Cash and Movable Property, for Damages and for Order of Sequestration").
19  Exhibit 27 (APPENDIX at 706-715).
20  Exhibit 28 (APPENDIX at 716-718).
     See also Exhibit 29, pg. 8, lines 18-31 (APPENDIX at 726) & id. at pg. 14, lines 20-25 (APPENDIX at 732).
21  Exhibit 10 (APPENDIX at 358) *(Boykin* form); Exhibit 11 (APPENDIX at 359-372) (transcript of proceedings).
22  Exhibit 24, pg. 134, lines 22-29 (APPENDIX at 686).
23  Exhibit 29, pg. 91, lines 3-8 (APPENDIX at 809).
24  Exhibit 26 (APPENDIX at 705).
25  Exhibit 11, pg. 6, lines 4-19 (APPENDIX at 364).
26  Exhibit 12, pp. 21-22 (APPENDIX at 393-394).

3.    **THE PETITIONER'S CLAIMS LACK MERIT.**

The petitioner seeks relief on the grounds that her guilty plea was the result of "unlawful coercion" because it was obtained in violation of her "Due Process right to be free from the knowing submission of false evidence in a criminal prosecution against her" (Claim I). She claims that the ruling "that Mr. Dobronich was incompetent [to testify]" violated her right to compulsory process (Claim II). And, finally, she claims that her right to Due Process has been violated by the intentional destruction of exculpatory evidence by Detective Stefan Montgomery (Claim III).

### 3.1.    The prosecution of the petitioner was not based upon false evidence.

The petitioner in her application for post-conviction relief, asserts the following:

> [T]wo of Mr. Dobronich's nephews, George and Forest Dobronich ("the Nephews") . . . engaged Detective Stefan Montgomery of the St. Tammany Parish Sheriff's Office ("STPSO") to open a criminal investigation of the Petitioner for elder exploitation, which involved a search of Mr. Dobronich's financial records, interviews of Petitioner as well as representatives from various financial institutions. Although Det. Montgomery was able to determine the true nature of the arrangement between Mr. Dobronich and the Thibodauxs and was specifically informed by Mr. Dobronich on March 21, 2013 of the nature of the arrangement and that all transactions were specifically authorized; Detective Montgomery assisted the Nephews in concealing Mr. Dobronich's assent to these transactions and in gaining physical control over Mr. Dobronich through an illegally obtained power of attorney which the Nephews further used to obtain exclusive physical control over Mr. Dobronich.
>
> * * *
>
> During the pendency of the criminal investigation and the civil revocation action, and despite being under intense coercion and almost exclusive physical control of the Nephews, Mr. Dobronich had the opportunity to provide sworn testimony in two instances in which he attempted to state that all transactions performed by the Petitioner were specifically authorized and he did not want to prosecute the Petitioner or her husband.[*] The Nephews used their power of attorney to prevent any further deposition testimony from Mr. Dobronich or even contact with anyone outside of the Nephews. The Nephews also used their power of attorney to have Mr. Dobronich declared incompetent to testify by the Court in the civil revocation action, submitting to the Court medical reports of Dr. Paul Verrette ("the Verrette Reports") stating that Mr. Dobronich suffered from "dementia." Based on the Verrette Reports, the Court in the Civil Revocation Action issued a judgment declaring Mr. Dobronich incompetent to testify on August 27, 2013, and Petitioner was precluded from obtaining any potentially exculpatory testimony from Mr. Dobronich through his death on March 25, 2014.

---

\* On the evening of March 27, 2013—the same day that a search warrant was executed at the Thibodaux's residence—the petitioner and her husband went to the home of Rebecca Crawford—the notary—and told her "all their things had been seized, and their lawyer said they needed to go to the hospital right away and get a statement stating Mr. Dobronich had no objection to them purchasing 'whatever they purchased.' " Crawford agreed to go to Sidney Dobronich's hospital room and, once there, asked him to sign a statement. She notarized the statement even though she thought he was "a little bit confused." Exhibit 2, pp. 20-21 (Appendix at 48-49). See also Exhibit 19, pp. 81-82 (Appendix at 510-511).

Several days later, Detective Montgomery interviewed Mr. Dobronich, who "recalled 'signing something' recently but could not recall what it was." Exhibit 2, pg. 19 (Appendix at 47).

Notwithstanding the death of Mr. Dobronich in March of 2014, in August of 2014, the Louisiana Department of Justice, which was handling the prosecution in the criminal case, procured expert testimony from Dr. Michelle Garriga regarding a forensic psychiatric analysis of Mr. Sidney Dobronich. This expert testimony relied heavily upon the Verrette Reports and the statements of the Nephews and concluded that Mr. Dobronich suffered from Major Neurocognitive Disorder (Dementia) and lacked the capacity to consent to any of the transactions conducted within the last two years of his life, including between February and March of 2013 for which petitioner was being prosecuted. . . .

\* \* \*

At around the same time that the State was procuring expert testimony regarding Mr. Dobronich's competence to authorize the transactions at issue, in August 2014, the nephews opened a succession of their uncle: Succession of Dobronich, No. 2014-30680, 22nd J.D.C., Div "I" ("the Succession") In this Succession, the Nephews probated a hand written testament of Mr. Dobronich purporting to leave all of his property to his Nephews, and other nieces and nephews of Mr. Dobronich. The hand written will was dated July 18, 2013, within two weeks of the date of the Verrette Reports declaring the diagnosis of dementia and the mental incapacity of Mr. Dobronich.[**]

\* \* \*

On December 17, 2014, Petitioner and her husband changed their pleas to guilty as charged. The prosecution, while agreeing to a sentence of probation for Petitioner's husband Calvin Thibodaux, insisted on a pre-sentence investigation as to Petitioner. . . .

From 17 December 2014 through January 29, 2015, the pre-sentence investigation was conducted on behalf of the Division of Probation and Parole ("PPO") by Parole Officer ("PO") Letitia Moore. During the investigation, both the Nephews and Det. Montgomery provided information to PO Moore regarding the specific transactions occurring between February and March of 2013 and that the value of the transactions amounted to $334,000. The Nephews and Det. Montgomery omitted to advise that the Nephew's obtained power of attorney over Mr. Dobronich on March 28, 2013 and that at least $292,000 of the purported $334,000 had been seized by state and Federal law enforcement or was in control of the Nephews via their power of attorney. Nephew, Forest Dobronich specifically and falsely advised PO Moore that only "$70,000 to $100,000" of the $334,000 had been "recovered." Additionally, PO Moore's investigation revealed only one unpaid medical bill, which was accrued during the time in which the Nephews had control over Mr. Dobronich through their power of attorney.

Prior to filing her motions with the court, Petitioner was interviewed by PO pursuant to the pre-sentence investigation. PO Moore was specifically aware of the transactions contained in Det. Montgomery's investigation and proceeded to seek specific admissions of guilt with regards to each of the transactions made pursuant to Petitioner's arrangement with Mr. Dobronich. . . . Petitioner refused to admit to PO Moore of wrongfully appropriating any of Mr. Dobronich's property.

---

\*   \*   Because this was arguably contrary to the prosecution's theory of the case, the prosecution disclosed this to the petitioner. The petitioner acknowledges this in her application for post-conviction relief: "On November 10, 2014 AAG Blake tendered to Petitioner's counsel, Mr. Roy Burns, what the State of Louisiana identified as *Brady* material regarding the July 18, 2013 purported testament. . . ." Claim 1, pg. 5.

PO Moore submitted the PPO Pre-Sentence Investigation Report ("PSIR") to the District Court on the day of motions and sentencing, January 29, 2015. The PSIR reflected a perceived lack of remorse on the part of Petitioner for refusing to "admit" that the specific transactions were wrongful. The PSIR also falsely reflected that $230,000 to $260,000 was still "outstanding", that Petitioner spent Mr. Dobronich's money under the pretense of paying Mr. Dobronich's medical bills, and that at least $1,000 of Mr. Dobronich's medical bills remained unpaid as a result of Petitioner's wrongful actions.

\* \* \*

Subsequent to the District Court's rulings and sentence on January 29, 2015, on February 24, 2015, the Court in the Successions proceeding held a hearing on the petition to annul testament filed by Petitioner herein. Within that hearing, the proponents of the July 18, 2013 testament offered the sworn testimony of the Nephews, as well as Detective Stefan Montgomery of the St. Tammany Parish Sheriff's Office, that, at all times from February 2013 through his death in March of 2014, Mr. Dobronich was fully mentally competent. Additionally, upon attempting to introduce the Verrette Report, the critical evidence supporting the State's expert testimony against Petitioner, the Nephew's through their counsel, objected to the introduction of the report on the grounds that the Verrette Reports constituted unreliable hearsay. Pursuant to those occurrences, the Court in the successions proceedings accepted the testimony offered by the Nephews, sustained the hearsay objection as to the Verrette report, and issued a Judgment upholding Mr. Dobronich's execution of the July 18, 2013 hand written will.

\* \* \*

Based on the totality of the evidence set forth, much of which was obtained after the fact, it is clear that both the Expert Report of Dr. Garriga regarding Mr. Dobronich's purported mental incompetency in February and March of 2013, and the January 29, 2015 Pre-Sentence Investigation Report averring the non-recovery of approximately $250,000 of Mr. Dobronich's assets, were patently false. More disturbingly, the evidence overwhelmingly supports the conclusion that the Louisiana Department of Justice, as the prosecutor in the case, was not only aware that Garriga Report was patently false, but that it was submitted to the Court with the specific malicious intent to wrongfully benefit the Nephews of Mr. Dobronich in their attempt to acquire ownership of Mr. Dobronich's estate in the concurrent civil proceedings. The false Garriga Report was critical for the prosecution of Petitioner, as the prosecution could not have been maintained against petitioner without it. Likewise, the Pre-Sentence Investigation Report was instrumental not only in the unduly severe sentence imposed upon Petitioner, but also prejudiced the District Court's decision regarding her Motion to Withdraw her Guilty Plea. Both submissions violated Petitioner's Due Process right to be free from the knowing submission of false evidence in a criminal prosecution against her (which right not only confers a non-waivable duty upon the prosecutor not to knowingly offer false evidence, but an equally affirmative nonwaivable duty to correct such an error when discovered).

Claim I.

### 3.1a.   The testimony contained in the transcript of the proceedings held February 24, 2015 is not inconsistent with the State's theory of the case.

A review of the transcript of the proceedings held February 24, 2015—Exhibit 29 (APPENDIX 719-810)—does not corroborate the allegation that "the Nephews and Det. Montgomery completely disavowed the State's contention that Mr. Dobronich was mentally incompetent."

*i.*

Initially, the State never contended that Sidney Dobronich was completely incompetent on a 24/7 basis. Instead, the State contended (and still believes) that Mr. Dobronich was at times alert and oriented but could become disoriented quickly when in a foreign environment and/or exposed to psychological pressure. See, e.g., Exhibit 9, pp. 1-5 (APPENDIX at 339-343) (report of Dr. Garriga) (noting variations in Mr. Dobronich's mental condition while hospitalized); Exhibit 19, pp. 13-14 (APPENDIX at 441-442) (testimony of investment broker Joe Romano about a telephone conversation with Sidney Dobronich in which he heard Darnay Thibodaux in the background telling Mr. Dobronich what to say, and in which Mr. Dobronich followed her instructions); Exhibit 19, pg. 79 (APPENDIX at 507) (Mr. Dobronich became disoriented when subjected to cross-examination in open court).[27]

*ii.*

At the hearing held February 24, 2015, Forest Dobronich testified in pertinent part as follows:

> My uncle's mental state from the time he moved in until he died, I would say, you know, the beginning, maybe the first six months that I had him, he looked to be in good shape mentally.
>
> The only thing I found is that after taking him out of his habitat and bringing and subjecting him to, you know, like long days at rehab, or a

---

27 After several minutes of cross-examination, the court intervened, as follows:

| | |
|---|---|
| THE COURT: | Let me stop you right there. |
| | Mr. Dobronich, look at me. What are we doing here right now? |
| THE WITNESS: | Huh? |
| THE COURT: | What are we doing right here in this courtroom right now? |
| THE WITNESS: | In court. |
| THE COURT: | Why are we here? |
| THE WITNESS: | Why am I here? I don't know. |
| THE COURT: | What am I doing here? What am I supposed to do? |
| | Do you know what my role is and what I'm supposed to be doing? |
| | What? You're just nodding yes. All right. You can step down. You can step down. |
| | Based on my observation of this gentleman on the stand, I do not think he's competent to testify. |

Exhibit 19, pg. 79 (APPENDIX at 507).

couple of hours at rehab, or long days in court, doctors, driving him here and there, he did not like being disturbed with that. He got fatigued real fast, and his mind did go. But other than that, if he was sitting at home, which he was comfortable with, really he was competent.

Exhibit 29, pp. 38-39 (APPENDIX at 756-757).

When questioned specifically about the findings of Dr. Verrette, Forest Dobronich testified:

> Q:  I just need to ask you a few questions. It references a status conference in front of the -- it references a status conference in front of the judge in the matter in Division "D" wherein Ms. Vallejo represents that she objects -- we oppose the setting of Sidney Dobronich's deposition based on his incompetency and dementia. I want to ask you, sir, does that accurately reflect your position?
>
> A:  My position?
>
> Q:  Yes?
>
> A:  I mean, my position about what?
>
> Q:  Does that reflect your position as of July 17?
>
> A:  Do I agree to that?
>
> Q:  Yes?
>
> A:  I mean, it's a doctor that said it. I mean, you know, I disagree. I was under the assumption it was to give testimony at the coming trial or deposition. That's all I knew. It was to determine if he could give testimony in a deposition.
>
> Q:  But as of July 17, 2013, you would agree that that was your legal position to Division "D"?
>
> MS. VALLEJO:  I'm going to object to that. He's asking for a legal conclusion, and Mr. Dobronich just answered his question.
>
> THE COURT:  I think it's been asked and answered. You don't need to argue with him. Go onto something else. He testified he thought whatever opinion that was, it was relevant to a proposed deposition at the time or further court testimony. At least I understood that's what he --
>
> MR. BROWN:  Yes, Your Honor. I understand. Again, I appreciate the Court's patience. I just want to make sure I've covered everything. That's all I have, Your Honor.

Exhibit 29, pp. 68-69 (APPENDIX at 786-787).

### ii.

Detective Montgomery testified that when he visited Sidney Dobronich at the hospital in connection with his investigation, Sidney Dobronich appeared to be lucid. Exhibit 29, pp. 62-64 (APPENDIX at 780-782). This is consistent with his report and his prior testimony. Cf. Exhibit 2, pp. 3-4, 9-10, 19 (APPENDIX at 31-32, 37-38, 47); Exhibit 19, pp. 89-90 (APPENDIX at 518-519).

*iii.*

George Dobronich testified that he visited Sidney Dobronich seven or eight times after his March 2013 hospitalization, and that each time he visited, Sidney Dobronich appeared to be lucid. Exhibit 29, pp. 77-78  (APPENDIX at 795-796).

*iv.*

Nothing about the testimony adduced February 24, 2015 amounts to a "complete disavowal" of the notion that Sidney Dobronich was ever at any time incompetent.

> **3.1b.   There is no factual basis for the petitioner's assertion that Detective Montgomery "was specifically informed by Mr. Dobronich on March 21, 2013 . . . that all transactions were specifically authorized."**

In Claim I, the petitioner asserts: "Det. Montgomery was able to determine the true nature of the arrangement between Mr. Dobronich and the Thibodauxs and was specifically informed by Mr. Dobronich on March 21, 2013 of the nature of the arrangement and that all transactions were specifically authorized."

Detective Montgomery's testimony indicates otherwise. Specifically, Detective Montgomery about his March 21, 2013 interview with Sidney Dobronich in proceedings held May 20, 2015. That testimony reads in pertinent part as follows:

> I asked him if he authorized the Thibodauxs to buy a camper, to which he laughed and stated he had no use for a camper. So I asked him if he gave Darnay permission to buy a new car, a new truck, or a new tractor, to which he stated no.

Exhibit 24, pg. 59, lines 5-22 (APPENDIX at 611).

The petitioner's assertion is contradicted by this testimony. While the petitioner *speculates* that this testimony is false, there is no *evidence* to support this speculation.

> **3.1c.   There is no factual basis for the petitioner's claim that the report authored by Dr. Michelle Garriga is "patently false."**

The petitioner describes the report authored by Michelle Garriga, M.D., as "patently false."

Initially, the caption of the report authorized by Dr. Garriga is "Forensic Psychiatric Evaluation of Sidney Dobronich *by Record Review Only*" (emphasis supplied). Exhibit 9, pg. 1 (APPENDIX at 339). It consists of two parts: a summary of the records reviewed (pp. 1-18) (APPENDIX at 339-356) and an "assessment" along with a "basis for opinion" (pp. 18-19) (APPENDIX at 356-357).

The petitioner argues that the records reviewed by Dr. Garriga are contradicted by other evidence which was *not* reviewed by Dr. Garriga. The petitioner does not argue that that Dr. Garriga misrepresented the records she *did* review. Nor does the petitioner argue that Dr. Garriga's opinion is unsupported by the records she actually reviewed.

The petitioner fails to demonstrate that any portion of the report is in any way false.

### 3.1d.   There is no factual basis for the petitioner's claim that the pre-sentence investigation was "patently false."

The petitioner argues that the Pre-Sentence Investigation prepared by Agent Letitia Moore of the Department of Probation & Parole was also "patently false" as follows:

> The PSIR reflected a perceived lack of remorse on the part of Petitioner for refusing to "admit" that the specific transactions were wrongful. The PSIR also falsely reflected that $230,000 to $260,000 was still "outstanding", that Petitioner spent Mr. Dobronich's money under the pretense of paying Mr. Dobronich's medical bills, and that at least $1,000 of Mr. Dobronich's medical bills remained unpaid as a result of Petitioner's wrongful actions.

First, the "perceived" lack of remorse was simply an accurate perception. Agent Moore relayed her conversation with the petitioner as follows:

> Thibodaux was questioned about the instant offense. Her reply was, "I didn't commit a crime. l bought the tractor for cleaning the property for Mr. Sidney's rental properties. It was all for Mr. Sidney. I am a stay at home mother. I have 13 grand kids, I'm not guilty for this and I will prove it to him. My evidence has not been seen in court. This totally ruined my life. Roy Burns told me I had no choice but to plead guilty because Calvin was pleading guilty. Mr. Sidney wanted me to get a car, he wanted me to get a Camaro, but I said, Mr. Sidney, I don't need a Camaro. I'm withdrawing my guilty plea and I want to go to trial. I'll prove that Stefan Montgomery's investigation was totally illegal and my civil rights were violated." Thibodaux also stated, "this is the second time I have been screwed by the justice system."

Pre-Sentence Investigation, pg. 2 of 7.[28]

The pre-sentence investigation followed a proceeding in which Darnay Thibodaux admitted, under oath, that she was "in truth and in fact" guilty of the charged crime.[29] "Remorse" is defined as "a gnawing distress arising from a sense of guilt for past wrongs."[30] There is nothing incorrect (much less "patently false") about Agent Moore's perception that Darnay Thibodaux lacked remorse given Darnay Thibodaux's statement that "I didn't commit a crime."

---

28  The pre-sentence investigation has not been attached as an exhibit because it is designated as "privileged" by Article 877 of the Code of Criminal Procedure. It is, however, already in the court's possession.

29  Exhibit 11, pg. 6, lines 4-19 (APPENDIX at 364).

30  http://www.merriam-webster.com/dictionary/remorse  (accessed October 17, 2016).

Second, a review of the pre-sentence investigation does not anywhere reflect that "$230,000 to $260,000 was still 'outstanding.' " The quoted word "outstanding" is nowhere to be found in the pre-sentence investigation. The only statement about restitution made in the PSI is in the context of the statement of Forest Dobronich, in which Agent Moore reports: "At this time Mr. Dobronich stated approximately $70,000 to $100,000 has been returned. A more exact amount will have to be determined at a later date. Mr. Dobronich wants to make sure Thibodaux pays restitution." Pre-Sentence Investigation, pg. 2 of 7.

Agent Moore did not report that the petitioner owed any particular amount. She stated that the "exact amount will have to be determined at a later date." This is not false.

Finally, it appears that the petitioner *did* spend Mr. Dobronich's money under the pretense of paying for his medical bills. She told investment banker Joe Romano that she needed $60,000 to pay medical bills, and as a result Joe Romano transferred $60,000 to Sidney Dobronich's checking account. The petitioner did not produce—and still has not produced—any documentation reflecting the payment of $60,000 in medical bills.

The petitioner fails to demonstrate that any portion of the pre-sentence investigation is in any way false.

### 3-1e. The petitioner's assertion that the prosecutor knowingly submitted false evidence is without merit because none of the evidence is "false."

The State agrees as it must with the general proposition that it may not rely upon evidence known to be false in order to secure a guilty plea. Waley v. Johnston, 316 U.S. 101 (1942). But the evidence simply is *not false*. The petitioner has presented no rational basis for concluding that any of the evidence against her is false.

### 3.2. The petitioner has not been denied the right of compulsory process.

In Claim II, Darnay Thibodaux complains that "the District Court's ruling that Mr. Dobronich was incompetent and could not have provided favorable testimony for Petitioner was clearly erroneous and resulted in a fundamental deprivation of Petitioner's Constitutional rights."

### 3-2a. Additional pertinent facts.

The assertion regarding Sidney Dobronich's competency to testify arises out of civil proceedings between private persons, namely, the *Petition for Revocation of Act Donation, Return of Cash and Movable Property, for Damages and for Order of Sequestration* filed by Forest

Dobronich and George Dobronich against Darnay Thibodaux and Calvin Thibodaux (case 2013-11784 "D").[31]

In connection with those proceedings, the Thibodauxs sought to depose Sidney Dobronich.[32] The Dobroniches first wrote a letter stating that they "oppose any deposition of Mr. Dobronich outside of the court's presence"[33] and thereafter filed a *Petition for Temporary Restraining Order*[34] and then a *Motion to Cancel Deposition and Quash Deposition Subpoena*.[35] The Thibodauxs, in turn, filed a *Rule to Show Cause* asking the Dobroniches to "show cause why Mr. Sidney Dobronich should not submit to his deposition or in lieu, a dismissal with prejudice of the petition herein."[36]

The court (Division "D") considered these matters on June 25, 2013. Sidney Dobronich testified at that hearing. His direct examination testimony was coherent, and he testified in pertinent part as follows:

Q:     [W]ho do you believe takes care of your money?

A:     I do.

Q:     You take care of it. Do you want anyone else to take care of your money?

A:     No.

Q:     Have you ever signed any documents authorizing anyone else to take care of your money?

A:     No.

Q:     No? Would you ever want to do that?

A:     When the time comes.

Q:     When the time comes?

A:     When the time comes.

Q:     But you don't want to do that just yet?

A:     I don't want to do it just yet.

Q:     Have you ever donated any money, any property, to anyone?

A:     Never.

* * *

Q:     If I were to tell you, Mr. Dobronich, that you signed a document authorizing Darnay Thibodaux to have access to your investment accounts, would you agree with that?

A:     (Negative response.)

---

31 Exhibit 13 (APPENDIX at 398-409).
32 Exhibit 14 (APPENDIX at 410).
33 Exhibit 15 (APPENDIX at 411).
34 Exhibit 16 (APPENDIX at 412-418).
35 Exhibit 17 (APPENDIX at 419-424).
36 Exhibit 18 (APPENDIX at 425-428); see particularly id. at ¶ 8 (APPENDIX at 426).

- 14 of 18 -

Q:    Do you recall signing such a document?

A:    I don't remember.

Q:    Do you want Darnay Thibodaux to handle your finances?

A:    No.

Q:    Do you want her to have access to your money?

A:    Uhg-ug (Negative response).

* * *

Q:    Who do you want to have your property when you die?

A:    My nephews and nieces and all.[37]

On cross-examination, he testified:

Q:    Have you ever given Darnay Thibodaux any money or checks?

A:    No.

Q:    Now, what I'd like to do -- now, I'd like to show you something, and if you can, can you see that? And do you know what that is?

BY THE COURT:    You have to answer out loud.

A:    Yeah.

Q:    All right. What is it, Mr. Sidney?

A:    It's a check for 9,000.

Q:    And who it is payable to?

A:    Huh?

Q:    Who is it payable to?

A:    To Darnay.

Q:    And who signed that check as the maker?

A:    They forged my name to it. It ain't my signature on the bottom.

Q:    That's not your signature?

A:    No, sir.[38]

Upon further cross-examination, Sidney Dobronich became disoriented, causing the court to

intervene as follows:

THE COURT:    Let me stop you right there. Mr. Dobronich, look at me. What are we doing here right now?

THE WITNESS:    Huh?

THE COURT:    What are we doing right here in this courtroom right now?

THE WITNESS:    In court.

THE COURT:    Why are we here?

THE WITNESS:    Why am I here? I don't know.

THE COURT:    What am I doing here? What am I supposed to do?

Do you know what my role is and what I'm supposed to be doing?

---

37 Exhibit 19, pp. 58-59, 62 (APPENDIX at 486-497, 490).

38 Exhibit 19, pg. 68, lines  (APPENDIX at 486-497, 490).

What? You're just nodding yes.

All right. You can step down. You can step down.

Based on my observation of this gentleman on the stand, I do not think he's competent to testify.[39]

At the conclusion of the hearing, the court told the Thibodaux: "I understand your right to depose him. I would like for you to have that right, but I want him examined by a doctor before I make that determination."[40]

Thereafter, physician Paul M. Verrette examined Sidney Dobronich and opined: "[h]e has multiple medical problems which include hypertension, hypertensive cardiovascular disease, coronary artery disease, s/p coronary artery stent, osteoarthitis with total hip replacement of the left hip, chronic renal insufficiency and dementia."[41] In a follow-up letter, Dr. Verrette expressed his "professional medical opinion" that Sidney Dobronich "is not mentally stable enough to be able to provide any competent testimony in a court of law, including a deposition."[42]

The court minutes from August 27, 2013 reflect that "counsel submitted a consent judgment to the Court making defendants Rule for Deposition of Sidney Dobronich moot."[43] That same day the Court issued an order—prepared by counsel for the Thibodauxs—finding Sidney Dobronich "incompetent to testify in these proceedings by way of deposition or trial testimony."[44]

### 3-2b.   The testimony of Sidney Dobronich was excluded from the criminal proceedings on motion of the petitioner.

Approximately two weeks after Sidney Dobronich was declared incompetent to testify in the civil revocation-of-donation proceedings, Darnay Thibodaux filed a *Motion to Exclude Testimony from Sidney Dobronich* in the instant criminal case. She asserted: "the defendants believe that Sidney Dobronich does not have the capacity or competency to testify" and requested "an order of the court declaring that Sidney Dobronich does not have the capacity to testify."[45]

This Court issued such an order with the consent of the parties.[46]

---

39 <u>Exhibit 19</u>, pg. 79, lines 4-29 (APPENDIX at 507).
40 <u>Exhibit 19</u>, pg. 117, lines 4-8 (APPENDIX at 545).
41 <u>Exhibit 20</u> (APPENDIX at 549).
42 <u>Exhibit 21</u> (APPENDIX at 550).
43 <u>Exhibit 22</u> (APPENDIX at 551).
44 <u>Exhibit 23</u> (APPENDIX at 552).
45 <u>Exhibit 7</u>, pg. 1 (APPENDIX at 319).
46 <u>Exhibit 8</u>, pp. 7-8 (APPENDIX at 327-328).

**3-2c.   The petitioner is not entitled to relief based upon this claim.**

The Sixth Amendment guarantees the defendant the right "to have compulsory process for obtaining witnesses in his favor."

There has been no denial of the right to compulsory process because the petitioner never attempted to use compulsory process to obtain the testimony of Sidney Dobronich. Darnay Thibodaux did not, during the criminal proceedings, attempt to use compulsory process to secure the testimony of Sidney Dobronich. To the contrary, she took steps to ensure that he did *not* testify by moving to exclude his testimony.

Further, there is no non-speculative basis for concluding that the testimony of Mr. Dobronich would have been favorable to the petitioner in light of the existing testimony of Mr. Dobronich that he did not want Darnay Thibodaux to have access to his money and that his signature had been forged on a $9,000 check made out to Darnay Thibodaux.

Finally, the actions taken by the nephews of Sidney Dobronich do not implicate the Due Process Clause because they do not involve state action.

### 3.3.   There has been no intentional destruction of exculpatory evidence.

The petitioner, in Claim III, asserts: "the evidence in this case supports the contention that Mr. Dobronich specifically told Det. Montgomery on March 21, 2013 that all transactions that were made by Petitioner on Mr. Dobronich's behalf were specifically authorized and that any allegations of the Nephews to the contrary were maliciously baseless. The evidence also supports the contention that Mr. Dobronich's statement to Det. Montgomery was recorded by Det. Montgomery, which recording was subsequently destroyed by Det. Montgomery, as it did not fit his false narrative against Petitioner and her husband."

### 3-3a.   Additional pertinent facts.

Detective Montgomery has testified about his March 21, 2013 interview with Sidney Dobronich as follows:

> I asked him if he authorized the Thibodauxs to buy a camper, to which he laughed and stated he had no use for a camper. So I asked him if he gave Darnay permission to buy a new car, a new truck, or a new tractor, to which he stated no.

Exhibit 24, pg. 59, lines 5-22 (APPENDIX at 611).

Detective Montgomery has also testified about whether he recorded the March 21, 2013 interview:

> Q:     When was that second interview? I want to say for ease of finding that, does March 21 sound about right?
>
> A:     March 21, that's correct.
>
> Q:     The second interview was not recorded; is that correct?
>
> A:     That is correct.

Exhibit 29, pp. 62-63 (APPENDIX at 780-781).

### 3-3b.   The petitioner is not entitled to relief based upon this claim.

The United States Supreme Court, in Arizona v. Youngblood, 488 U.S. 51 (1988), held that the destruction of evidence does not violate due process "unless a criminal defendant can show bad faith on the part of the police." Id. at 58.

Here, there has been no destruction of evidence. As demonstrated from the testimony quoted above, Detective Montgomery did not record the March 21, 2013 interview with Sidney Dobronich. The petitioner presents no facts upon which one could conclude that Detective Montgomery *did* record the interview and then destroy the recording.

The petitioner is not entitled to relief on this basis.

### 4.       CONCLUSION AND PRAYER.

The petitioner's allegations are unaccompanied by proof and are contradicted by the available evidence. The Application for Post-Conviction Relief should be denied.

Respectfully submitted,

Matthew Caplan, LSBA #31650
Assistant District Attorney

### CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing pleading on counsel for the defense this 27th day of October, 2016, by hand-delivery to counsel for the petitioner.

Matthew Caplan, LSBA #31650
Assistant District Attorney

TWENTY-SECOND JUDICIAL DISTRICT COURT
FOR THE PARISH OF ST. TAMMANY
STATE OF LOUISIANA

NO. 538643-1                                             DIVISION "C"

STATE OF LOUISIANA

VERSUS

DARNAY THIBODAUX

FILED: _____          _____

DEPUTY CLERK

**APPENDIX TO STATE'S RESPONSE TO DARNAY THIBODAUX'S
APPLICATION FOR POST-CONVICTION RELIEF**

NOW INTO COURT, through undersigned counsel, comes the State of Louisiana, which respectfully submits the attached documents in connection with its *Response to Darnay Thibodaux's Application for Post-Conviction Relief*.

The following documents are attached hereto, and have been assigned page numbers as follows:

Page(s)

I.   **The investigation.**

   1.   St. Tammany Parish Sheriff's Office, Initial Report.                          3-28

   2.   Detailed Supplemental Report of Detective Montgomery.               29-54

   3.   Attachments to Detailed Supplemental Report.                              55-286

   4.   St. Tammany Parish Sheriff's Office, Arrest Report (and warrants)   287-305

   5.   St. Tammany Parish Sheriff's Office, Supplemental Report.           306-317

II.  **The criminal case (this case).**

   6.    Bill of Information                                                                   318

   7.   *Motion to Exclude Testimony from Sidney Dobronich and Order*   319-320
        *Excluding Sidney Dobronich's Presence in the Courtroom, etc.*

   8.   Transcript – Proceedings held December 12, 2013                       321-338

   9.   Report of Dr. Michelle Garriga                                                  339-357

   10.  Plea of Guilty and Waiver of Rights Form                                   358

   11.  Transcript – Proceedings held December 17, 2014                       359-372

   12.  Transcript – Proceedings held January 29, 2015                         373-397

III. **The civil revocation-of-donation proceedings (2013-11784 "D").**

   13.  *Petition for Revocation of Act of Donation, Return of Cash and*   398-409
        *Movable Property, for Damages and for Order of Sequestration*

   14.  Notice of Deposition                                                                 410

   15.  Letter from Dobroniches' counsel in response to Notice of Deposition   411

   16.  *Petition for Temporary Restraining Order, Preliminary Injunction,*   412
        *and Permanent Injunction*

17.   *Motion to Cancel Deposition and Quash Deposition Subpoena*   419

18.   *Rule to Show Cause*   425-428

19.   Transcript – Proceedings held June 25, 2013   429-548

20.   Letter from Paul R. Verrette, M.D. (dated July 2, 2013)   549

21.   Letter from Paul R. Verrette, M.D. (dated July 25, 2013)   550

22.   Minute Entry – Proceedings held August 27, 2013   551

23.   Judgment regarding competency to testify – August 27, 2013   552

24.   Transcript – Proceedings held May 20, 2015   553-690

**III.   The federal asset forfeiture proceedings (2014-cv-5566, E.D. La.)**

25.   *Complaint for Forfeiture In Rem*   691-704

26.   Judgment   705

**IV.   The succession proceedings (2014-30680)**

27.   *Petition for Probate and Possession*   706-715

28.   *Petition to Annul Probated Testament*   716-718

29.   Transcript – Proceedings held February 24, 2015   719-810

Respectfully submitted,


_____
Matthew Caplan, #31650
Assistant District Attorney

TWENTY-SECOND JUDICIAL DISTRICT COURT
FOR THE PARISH OF ST. TAMMANY
STATE OF LOUISIANA

NO. 538643-1                                         DIVISION "C"

**FILED**

STATE OF LOUISIANA

VERSUS                                               OCT 3 1 2016

DARNAY THIBODAUX                        MELISSA R. HENRY - CLERK

FILED: _____                              DEPUTY

                                                    _____
                                                    **DEPUTY CLERK**

### SUPPLEMENT TO STATE'S RESPONSE TO DARNAY THIBODAUX'S APPLICATION FOR POST-CONVICTION RELIEF

MAY IT PLEASE THE COURT:

This is an exploitation of the infirm case (La. R.S. 14:93.4). The State responded to

Darnay Thibodaux's Application for Post-Conviction Relief on October 27, 2016. The petitioner

has since then requested the State to retract the following assertion:

> [T]he State never contended that Sidney Dobronich was completely
> incompetent on a 24/7 basis. Instead, the State contended (and still
> believes) that Mr. Dobronich was at times alert and oriented but could
> become disoriented quickly when in a foreign environment and/or exposed
> to psychological pressure.

See Exhibit A, attached hereto (correspondence from petitioner's counsel).

The petitioner finds this to be inconsistent with the opinion of Dr. Michelle Garriga that

"to a reasonable degree of medical certainty Mr. Dobronich suffered from Major Neurocognitive

Disorder (Dementia), Possible Vascular Neurocognitive Disorder prior to February of 2013 and

up until his death." Id. *See Appendix to State's Response to Darnay Thibodaux's Application for

Post-Conviction Relief,* pp. 356-357 (pertinent portions of Dr. Garriga's report).

The prosecution did indeed intend to present the opinion of Dr. Garriga to the jury at the

petitioner's trial. The State also intended to present the testimony of Detective Stefan

Montgomery concerning his observations of, and interactions with, Sidney Dobronich.

According to Detective Montgomery, the three times that Det. Montgomery met with Mr.

Dobronich, Mr. Dobronich was aware of his surroundings and answered questions responsively.

*See Appendix to State's Response to Darnay Thibodaux's Application for Post-Conviction

Relief,* pp. 31-32, 37-38, 47 (police report); id. at 517-518 (testimony of Detective Montgomery

from hearing in civil case 2013-11784); id. at 578-580 & 609-612 (testimony of Detective

- 1 of 2 -

Montgomery from another hearing in civil case 2013-11784); id. at 780-781 (testimony of Detective Montgomery from hearing in civil case 2014-30680).

The prosecution believes that one may both (i) suffer from dementia and (ii) from time to time experience moments of lucidity. For that reason, the opinion of Dr. Garriga is not inconsistent with the observations of Detective Montgomery. In any event, to the extent that the opinion of Dr. Garriga conflicts with the observations of Detective Montgomery, the prosecution was prepared to present such conflicts to the jury for the jury's consideration. The prosecution is still prepared to present that evidence to a jury in the event that the application for post-conviction relief is granted and a new trial is ordered.

The prosecution respectfully submits that its assertion that it "never contended that Sidney Dobronich was completely incompetent on a 24/7 basis" is not a "gross and material misrepresentation[] of the State's position as to Mr. Dobronich's mental competence" as the petitioner may attempt to lead the Court to believe. *See* Exhibit A, attached hereto (correspondence from petitioner's counsel).

Respectfully submitted,

_____
Matthew Caplan, LSBA #31650
Assistant District Attorney


## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing pleading on counsel for the petitioner by email (cwbrown@cwbrownlaw.com) on this the 31st day of October, 2016.

_____
Matthew Caplan, LSBA #31650
Assistant District Attorney

**Matthew B. Caplan**

| | |
|---|---|
| **From:** | Claiborne W. Brown <cwbrown@cwbrownlaw.com> |
| **Sent:** | Friday, October 28, 2016 2:23 PM |
| **To:** | Matthew B. Caplan |
| **Subject:** | PCR:  Thibodaux v. Hidalgo |
| **Attachments:** | 20140829-laag-rkb-garriga-exp-rpt-EXERPT.pdf |
| | |
| **Case:** | Darnay Thibodeaux, 538643-1 |
| **MatterIdentifier:** | 88db57e4-8db0-4428-8d1c-6073525f59ea |

ADA Caplan:

I have reviewed the State's Response to the Petition for Post Conviction Relief and respectfully request that the State withdraw its contentions contained in paragraphs 3.1(a)(i) and 3.1(c), and further advise as to the Petitioner's response upon failure to do so by COB on Wednesday, November 2, 2016.

I particular, paragraph 3.1(a)(i) provides that:

> Initially, the State never contended that Sidney Dobronich was completely incompetent on a 24/7 basis.  Instead, the State contended (and still believes) that Mr. Dobronich was at times alert and oriented but could become disoriented quickly when in a foreign environment and/or exposed to psychological pressure.

Paragraph 3.1(c) provides (generally, and, presumably based on the aforementioned section) that "The petitioner fails to demonstrate that any portion of the report is in any way false."

However, the relevant portion of Dr. Garriga's report provides, unequivocally, as follows:

> **It is my opinion** to a reasonable degree of medical certainty that Mr. Dobronich suffered from Major Neurocognitive Disorder (Dementia), Possible Vascular Neurocognitive Disorder **prior to February of 2013 and up until his death.**

> . . . . Based upon his evaluation, Dr. Verrette further opined that Mr. Dobronich was "not able to direct his affairs concerning person or property in matters consistent with his own interest."

> **It is my opinion** that he lacked the same capacity in the months prior, i.e. during the time in question, February and March of 2014.  Dementia (except that caused by a sentinel event such as a massive stroke) **has a slow, step-wise progression**.  It does not spontaneously appear to the degree evident in Mr. Dobronich in June and July without it having also been present in the previous months.

Report of Dr. Garriga at pp. 18-19 (emphasis added).  This report, with these opinions, was tendered to Defense Counsel by the State on August 29, 2016.  Furthermore, as you are aware, the State specifically opposed a motion by Defense to exclude Dr. Garriga's testimony under L.R.E. 702 (*Daubert*), which motion was heard on December 16, 2013 and denied at that time (which transcript is not available and which Petitioner will formally request as well).  While the transcript is not available, I can assure you that Dr. Garriga further explained to the Court, in the presence of counsel for the State, the specific nature of "Major Neurocognitive Dementia."

With all due respect and all deliberate understatement, the position espoused by the State in paragraph 3.1(a)(i) and paragraph 3.1(c) constitute gross and material misrepresentations of the State's position as to Mr. Dobronich's mental competence and Dr. Garriga's opinion's thereon, respectively.

As such, this is to request that the State withdraw its contentions contained within paragraphs 3.1(a)(i) and 3.1(c) of its response.  This is also to advise that Petitioner intends to submit an appropriate reply to the State's answer, and that reply will be submitted on Thursday, November 3, 2016 (one day after the first full business day after the all Saint's Day Holiday).  If the contentions contained within paragraphs 3.1(a)(i) and 3.1(c) have not been withdrawn and/or appropriately corrected, the reply will include a motion for sanctions against the Office of the District Attorney for the 22nd Judicial District for violation of Rule 3.1 of the Louisiana Rules of Professional Conduct.

Respectfully/

Claiborne W. Brown

CLAIBORNE W. BROWN, L.L.C.
*ATTORNEY AT LAW*



EXHIBIT

A

222 N. Vermont St., Suite I
Covington, Louisiana 70433
Telephone: (985) 246-7063
Facsimile: (985) 246-7080
cwbrown@cwbrownlaw.com

**Confidentiality Statement:** This e-mail may contain attorney-client privileged or confidential information. It is for the sole use of the intented recipient(s). If you have received this transmission in error, immediately notify us at the telephone number and address above and delete the original message.

22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

NO. 536073-1                                           DIVISION: "C"

DARNAY THIBODAUX

versus

KEVIN HIDALGO, CUSTODIAN, LOUISIANA DEPARTMENT OF CORRECTIONS

FILED: _Nov. 15, 2016_          _____
                                        DEPUTY CLERK

## MOTION TO COMPEL PRODUCTION OF TRANSCRIPT

NOW INTO COURT, through undersigned counsel, comes Petitioner, **Darnay Thibodaux**, who hereby moves this Court to compel the State to produce the transcript of the December 16, 2014 testimony of Dr. Michelle Garriga, to include production of all raw audio and notes from which a transcript can be produced. As more fully set forth in the accompanying Reply Memorandum of Petitioner, the requested evidence has not been obtained by Petitioner and is essential for the Court's determination in the above captioned matter.

WHEREFORE, Petitioner, **Darnay Thibodaux**, prays that the Court compel the State to produce the transcript of the December 16, 2014 testimony of Dr. Michelle Garriga, to include production of all raw audio and notes from which a transcript can be produced.

Respectfully Submitted;

_____
CLAIBORNE W. BROWN (25594)
222 N. Vermont Street, Suite I
Covington, LA 70433
Telephone: (985) 246-7063
Facsimile: (985) 246-7080
cwbrown@cwbrownlaw.com

CWB 899.0003

SCANNED

DEC 1 4 2016

FIRST CIRCUIT COURT OF APPEALS

STATE OF LOUISIANA

NO.                                                    DIVISION: "    "

DARNAY THIBODAUX

versus

KEVIN HIDALGO, CUSTODIAN, LOUISIANA DEPARTMENT OF CORRECTIONS

FILED: _____    _____
                                          DEPUTY CLERK

<u>AFFIDAVIT</u>

STATE OF LOUISIANA

PARISH OF ST. TAMMANY

BEFORE ME, the undersigned authority, personally came and appeared:

CLAIBORNE W. BROWN

who, after being duly sworn, did depose and state:

1) The affiant is an attorney and counsel for petitioner in the above captioned matter;

2) That affiant enrolled as counsel of record for petitioner in the matter of *State v. Thibodaux*, 22nd J.D.C. No. 534840-1, Div. "C" ("the Criminal Proceedings") on December 2, 2014.

3) That affiant filed a Motion to Exclude Testimony of Dr. Michelle Garriga in the Criminal Proceedings on December 9, 2014.

4) That the Motion to Exclude Testimony of Dr. Michelle Garriga was heard on December 16, 2014.

5) That Dr. Michelle Garriga testified at the hearing on the Motion to Exclude Testimony on December 16, 2014.

6) That Dr. Michelle Garriga testified as to the nature of "Major Neurocognitive Dementia" that she purportedly found present in Mr. Sidney Dobronich, based on her review of records provided by the State of Louisiana.

7) That Dr. Michelle Garriga specifically testified that Mr. Sidney Dobronich could not have had any lucid moments at any time during the relevant timeframe: from February 2013 up until his death.

8) That the hearing wherein Dr. Michelle Garriga testified was attended by Assistant Attorney General Jonathan Blake, whose office participated in the opposition of the defense Motion to Exclude Testimony.

9) That on November 18, 2016, affiant contacted counsel for the State of Louisiana in the above captioned Petition for Post Conviction Relief and requested a copy of the transcript

of the December 16, 2014 motions hearing.  Affiant was advised that counsel for the State of Louisiana was not in possession of the transcript.

10)     That on January 18, 2017, at a hearing on motions pending in the above captioned Petition for Post Conviction Relief, affiant again discussed obtaining a copy of the December 16, 2014 motions hearing with counsel for the State and was advised of the need to obtain same from the court reporter at that time.

11)     That on January 18, 2017, at a hearing on motions pending in the above captioned matter, affiant requested contact information of the court reporter who conducted court reporting for the December 16, 2014 motions hearing as was advised that the court reporter's name was Onieta Graham and that she had retired.

12)     That on January 25, 2017, affiant obtained contact information for Ms. Onieta Graham.

13)     That on January 25 and 26 of 2017, affiant attempted to contact Ms. Onieta Graham to obtain a copy of the transcript for the December 16, 2014 motions hearing, but to no avail.

_____
CLAIBORNE W. BROWN

Sworn to and subscribed
Before me this _7_ day of
April, 2017.

_____
NOTARY PUBLIC

13587

**22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY**

**STATE OF LOUISIANA**

**NO. 536073-1**                                          **DIVISION: "C"**

**DARNAY THIBODAUX**

versus

**KEVIN HIDALGO, CUSTODIAN, LOUISIANA DEPARTMENT OF CORRECTIONS**

**FILED:** _____    _____
                                                    **DEPUTY CLERK**

**MOTION FOR LEAVE TO SUPPLEMENT PETITION FOR POST-CONVICTION
RELIEF WITH AN ADDITIONAL CLAIM**

    **NOW INTO COURT**, through undersigned counsel, comes Petitioner, **Darnay Thibodaux,** who hereby moves for leave to supplement her original Petition and Supplemental Claims for Post-Conviction Relief, filed on July 27, 2016 pursuant to Louisiana Code of Criminal Procedure Articles 926, _et seq._ Specifically, Petitioner requests that her original and Supplemental Petition for Post-Conviction Relief be supplemented to add the following additional claim for relief, pursuant to La. C.C.P. Art. 930.3(6), conviction based on an unconstitutional statute, as follows:

**CLAIM IV**

**A) Supporting Facts:**

    The Supporting Facts for Claim I are hereby incorporated by reference herein.

In light of the State's assertion regarding Mr. Dobronich's mental capacity, which contention was first provided to Petitioner on October 28, 2016; prudence demands that Petitioner raise any additional claims based upon the State's new position. Petitioner avers that any reading of La. R.S. 14:94.3 to allow a prosecution under such circumstances renders the statute unconstitutional. First and foremost, the State must prove all elements beyond a reasonable doubt. Specifically in this case, the State must prove that the transactions were unauthorized (fraud or lacked expressed voluntary consent) in order to establish a violation of La. R.S. 14:93.4. Under the circumstances, without any direct testimony as to a lack of consent, the State had to prove that Mr. Dobronich could not consent (which could only be accomplished by complete lack of mental capacity). The admission by the state that the Mr. Dobronich experienced "moments of lucidity" and was "at times alert and oriented", unduly shifts burden of proof to Petitioner to

prove express voluntary consent to transactions.  Such evidence as to his general intermittent mental competence, would also have been unduly prejudicial.

**B) Names and Addresses of Witnesses Who Can Support Petitioner's Claim:**

See Claims I-III.

**C) Reason for Not Raising this Specific Ground on Appeal:**

Petitioner was not in any way aware of the State's position of intermittent competence of Mr. Dobronich prior to its response of October 28, 2016.  Petitioner, therefore, did not have any opportunity to raise this issue prior to that time.  As such, even if the Court accepts the position of the 22nd JDDAO that Mr. Dobronich was intermittently mentally incompetent, such a position is not legally sufficient to sustain a criminal prosecution against Petitioner under La. R.S. 14:93.4 and otherwise renders the statute and unconstitutional impediment to the requirement that all elements of the crime be proven beyond a reasonable doubt.

**WHEREFORE**, Petitioner, **Darnay Thibodaux,** prays that the Court grant her leave to supplement her Original and Supplemental Petitions for Post-Conviction Relief with the above and attached additional claim for relief and that defendant, **Kevin Hildalgo,** be duly cited to appear and answer her Petition and Supplemental Petition for Post-Conviction Relief, and be required to answer same, and that after all due proceedings are had, that relief requested in the attached supplemental "Uniform Application for Post-Conviction Relief" be granted.

Respectfully Submitted;

**CLAIBORNE W. BROWN (25594)**
222 N. Vermont Street, Suite I
Covington, LA 70433
Telephone:  (985) 246-7063
Facsimile:  (985) 246-7080
*cwbrown@cwbrownlaw.com*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing motion has been forwarded to the office of the District Attorney by placing a copy of same in the U.S. Mail, postage prepaid, by hand delivery, facsimile or electronic mail, this 15 day of September, 2016.

CLAIBORNE W. BROWN

**22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY**

**STATE OF LOUISIANA**

**NO. 536073-1**                                                       **DIVISION: "C"**

**DARNAY THIBODAUX**

versus

**KEVIN HIDALGO, CUSTODIAN, LOUISIANA DEPARTMENT OF CORRECTIONS**

**FILED:** _____      _____

                                                              **DEPUTY CLERK**

<u>**ORDER**</u>

Considering the foregoing Motion:

    **IT IS HEREBY ORDERED**, that Petitioner, Darnay Thibodaux, be granted leave to file her Supplemental Application for Post-Conviction Relief, supplementing her Original and Supplemental Application for Post Conviction Relief.

    **IT IS FURTHER ORDERED**, that the District Attorney for the Parish of St. Tammany file any procedural objections he may have or an answer to the allegations contained in the original and supplemental Application for Post-Conviction Relief within 30 days.

    **IT IS FURTHER ORDERED**, that a copy of this order shall be mailed by the Clerk of Court for the Parish of St. Tammany to Petitioner, her counsel of record and her custodian.

    Covington, Louisiana this _____ day of November, 2016.

_____
**Judge, 22nd Judicial District Court, Div. C**

<u>**PLEASE SERVE (Motion, Order and Attachment):**</u>

**KEVIN HIDALGO:**
**District Administrator, Louisiana Department of Corrections**
**Division of Probation and Parole**
**1712 Columbia Street**
**Covington, LA 70434**

**THE HON. WARREN L. MONTGOMERY**
**District Attorney, 22nd Judicial District, State of Louisiana**
**701 N. Columbia Street**
**Covington, LA 70433**

**22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY**

**STATE OF LOUISIANA**

NO. 536073-1                                                              DIVISION: "C"

**DARNAY THIBODAUX**

versus

**KEVIN HIDALGO, CUSTODIAN, LOUISIANA DEPARTMENT OF CORRECTIONS**

FILED: _____     _____
                                                                    DEPUTY CLERK

**MEMORANDUM IN REPLY TO THE RESPONSE AND SUPPLEMENT TO THE
STATE'S RESPONSE TO PETITION FOR POST CONVICTION RELIEF AND IN
SUPPORT OF MOTION FOR LEAVE TO ASSERT ADDITIONAL CLAIMS**

**MAY IT PLEASE THE COURT:**

Petitioner, **Darnay Thibodaux,** submits her reply to the October 27, 2016 Response

("Response") and the October 31, 2016 Supplement to the Response ("Supplemental Response")

of the 22nd Judicial District District Attorney's Office (the " 22nd JDDAO"), which reply also

includes an additional claim for relief based upon La. C.C.P. Art. 930.3(6), conviction based on

an unconstitutional statute, as more fully set forth below.

**A) Background:**

The facts and circumstances of this case have been thoroughly briefed to this Court in

prior pleadings.

The State of Louisiana maintained a criminal prosecution against Petitioner and her

husband, *State v. Thibodaux*, No. 534840-1, 22nd J.D.C., Div. "C" for two counts of violations of

La. R.S. 14:93.4, Exploitation of the Infirmed, purportedly by Petitioner of Mr. Sidney

Dobronich.

This prosecution was predicated upon several transactions executed by Petitioner on Mr.

Dobronich's behalf, pursuant to a power of attorney executed in favor of Petitioner, which

occurred from February through mid-March of 2013, Petitioner, and which tottaled over 30

transactions, including purchases, cash withdrawals and transfers, totaling over $334,000.

Petitioner herein asserts that all of these transactions were specifically authorized by Mr.

Dobronich.

On October 28, 2016 the 22ⁿᵈ JDDAO, in its response to Petitioner's claims, that the State "never contended that Sidney Dobronich was completely incompetent on a 24/7 basis" through February and March of 2013 and for the last year of his life prior to his death on March 24, 2014.

Beginning on August 29, 2014, the State unequivocally put forth the position as explicitly provided in the expert report of Dr. Michelle Garriga that Mr. Dobronich suffered from "Major Neurocognitive Disorder (Dementia), Possible Vascular Neurocognitive Disorder prior to February 2013 and up until his death" and that Mr. Dobronich "lacked the capacity to direct his affairs concerning person or property in matters consistent with his own interest" and that "he lacked this capacity . . . during the time in question, February and March of 2014 [sic]."

On December 3, 2014, petitioner filed a Motion to Exclude the Testimony of Dr. Garriga, based on a violation of Louisiana Rules of Evidence Rule 702 (*Daubert*), in which the Petitioner specifically contested the reliability of Dr. Garriga's testimony as to the mental competency of Mr. Dobronich.  On December 16, 2014, a hearing on the Defense Motion to Exclude Expert Testimony was held, wherein Dr. Garriga specifically explained that Major Neurocognitive Disorder was of such a nature that Mr. Dobronich was completely mentally incompetent and did not and could not have any instances of mental capacity to conduct any transactions during the existence of the disorder.  The State of Louisiana did not in any way attempt to qualify or correct this testimony; and the Court subsequently denied the Petitioner's Motion at that time.

On December 17, 2014, Petitioner and her husband changed their pleas to guilty as charged.  The prosecution, while agreeing to a sentence of probation for Petitioner's husband Calvin Thibodaux, insisted on a pre-sentence investigation as to Petitioner.  The Court set the sentencing hearing for January 29, 2015.

On January 9, 2015, Defendant herein filed a Motion to withdraw her guilty plea and to dismiss the indictment on the grounds that the Nephews, in coordination with the State of Louisiana, deprived her of Mr. Dobronich's favorable testimony in violation of the Compulsory Process Clause of the 6ᵗʰ Amendment and the Due Process Clause of the 5ᵗʰ and 14ᵗʰ Amendments to the United States Constitution.

On December 17, 2014, Petitioner and her husband changed their pleas to guilty as charged. On January 9, 2015, Defendant herein filed a Motion to Withdraw her Guilty Plea and to Dismiss the Indictment on the grounds that the Nephews, in coordination with the State of Louisiana, deprived her of Mr. Dobronich's favorable testimony in violation of the Compulsory Process Clause of the 6th Amendment and the Due Process Clause of the 5th and 14th Amendments to the United States Constitution. This Motion was denied by this Court on January 29, 2015, and the Louisiana Supreme Court ultimately denied writs as to this Motion on May 15, 2015. In opposition to Petitioner's motion to withdraw her plea, the State, in brief to this Court and to the Louisiana Supreme Court, again relied on the opinion of Dr. Garriga in asserting that no Compulsory Process Clause violation occurred because the Compulsory Process Clause only applied to competent witnesses. In making this argument, the State made this unequivocal statement (to both this Court and the Louisiana Supreme Court):

> Mr. Sidney Dobronich had no knowledge of this transaction, had no knowledge that a check drawn on his account was used, **nor was he capable of consenting to this transaction because he was suffering from dementia** all of which is why he was not a party to the transaction.

Rpl 1, S-1, ¶4 (emphasis added).

The State's position that Mr. Dobronich was incapable of consenting to any of the transactions in question was significant and material because Mr. Dobronich had since passed away in March of 2014 and had made two prior sworn statements that all transactions made on his behalf by the Petitioner, which formed the bases of the criminal charges against her, were completely authorized. The first sworn statement was made by affidavit on March 27, 2013 and was directly and specifically corroborated by a notary in good standing in the state of Louisiana. The second sworn statement was made under cross examination on June 25, 2013, which testimony was given during a time when Mr. Dobronich had been under what could be characterized as coercive custodial control by his self serving nephews and which testimony was arguably prematurely interrupted by the Court in the civil proceedings in which he was testifying.

In any event, without the explicit position of Dr. Garriga that Mr. Dobronich lacked any mental capacity during the time period of February and March of 2013, the period of time the

State had alleged that Petitioner made unauthorized and fraudulent transactions on Mr. Dobronich's behalf; the State of Louisiana did not have a legally viable criminal case against petitioner or her husband for any violations of La. R.S. 14:93.4 arising out of said transactions. As such, the October 28, 2016 position of the 22nd JDDAO that the State of Louisiana "never contended that Sidney Dobronich was completely incompetent on a 24/7 basis" and confirmation of same on October 31, 2016 are addressed by Petitioner herein, as follows:

First, by stating that the State of Louisiana "never contended that Sidney Dobronich was completely incompetent on a 24/7 basis" the 22nd JDDAO has unequivocally admitted that Dr. Garriga's opinion as to Mr. Dobonich total lack of mental capacity in February and March of 2013 was fraudulent and specifically designed to sustain an otherwise baseless prosecution against Petitioner.

Second, by stating that the State of Louisiana "never contended that Sidney Dobronich was completely incompetent on a 24/7 basis", which directly conflicts with the unequivocal pronouncements of the State of Louisiana in submitting Dr. Garriga's testimony, in opposing Petitioner's Motions to Exclude her testimony and Motion to Withdraw Petitioner's Plea; the 22nd JDDAO is putting forth a patent and material misrepresentation of the State's previous position as to Mr. Dobronich's mental competence and capacity.  This patent and material misrepresentation constitutes a baseless contention regarding the false nature of Dr. Garriga's material testimony which should be disregarded by this Court.

Third, in the event the Court were to accept the attempts of the 22nd JDDAO to re write the history of the proceedings in this case; sustaining the criminal prosecution against Petitioner in this case, under these circumstances, renders the "express voluntary consent" element of La. R.S. 14:93.4 unconstitutional.

**B) Discussion:**

**1) As per the 22nd JDDAO's Response, Dr. Garriga's Testimony is Knowingly False and the State's Submission of Same was Fraudulent:**

The October 28, 2016 Response and the October 31, 2016 Supplemental Response of the 22nd JDDAO unequivocally admits that the opinion testimony of Dr. Garriga was false and was known to be false by the State at the time it was made.  The 22nd JDDAO has further admitted as

much when it euphemistically asserted that "to the extent the opinion of Dr. Garriga conflicts with the observations of Detective Montgomery, the prosecution was prepared to present such conflicts to the jury for the jury's consideration. The "conflict" to which the 22nd JDDAO refers is the known fraudulent opinion as to Mr. Dobronich's mental competency.

The United States Fifth Circuit case of *United States v. Mason*, 293 F.3d 826 (5th Cir. 2002) clearly establishes that "the Due Process Clause of the Fourteenth Amendment forbids the government from knowingly using, or failing to correct, false testimony. *Id.* at 828. To establish such a violation, Petitioner must establish that (1) the testimony was false; (2) the government knew the testimony was false; and (3) the testimony was material. *Id.* Furthermore, upon establishing the above elements, the government cannot avail itself of any action or inaction of the defense with regard to potentially mitigating the impact of the false testimony. *Id.* at 829.

In this case, by virtue of the admission that "the State contended (and still believes) that Mr. Dobronich was at times alert and oriented" and as to the "conflict" between Dr. Garriga's opinion and Det. Montgomery's observations; it is clear that Dr. Garriga's opinion regarding Mr. Dobronich's capacity was false and known by the State to have been false at all times relevant to these claims. Furthermore, given that Mr. Dobronich had passed away and the absence of any testimony as to his consent to the transactions; Dr. Garriga's opinion that Mr. Dobronich lacked the mental capacity during the execution of the transactions at issue were not only material, it was essential to any constitutionally viable prosecution against Petitioner. Any reference to the December 2013 agreement between the State and defense counsel (which incidentally was made under circumstances in which defense counsel was clearly unaware of Mr. Dobronich's July 18, 2013 hand written "will" and the State's intent to submit Dr. Garriga's opinion in the future); is, if anything, further evidence of the insidious nature of the State's actions in this case. In any event, the admission of the 22nd JDDAO should result in a granting of the Petitioner's claim for relief as prayed for.

**2) 22nd JDDAO's Contention as to the State's Position on SD's Competence is a Baseless Contention:**

The singular importance of the above admission notwithstanding; the 22nd JDDAO inexplicably avers that Petitioner's claims for relief should be dismissed without any further action from this Court, further averring that the State had never asserted that Mr. Dobronich completely lacked the mental capacity to consent to the transactions at issue. With utmost respect, in light of the clear and unambiguous opinion of Dr. Garriga, her testimony on December 16, 2016, as well as the unambiguous averments of the State of Louisiana to this Court and the Louisiana Supreme Court in its opposition to Petitioner's Motion to Withdraw her Guilty Plea and the singular importance of that position to the State's case against the Petitioner; with utmost respect, it is simply beneath the dignity of the 22nd JDDAO to make a pronouncement that the State of Louisiana had "never contended that Sidney Dobronich was completely incompetent on a 24/7 basis." Such contention, and any argument by the 22nd JDDAO that the Petitioner's claims should be dismissed on that basis, should be disregarded by the Court herein.

### 3) Assuming the Court Accepts the Contention of the 22nd JDDAO, Petitioner Hereby Asserts an Additional Claim that La. R.S. 14:93.4 is unconstitutionally vague:

Although Petitioner has every confidence that the Court will reject the baseless contention of the 22nd JDDAO that the State's position has always been that Mr. Dobronich was intermittently competent during the time in which the February – March 2013 transactions were made; prudence demands that Petitioner raise any additional claims based upon the State's new position. In light of this contention of the 22nd JDDAO, Petitioner avers that any reading of La. R.S. 14:94.3 to allow a prosecution under such circumstances renders the statute unconstitutional. First and foremost, the State must prove all elements beyond a reasonable doubt. Specifically in this case, the State must prove that the transactions were unauthorized (fraud or lacked expressed voluntary consent) in order to establish a violation of La. R.S. 14:93.4. Under the circumstances, without any direct testimony as to a lack of consent, the State had to prove that Mr. Dobronich could not consent (which could only be accomplished by complete lack of mental capacity). The admission by the state that the Mr. Dobronich experienced "moments of lucidity" and was "at times alert and oriented", unduly shifts burden of

proof to Petitioner to prove express voluntary consent to transactions.   Such evidence as to his general intermittent mental competence, would also have been unduly prejudicial.

Furthermore, it is important to note that Petitioner was not in any way aware of the State's position of intermittent competence of Mr. Dobronich prior to its response of October 28, 2016.  Petitioner, therefore, did not have any opportunity to raise this issue prior to that time.  As such, even if the Court accepts the position of the 22nd JDDAO that Mr. Dobronich was intermittently mentally incompetent, such a position is not legally sufficient to sustain a criminal prosecution against Petitioner under La. R.S. 14:93.4 and otherwise renders the statute and unconstitutional impediment to the requirement that all elements of the crime be proven beyond a reasonable doubt.

**C) Conclusion:**

Based on the above, this Court should summarily grant Petitioner relief as prayed for in her Petition. Finally, in the alternative, should the Court accept the contentions of the District Attorney's Office with respect to the mental compentency of Mr. Sidney Dobronich, the Court should further consider and find that the La. R.S. 14:93.4 is unconstitutional as applied to this case.

Respectfully Submitted;

**CLAIBORNE W. BROWN (25594)**
222 N. Vermont Street, Suite I
Covington, LA 70433
Telephone:  (985) 246-7063
Facsimile:  (985) 246-7080
*cwbrown@cwbrownlaw.com*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the above and foregoing motion has been forwarded to the office of the District Attorney by placing a copy of same in the U.S. Mail, postage prepaid, by hand delivery, facsimile or electronic mail, this _13_ day of November, 2016.

CLAIBORNE W. BROWN

# CLAIBORNE W. BROWN, L.L.C.

*ATTORNEY AT LAW*
**222 NORTH VERMONT STREET, SUITE I**
**COVINGTON, LOUISIANA 70433**
**TELEPHONE:  (985) 246-7063**
**FACSIMILE:  (985) 246-7080**
*cwbrown@cwbrownlaw.com*

January 23, 2017

St. Tammany Parish Clerk of Court
22nd Judicial District Court
Post Office Box 1090
Covington, LA, 70434

Re:   **Thibodaux v. Hidalgo (State of Louisiana v. Darnay Thibodaux), 22nd**
      **J.D.C., St. Tammany Parish, Docket No. 538643, 538643-1, Div. "C"**

Dear Sir/Madame:

Pursuant to Louisiana Code of Criminal Procedure Article 731, this is to request that trial subpoenas be issued to the following individuals to compel their presence at the **St. Tammany Parish Justice Center, Division E, 701 N. Columbia Street, Covington, LA 70433**, on **March 8, 2017**, at **9:00 A.M.**, for the hearing in connection with Petitioner's Petition for Post Conviction Relief and Petitioner's Motion for Sanctions in the above captioned matter:

1) Det. Stefan Montgomery;
   St. Tammany Parish Sheriff's Office
   2070 Collins Blvd, Bldg. 1
   Covington, LA 70433

2) Mr. Forest Dobronich;
   1013 East St. Bernard
   Chalmette, LA 70043

3) P.O. Letitia Moore;
   Louisiana Department of Probation and Parole
   1712 N. Columbia St.
   Covington, LA 70435

4) Dr. Michelle Garriga;
   Eastern Louisiana Mental Health System
   4502 HWY 951
   Jackson, LA 70748

St. Tammany Parish Clerk of Court
January 23, 2017
Page 2

5) Assistant Atty. Gen. Jonathan Blake;
   Louisiana Department of Justice
   1885 N. Third St.
   Baton Rouge, LA 70802

6) Ms. Peggy G. Vallejo;
   428 West 21st Ave.
   Covington, LA 70433

7) Mr. Leo R. Hemelt, Jr.;
   428 West 21st Ave.
   Covington, LA 70433

8) SA Rick Rauch, Jr.;
   United States Secret Service
   3900 N. Causeway Blvd., #1400
   Metairie, LA 70002
   **Special Instructions (Subpoena Duces Tecum)**:  Witness requested to provide the following:   Your **entire** file, including but not limited to, notes (handwritten or typed), records, reports, documents, e-mails, including attachments, electronic files and documents, photographs, videos recordings, any other forms of communications, and/or any and all other documentation regarding the matter of *U.S. v. $100,641.06 U.S. Currency, et al.*, U.S.D.C. E.D. La., Civ. No. 13-5566.

9) Mr. Joseph P. Romano;
   4295 HWY 21 South, Suite D
   Bogalusa, LA 70427
   **Special Instructions (Subpoena Duces Tecum)**:  Witness requested to provide the following:   Your **entire** file, including but not limited to, notes (handwritten or typed), records, reports, documents, e-mails, including attachments, electronic files and documents, photographs, videos recordings, any other forms of communications, and/or any and all other documentation regarding the status of the investment account of Mr. Sidney Dobronich managed by Romano Insurance and Investment Group from December 31, 2003 through the present.

St. Tammany Parish Clerk of Court
January 23, 2017
Page 3

10) Mr. Joseph P. Romano;
20534 HWY 439
Franklinton, LA
**Special Instructions (Subpoena Duces Tecum)**:  Witness requested to provide the following:   Your **entire** file, including but not limited to, notes (handwritten or typed), records, reports, documents, e-mails, including attachments, electronic files and documents, photographs, videos recordings, any other forms of communications, and/or any and all other documentation regarding the status of the investment account of Mr. Sidney Dobronich managed by Romano Insurance and Investment Group from December 31, 2003 through the present.

Thank you for your assistance.

Sincerely,

**CLAIBORNE W. BROWN**

**CWB**/cb
cc:      Mr. Matthew B. Caplan (*via* electronic mail)

**TWENTY-SECOND JUDICIAL DISTRICT COURT**
**FOR THE PARISH OF ST. TAMMANY**
**STATE OF LOUISIANA**

NO. 538643-1                                                  DIVISION "C"

**STATE OF LOUISIANA**

**VERSUS**

**DARNAY THIBODAUX**

FILED: _____        _____
                                                        **DEPUTY CLERK**

<u>**REQUEST FOR SUMMARY ADJUDICATION PURSUANT TO**</u>
<u>**ARTICLE 929(A) OF THE CODE OF CRIMINAL PROCEDURE**</u>

MAY IT PLEASE THE COURT:

This matter is before the Court pursuant to an application for post-conviction relief filed

by Darnay Thibodaux. The matter is next set on the Court's docket for <u>March 8, 2017</u>. At the last

setting, the Court indicated that, *if* an evidentiary hearing was necessary, that hearing would be

held on March 8, 2017. The petitioner has requested the issuance of numerous subpoenas in the

event that the Court orders an evidentiary hearing be held. <u>See</u> Exhibit 1.

The State respectfully submits that "the factual and legal issues can be resolved based

upon the application and answer, and supporting documents"and that the court should "deny

relief without further proceedings" pursuant to Article 929(A) of the Code of Criminal

Procedure. Because this matter can and should be adjudicated summarily, the State respectfully

requests that the Court do so prior to March 8, 2017 so as not to waste the time of the many

witnesses who have been ordered to appear in court on March 8, 2017.

Respectfully submitted,

_____
Matthew Caplan, LSBA #31650
Assistant District Attorney

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing pleading on counsel for the

petitioner by email (cwbrown@cwbrownlaw.com) on this the <u>14th</u> day of <u>February</u>, 20<u>17</u>.

_____
Matthew Caplan, LSBA #31650
Assistant District Attorney

FILED

FEB 1 4 2017

- 1 of 1 -

MELISSA R. HENRY - CLERK
_____
DEPUTY

STATE OF LOUISIANA

VERSUS

DARNAY THIBODAUX

FILED: _February 23, 2017_

NUMBER 538643   DIV. "C"

22ND JUDICIAL DISTRICT COURT

PARISH OF ST. TAMMANY

STATE OF LOUISIANA

_(signature)_
DEPUTY CLERK

### REASONS FOR JUDGMENT AND ORDER

This matter is before the Court pursuant to an Application for Post-Conviction Relief filed by Defendant, Darnay Thibodaux. The Court has reviewed the entire record and finds that the issues raised in the Application for Post-Conviction Relief may be decided on the record and no evidentiary hearing is necessary.

In February, 2013, 85 year old Sidney Dobronich executed a statutory will and a power of attorney in favor of his neighbor and tenant, Darnay Thibodaux, which provided Ms. Thibodaux with access to his finances. During February and March, 2013, Ms. Thibodaux transferred money from Mr. Dobronich's investment account to her savings accounts, and using her savings and checking accounts withdrew cash and caused money to be deposited into an account belonging to her husband, Calvin Thibodaux. In addition to cash purchases, Ms. Thibodaux used money from Mr. Dobronich's accounts to purchase several vehicles and immovable property. Upon discovering these acts, Mr. Dobronich's nephews contacted the St. Tammany Parish Sheriff's Office, and an investigation was opened. As a result of the investigation by Detective Stefan Montgomery, Ms. Thibodaux was charged by Bill of Information with 2 counts of violating La. R.S. 14:93.4 relative to Exploitation of the infirmed. Ms. Thibodaux maintained throughout the investigation that all of the transactions were authorized by Mr. Dobronich. Mr. Dobronich died on March 25, 2014.

In connection with the criminal proceeding Michelle Garriga, M.D., APMC issued a report dated August 14, 2014 based on the examination of certain records of Mr. Dobronich, wherein she opined that Mr. Dobronich suffered serious dementia and most likely lacked the capacity to make decisions regarding his finances, property, or medical care during the relevant time period. The Court denied Ms. Thibodaux's Motion to

1

Exclude the Testimony of Dr. Garriga from the criminal proceeding. Ms. Thibodaux pled guilty on December 17, 2014 to the charges and in the process affirmed that she was pleading guilty because she had in truth and fact committed the crimes charged in the bill of information. As part of the plea agreement the State of Louisiana agreed not to charge Ms. Thibodaux as a habitual offender in connection with the plea. Further, at the time of Defendant's plea she agreed that the Court made no commitment as to her sentence, and she agreed the Court would determine her sentence in accordance with the law and the results of a Pre-Sentence Investigation ("PSI"). On January 9, 2015, Defendant filed a Motion to Withdraw her Guilty Plea and to Dismiss the Indictment. On January 29, 2015, the Court denied said motions, at which time the Defendant then waived delays in sentencing. On that same day the Court imposed sentence. Defendant filed an Application for Writ of Supervisory Review of the Court's denial of her Motion to Withdraw Guilty Plea to the Louisiana First Circuit Court of Appeal on February 17, 2015 which was denied on February 19, 2015. Defendant then filed an Application for Writ of Supervisory Review to the Louisiana Supreme Court on March 9, 2015, which was denied on May 15, 2015.

On July 28, 2016, Defendant filed a Petition for Post-Conviction Relief. The Petition, as supplemented sets forth the following claims:

1. Submission of Dr. Garriga's Expert Report, and Pre-Sentence Investigative Report violated Petitioner's Due Process rights

2. State violated Petitioner's rights under Compulsory Process Clause and Due Process Clause of U.S. and Louisiana Constitutions by excluding the testimony of Mr. Dobronich.

3. Spoliation of potentially exculpatory evidence in violation of Due Process rights under U.S. and Louisiana Constitutions

4. La. R.S. 14:93.4 in unconstitutional as applied in this case.

An unconditional plea of guilty waives all non-jurisdictional defects in the proceedings prior to the plea.[1] However, the defendant is allowed to condition her guilty plea upon the appellate review of specified pre-plea errors.[2] The defendant must

---

1    *State v. Crosby*, 338 So.2d 584 (La. 1976).
2    *State v. Crosby*

specifically reserve the right for appellate review of any rulings of the district court prior to entering her guilty plea.[3]  In this case, Petitioner entered an unconditional guilty plea.

A trial judge has the discretion to allow a guilty plea to be withdrawn at any time, before sentencing.[4] Once a defendant has been sentenced, only those guilty pleas which are constitutionally infirm may be withdrawn by appeal or post-conviction relief.[5] A guilty plea is constitutionally infirm when it is not entered freely and voluntarily, if the Boykin colloquy was inadequate, or when a defendant is induced to enter the plea by a plea bargain or what he justifiably believes was a plea bargain and that bargain is not kept.[6]

A defendant has a constitutional right to rebut a PSI if it is prejudicial to his case.[7] In order for an appellate court to review the effects of a PSI upon the defendant's sentence, the defendant must orally object, request a hearing, move to traverse, or offer countervailing information before or during the sentencing hearing.[8]  In this case, Petitioner failed to timely object to the sentencing, request a hearing, move to traverse, or offer countervailing information before or during the sentencing hearing.

Petitioner does not assert that the Boykin colloquy was inadequate, or that the plea bargain was not kept.  Rather, the grounds for Petitioner's claims are that her plea resulted from the use of false evidence by the State and as a result her plea was not entered freely and voluntarily.

### Claim 1 – Submission of Expert Report, and Pre-Sentence Investigative Report violated Petitioner's Due Process rights

Petitioner's first claim is that the the Expert Opinion of Dr. Garriga regarding Mr. Dobronich's mental incompetency in February and March of 2013, and the January 29, 2015 Pre-Sentence Investigative Report averring to the non-recovery of approximately $250,000 of Mr. Dobronich's assets, violated Petitioner's Due Process right to be free from the knowing submission of false evidence in a criminal prosecution, as both reports

---

3       *State v. Crosby*; *State v. Aguiltard*, 357 So.2d 535, 537 (La.1978.
4       La.C.Cr.P. art. 559(A); *State v. McCoil*, 924 Sos.2d 1120 (La. App. 5 Cir. 2006).
5       *Id.*.
6       *Id.*; *State v. Lewis*, 421 So.2d 224, 226 (La.1982).
7       *State v. Ducre*, Unpublished Opinion 2012-0269 (La. App. 1 Cir. 9/21/12), writ denied, 2012-2329 (La. 4/5/13), 110 So. 3d 1073; citing  *State v. Lanieu*, 734 So.2d 89 (La.App. 1st Cir.1999), *writ denied*, 750 So.2d 962 (La.10/8/99).
8       *State v. Ducre; citing State v. Lanieu.*

3

were patently false.

The State contends that the victim, Mr. Dobronich, was incompetent, however, had lucid intervals and was at times alert and oriented but could become disoriented quickly when in a foreign environment or when exposed to psychological pressure. The Court finds that Petitioner failed to produce sufficient evidence to support her claim that the Expert report, and/or the Pre-Sentence Investigation Report were patently false or were inconsistent with the State's claim that Mr. Dobronich had lucid intervals. Thus, the court finds this claim is without merit.

### Claim 2 – State violated Petitioner's rights under Compulsory Process Clause and Due Process Clause of U.S. and Louisiana Constitutions.

Petitioner also claims that the District Court's ruling excluding testimony from Mr. Dobronich on the grounds that he was incompetent to testify was based on false evidence, therefor the ruling was erroneous, and the State violated Petitioner's rights under the Compulsory Process Clause and the Due Process Clause of the United States and Louisiana Constitutions. In this case, the testimony of Mr. Dobronich was excluded from the criminal proceeding as a result of a Motion filed by Petitioner seeking to exclude said testimony. Thus the Court finds this claim is without merit.

### Claim 3 – Spoliation of potentially exculpatory evidence in violation of Due Process rights under U.S. and Louisiana Constitutions

Petitioner further asserts that Detective Montgomery destroyed a recording of his interview with Mr. Dobronich on March 21, 2013 wherein Mr. Dobronich allegedly told Detective Montgomery that all transactions that were made by Petitioner on Mr. Dobronich's behalf were authorized. Further, Petitioner contends that Detective Montgomery subsequently falsified the substance of said interview, which constitutes spoliation of potentially exculpatory evidence in violation of Petitioner's Due Process rights under the United States and Louisiana Constitutions. The Court finds that Petitioner failed to produce sufficient evidence to support her claim that the March 21, 2013 interview was recorded. Thus there is also a lack of evidence that any such recording was destroyed, and Petitioner's 3rd claim is without merit.

### Claim 4 – La. R.S. 14:93.4 is unconstitutional as applied in this case

Petitioner also claims that La. 14:93.4 is unconstitutional as applied on the

4

grounds that the State's admission that Mr. Dobronich experienced moments of lucidity unduly shifts the burden of proof to Petitioner to prove express voluntary consent to transactions. Petitioner has cited no applicable legal justification for her argument and produced no evidence that the State changed its position on Mr. Dobronich's mental capacity. The Court finds this claim is also without merit.

The Court finds that Applicant has failed to prove grounds upon which relief shall be granted. Accordingly, the Court finds the Application of the Defendant is without merit and must be denied.

IT IS HEREBY ORDERED that the Application for Post-Conviction Relief filed by Darnay Thibodaux is DENIED.

IT IS FURTHER ORDERED that the Clerk of Court for the Parish of St. Tammany give notice of this denial to Applicant, the District Attorney for the Parish of St. Tammany and the Applicant's custodian.

SIGNED AT COVINGTON, LOUISIANA, this ___23___ day of February 2017.

JUDGE RICHARD A. SWARTZ

A TRUE COPY

DY. CLERK 22nd JUD. DIST. COURT
ST. TAMMANY PARISH, LA

STATE OF LOUISIANA

VERSUS

DARNAY THIBODAUX

FILED: *February 23, 2017*

NUMBER 538643   DIV. "C"

22ND JUDICIAL DISTRICT COURT

PARISH OF ST. TAMMANY

STATE OF LOUISIANA

*[signature]*
DEPUTY CLERK

## ORDER

This matter is before the Court pursuant to a Motion to Quash Subpoena filed by the State of Louisiana through the Louisiana Attorney General's Office.  The Court has reviewed the record and finds that the issues raised in the Motion may be decided on the record and no evidentiary hearing is necessary.

On January 23, 2017, counsel for Petitioner filed a letter with the Clerk's office requesting this Court to issue a subpoena to multiple individuals, including Assistant Attorney General Jonathan Blake compelling their presence for a hearing in connection with Petitioner's Petition for Post-Conviction Relief and Motion for Sanctions in this matter. Thereafter, Assistant Attorney General Jonathan Blake filed a Motion to Quash Subpoena.  In light of the Court's ruling on the Application for Post-Conviction Relief and Motion for Sanctions, the Court finds the Motion to Quash is MOOT.

Accordingly, IT IS HEREBY ORDERED that the Motion to Quash is MOOT.

IT IS FURTHER ORDERED that the Clerk of Court for the Parish of St. Tammany give notice of this Order to Mover, State of Louisiana through the Louisiana State Attorney General's Office, the District Attorney for the Parish of St. Tammany, and the Mover's custodian.

SIGNED AT COVINGTON, LOUISIANA, this 23 day of February 2017.

*[signature]*

JUDGE RICHARD A. SWARTZ

A TRUE COPY

*[signature]*
DY. CLERK 22nd JUD. DIST COURT
ST. TAMMANY PARISH, LA

1

STATE OF LOUISIANA

VERSUS

DARNAY THIBODAUX

FILED: _Febnuary 23, 2017_

NUMBER 538643   DIV. "C"

22ND JUDICIAL DISTRICT COURT

PARISH OF ST. TAMMANY

STATE OF LOUISIANA

_____
DEPUTY CLERK

## ORDER

This matter is before the Court pursuant to a Motion for Sanctions for Violation of Rule 3.1 of the Louisiana Rules of Professional Conduct filed on behalf of Defendant, Darnay Thibodaux.  The Court has reviewed the entire record and finds that the issues raised in the Motion may be decided on the record and no evidentiary hearing is necessary.

Mover asserts that the State of Louisiana, as represented by the Louisiana Attorney General, relied on the expert opinion of Dr. Michelle Garriga, that Mr. Dobronich suffered from Dementia and as such he lacked the capacity to direct his affairs.   Certain evidence disclosed during pre-trial discovery indicated that while suffering from dementia, Mr. Dobronich had lucid intervals.  The State maintains that it was never the State's position that Mr. Dobronich was completely incompetent on a 24/7 basis.  Mover filed the instant Motion for Sanctions for Violation of Rule 3.1 of the Louisiana Rules of Professional Conduct against the Office of the Louisiana Attorney General, and the District Attorney for the 22nd Judicial District.

Mover asserts that the State originally took the position that Mr. Sidney Dobronich lacked the mental capacity to authorize any transactions during the relevant time period, thus the State cannot in good faith argue that it has never contended that Mr. Dobronich was completely incompetent on a 24/7 basis.  The State's position is that Mr. Dobronich, while suffering from dementia, had moments of lucidy.  Mover has failed to produce any evidence to support its position that it is impossible for someone to suffer from dementia and experience moments of lucidity.

The remedy for a violation of any Rule of Professional Conduct is to file a complaint with the Louisiana Disciplinary Counsel. The provisions of Code of Civil Procedure Article

1

863 are applicable to any Petition for Post-Conviction Relief and related or responsive pleadings.[1]  La. C.C.P. Art 863 is penal in nature and should be strictly construed.[2] Further, the test to determine whether to impose sanctions is not whether the court finds the arguments have merit, but whether there was the slightest justification for them.[3]

IT IS HEREBY ORDERED that the Motion For Sanctions is DENIED.

IT IS FURTHER ORDERED that the Clerk of Court for the Parish of St. Tammany give notice of this denial to Mover, the District Attorney for the Parish of St. Tammany, the and the Mover's custodian.

SIGNED AT COVINGTON, LOUISIANA, this 22 day of February 2017.

_____
JUDGE RICHARD A. SWARTZ

A TRUE COPY

DY. CLERK 22nd JUD. DIST. COURT
ST. TAMMANY PARISH, LA

---

1        La. R.S. 15:183.
2        *Voitier v. Guidry* 166 So.3d 262 (La. App. 5 Cir. 2014).
3        *Royal Maccabees Ins. Co. v. Montgomery* 716 So.2d 9221 (La. App 1 Cir 1998).

2

COURT OF APPEAL

FIRST CIRCUIT

STATE OF LOUISIANA

\* \* \* \* \* \* \* \*

DOCKET NUMBER: _____

\* \* \* \* \* \* \* \*

DARNAY THIBODAUX

versus

KEVIN HIDALGO

\* \* \* \* \* \* \* \*

APPLICATION FOR SUPERVISORY REVIEW BY
DARNAY THIBODAUX FROM THE
JUDGMENT OF THE 22nd JUDICIAL DISTRICT COURT
PARISH OF ST. TAMMANY, STATE OF LOUISIANA
DOCKET NO. 543638-1,
THE HONORABLE RICHARD A. SWARTZ PRESIDING

\* \* \* \* \* \* \* \*

ORIGINAL BRIEF OF DEFENDANT/APPELLANT
DARNAY THIBODAUX

Defendant/Appellant

\* \* \* \* \* \* \* \*

Respectfully submitted,

CLAIBORNE W. BROWN (25594)
1070-B West Causeway Approach
Mandeville, LA  70471
Telephone:  (985) 845-2824
Facsimile:  (985) 246-3199

# **I N D E X**

**PAGE**

AFFIDAVIT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    iii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    iv

LIST OF EXHIBITS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    v

JURISDICTION OF THE COURT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

ISSUES TO BE CONSIDERED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    16

SPECIFICATION OF ERROR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    18

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    30

## AFFIDAVIT

**BEFORE ME,** the undersigned authority, personally came and appeared **CLAIBORNE W. BROWN,** who being first duly sworn, did depose and say that on behalf of his client, DARNAY THIBODAUX, he has applied for Supervisory Review to the First Circuit Court of Appeal of the State of Louisiana based on a decision of the Honorable Richard A. Swartz, Judge, 22nd Judicial District, regarding the claims of DARNAY THIBODAUX and that all allegations in this Writ Application are true and correct to the best of his knowledge, information and belief.

**THAT HE DOES HEREBY CERTIFY** that the District Court and all counsel have been notified of this Writ Application and that all concerned have been served with these documents.

**THAT HE DOES HEREBY CERTIFY** that a copy of this application and accompanying proposed Order have been filed with the First Circuit Court of Appeal in Baton Rouge, Louisiana, and sent to the Honorable Richard A. Swartz, and the following counsel of record by depositing same in the U. S. Mail, postage prepaid and properly addressed, at Covington, Louisiana, this _7th_ day of April, 2017.

TRIAL COUNSEL FOR THE STATE OF LOUISIANA:
    Office of the District Attorney for the 22nd Judicial District
    Mr. Matthew Caplan, Assistant District Attorney
    701 N. Columbia Street
    Covington, LA  70433
    Telephone:  (985) 809-8383

PRESIDING JUDGE, 22nd JUDICIAL DISTRICT COURT:
    The Honorable Richard A. Swartz
    22nd Judicial District Court
    701 N. Columbia Street
    Covington, LA  70433
    Telephone:  (985) 809-5315

**CLAIBORNE W. BROWN**

**SWORN TO AND SUBSCRIBED BEFORE ME THIS** _7_ **DAY OF APRIL, 2017.**

**NOTARY PUBLIC**

_Jesse L. Wimberly III_
**(Print Notary Name)**

_13587_
**(Notary I.D. No. or Bar Roll No.)**

iii

# TABLE OF AUTHORITIES

**CASES**                                                    **PAGE**

*Draper v. Washington,*
372 U.S. 487, 495 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     29

*Geter v. Fortenberry,*
849 F.2d 1550 (5th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     20

*Griffin v. Illinois,*
351 U.S. 12 (1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     29

*In re Succession of Pardue,*
40,177 (La. App. 2 Cir. 11/8/05), 915 So. 2d 415. . . . . . . . . . . . . . . .     23

*Succession of Werner v. Zarate,*
2007-0829 (La. App. 1 Cir. 12/21/07), 979 So. 2d 506. . . . . . . . . . . . . .     23

*United States v. Charles,*
313 F.3d 1278 (11th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     29

*United States v. Mason,*
293 F.3d 826 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     20

*United States v. Selva,*
559 F.2d 1303 (5th Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     29

*Washington v. Texas,*
388 U.S. 14, 87 S. Ct. 1920 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . .     25

**STATUTES**

La. R.S. 14:93.4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     1, 16, 28

La. C. Cr. P. art. 926. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     30

## LIST OF EXHIBITS

**Exhibit**                **Document**

Exhibit "1"                Petition for Post Conviction Relief (w/Exhibits);

Exhibit "2"                Supplemental Petition for Post Conviction Relief;

Exhibit "3"                State's Response (w/Exhibits);

Exhibit "4"                State's Supplemental Response;

Exhibit "5"                Petitioner's Reply (w/ Exhibits);

Exhibit "6"                Petitioner's Motion to Compel (w/ Exhibits);

Exhibit "7"                Petitioner's Motion for Sanctions;

Exhibit "8"                State's Response of November 30, 2016;

Exhibit "9"                Petitioner's Reply to Response of November 30 2016 (w/ Exhibits);

Exhibit "10"               Petitioner's Requests for Subpoenas

Exhibit "11"               State's Request for Summary Disposition;

Exhibit "12"               Orders and Reasons of the District Court;

Exhibit "13"               Notice of Intent to File Writ Application and Return Day;

Exhibit "14"               Affidavit of Undersigned Counsel Regarding Attempts to Obtain December 16, 2014 Transcript and Proffer of Testimony;

Exhibit "15"               Writ Application in the case of *State v. Thibodaux*, 1st C.C. A. No. 2015-KW-0280;

Exhibit "16"               File-stamp copies of Petitioner's Pleadings;

## JURISDICTION OF THE COURT

Supervisory Jurisdiction is vested in the Courts of Appeal by virtue of the authority granted in Article V, Section 10 of the 1974 Constitution of the State of Louisiana. Supervisory jurisdiction is specifically vested in this Court to review denial of petitions for post conviction relief pursuant to the Louisiana Code of Criminal Procedure Article 930.6.

## STATEMENT OF THE CASE

### 1) Background Facts:

The facts and circumstances of this case have been thoroughly briefed to this Court in a previous writ application in this matter entitled, *State v. Thibodaux*, No. 22nd J.D.C. No. 534840-1, 1st C.C. A. No. 2015-KW-0280, which application was denied on February 19, 2015, the assertions made therein are incorporated as if copied herein *in extenso*. The State of Louisiana, via the Louisiana Attorney General's Office ("LaAG"), maintained a criminal prosecution against Petitioner and her husband, *State v. Thibodaux*, No. 534840-1, 22nd J.D.C., Div. "C" for two counts of violations of La. R.S. 14:93.4, Exploitation of the Infirmed, purportedly by petitioner of an elderly gentleman named Sidney Dobronich.

The prosecution which is the subject of this petition for post conviction relief was predicated upon several transactions executed by Petitioner on Mr. Dobronich's behalf, pursuant to a power of attorney executed in favor of Petitioner, which occurred from February through mid-March of 2013, Petitioner, and which totaled over 30 transactions, including purchases, cash withdrawals and transfers, totaling over $334,000. Petitioner herein asserts that all of these transactions were specifically authorized by Sidney Dobronich.

1

This criminal prosecution was conducted concurrently with several civil proceedings prosecuted by two of Mr. Dobronich's nephews, George and Forest Dobronich ("the Nephews"), whereby the Nephews were attempting to obtain control and ultimate ownership of Sidney Dobronich's finances.

During the pendency of the criminal investigation and the civil revocation action, and despite being under intense coercion and almost exclusive physical control of the Nephews, Sidney Dobronich had the opportunity to provide sworn testimony in two instances in which he attempted to state that all transactions performed by the Petitioner were specifically authorized and he did not want to prosecute the Petitioner or her husband.   On March 27, 2013, Mr. Sidney Dobronich made the following statement, duly sworn by a notary in good standing in the State of Louisiana:

> Before me, Rebecca D. Crawford, Notary Public, personally appeared:
>
> Sidney Dobronich
>
> who being first duly sworn, states that
>
> 1) He does not want to press charges against Calvin and/or Darnay Thibodaux for acting on his behalf with a Power of Attorney he executed in the presents [sic] of a Notary Public and two witnesses;
>
> 2) Anything purchased was with his consent and were authorized with his full knowledge;
>
> 3) Items such as, Kubota Tractor, a 4-wheeler, 2001 Chevy PK, a 2013 Nissan Altima and property(s) [sic] were purchased with my knowledge; the money came from my account;

**(Ex. 3, appx. pp. 46-49, 267.)**

On June 25, 2013, Mr Dobronich testified in open court in the matter of *Forest Dobronich and George Dobronich v. Darnay Thibodaux and Calvin Thibodaux*, No. 2013-11784, 22nd J.D.C., Div. "D", (hereinafter, "the Civil Revocation Action"), as follows.

2

Q.    Now, I want to show you an affidavit, sir, and this is an affidavit that I'm going to mark as Defense Exhibit Number 4.  Take your time and look at it, and it's dated March 27, 2013, affidavit, okay.  When you finish reading just acknowledge your head, okay, please.  Are you finished reading it?

A.    Uhm-hum (Affirmative response).

Q.    Would you look at the bottom of it.  Do you remember I pointed out Mrs. Crawford.  Do you know Rebecca Crawford?

A.    Yeah.

Q.    Is that her name on the bottom of it?

A.    It is.

Q.    And is that your signature on the bottom of it?

A.    Yeah.

Q.    And without going into it, it says - - and we're going to go into it - - that you gave her the power of attorney to buy a Kubota tractor, a four-wheeler, a 2001 Chevy pickup, a Nissan, other property with your full knowledge and with your account and with your consent with your money from your account.  Does it say that?  And you do not wish to pursue these people for criminal charges.  It says what it says; does it not, sir?  Yes?

A.    Yeah.

Q.    And whose signature is on the bottom of that affidavit?  Is that your signature on the bottom?

A.    Yeah.

**(Ex. 3, appx. pp. 502-03.)**

Again, on June 25, 2013; Mr. Dobronich specifically testified in the Civil Revocation Action, under direct questioning by the Court, as follows:

BY THE COURT:
    Wait.  I have a question, Mr. Burns.
BY MR. BURNS:
    Yes, sir, surely.
BY THE COURT:
    Why did you do this?  Did somebody ask you to do this?
BY THE WITNESS:
    I don't know.
BY THE COURT:
    You don't know why you did this?  You don't remember who asked you to do it?
BY THE WITNESS:
    (Negative Response).
BY THE COURT:
    Was it your idea?  You came up with this by yourself?
BY THE WITNESS:

3

(Affirmative Response)
BY THE COURT:
    You called up Ms. Crawford and said I want to do an affidavit?
BY THE WITNESS:
    Yeah.
BY THE COURT:
    You called her up?  Ms. Crawford is right there. You called her up and said I want to do an affidavit and say that everything I did I don't want to prosecute them for and I want to give this to them?  You called them up and said that?  It was your idea?
BY THE WITNESS:
    (Affirmative response).

**(Ex. 3, appx. pp. 504-05.)**

It should be noted that Mr. Dobronich made the above independent exculpatory statements on June 25, 2013 after being in the exclusive custody and control of his Nephews, George and Forest Dobronich (hereinafter, "the Nephews"), while he stayed at the home of Forest Dobronich, in which Mr. Dobronich was under what was described as 24/7 supervision.  **(Ex. 3, appx. pp. 756, 760-62.)**

In line with these instances of exculpatory testimony of Mr. Dobronich, prior to August of 2013, petitioner, through her counsel at the time, made repeated attempts within the Civil Revocation Action proceedings to obtain Mr. Dobronich's testimony in a deposition.  These efforts were consistently thwarted by the Nephews.  **(Ex. 3, appx. pp. 410-428.)**   These efforts included the filing of a rule to compel Mr. Dobronich's deposition testimony, filed on June 13, 2013, in which counsel for petitioner asserted, as follows:

> Incidental to the above captioned suit #2 the plaintiffs [Nephews] have filed multiple pleadings all of which are intended to keep Mr. Sidney Dobronich from testifying truthfully about the facts that would exonerate the defendants from any claim of wrongdoing.

**(Ex. 3, appx. p.426.)**

4

On July 9, 2013, the Nephews submitted a medical report of Dr. Paul Verrette to the Court in the Civil Revocation Action, which declared that Mr. Dobronich suffered from "dementia" and that "and that "[h]is dementia is such that he is not able to direct his affairs concerning person or property in matters consistent with his own interest." **(Ex. 1, appx. pp. 16-17.)**

This report notwithstanding, counsel for Defendant continued to persist with obtaining a deposition of Sidney Dobronich.   On July 17, 2013, counsel in the Civil Revocation Action held a status conference with the Court, which counsel for Nephews summarized as follows:

> This is to confirm my conversation with you during the Status Conference with Judge Garcia wherein I informed you and the judge that we oppose the setting of Sidney Dobronich's deposition based on his incompetency and dementia.  As a result of that information, Judge Garcia has set this matter on the docket for August 27, 2013.

**(Ex. 1, appx. p.18.)**   The "setting of Sidney Dobronich's deposition", as a contested matter, was set for hearing on August 27, 2013. *Id.*

On August 13, 2013, the Nephews send another report of Dr. Verrette, dated July 25, 2013, not only stating that Sidney Dobronich was not competent to handle his affairs, but also "that [Sidney Dobronich] is not mentally stable enough to be able to provide any competent testimony in a court of law, including a deposition." **(Ex. 1, appx. pp. 19-20.)** On August 27, 2013, the Court in the Civil Revocation Action issued a judgment declaring Sidney Dobronich incompetent to testify at trial or deposition.  **(Ex. 3, appx. p.552.)**

Petitioner acknowledges filing a motion, through her counsel at the time, with the District Court in the Criminal Proceedings seeking to exclude the testimony of Sidney Dobronich, and entering into a stipulation with the State of Louisiana to that effect on December 12, 2013.  **(*See* Ex. 3, appx. pp. 319-338.)** Petitioner submits that said motion and stipulation were predicated upon the

August 27, 2013 judgment declaring Sidney Dobronich incompetent to testify.

Petitioner also was unaware that Sidney Dobronich purportedly executed a

handwritten will on July 18, 2013 (naming the Nephews as beneficiaries), nor

could she have been aware of the Nephew's attempt to probate same on August 6,

2014.  **(See Ex. 1, appx. pp. 22-31; Ex. 3, appx. pp. 706-15, and text,** *infra***.)**

During the hearing of December 12, 2013 concerning the petitioner's

Motion to Exclude Testimony, the following statements were made in open court:

> THE COURT:
>> Now we have the motion to exclude testimony
> from Sidney Dobronich.  I think we've had a discussion
> about that in chambers.  And there was an agreement that
> there would be no testimony from Sidney Dobronich, as
> Mr. Dobronich **has been declared incompetent.**
>> Is that correct?
> MR. BLAKE:
>> **That is correct**, your Honor.
> MR. BURNS:
>> That is correct, if that's a stipulation that he is not
> going to testify in the court proceedings.
> THE COURT:
>> I believe that's what Mr. Blake has indicated.
>
> *      *      *
>
> THE COURT:
>> No.  That motion is denied.
>> Now, Mr. Dobronich cannot assist the State in the
> presentation of their case **because he is incompetent,** so
> he will not be sitting at the counsel table.  But he is
> allowed to come into the courtroom.

**(Ex. 3, appx. pp. 327-28, 330.)(emphasis added).**

Petitioner was precluded from obtaining any potentially exculpatory

testimony from Sidney Dobronich through his death on March 25, 2014.

Notwithstanding the death of Sidney Dobronich in March of 2014, in August

of 2014; the LaAG, which was handling the prosecution in the criminal case,

procured expert testimony from Dr. Michelle Garriga regarding a forensic

psychiatric analysis of Mr. Sidney Dobronich.  **(Ex. 1, appx. p.36.)**  The explicitly

stated purpose of the evaluation was "to address [Sidney Dobronich's] mental

status and capacity to make decisions regarding his financial affairs in February and March of 2013." **(Ex. 1, appx. p.37; Ex. 3 appx. p.339.)** This expert testimony relied heavily upon the Verrette Reports and the written statements of the Nephews, as well as the investigation report of Det. Montgomery. **(Ex. 1, appx. pp. 38-39; Ex. 3, appx. pp. 356-57.)** Conspicuously, Dr. Garriga's evaluation was "by Records Review Only", despite the availability of the Nephews and Det. Montgomery for live interviews. **(Ex. 1, appx. p.37; Ex. 3, appx. p.339.)** Based on the acknowledged limited evidentiary review, Dr. Garriga concluded that Mr. Dobronich suffered from Major Neurocognitive Disorder (Dementia) and lacked the capacity to consent to any of the transactions conducted within the last two years of his life, including between February and March of 2013 for which petitioner was being prosecuted:

> Mr. Dobronich demonstrated confusion and memory loss, and problems with concentration, executive function, and social cognition during his court testimony on June 25, 2013. Dr. Verrette found disorientation and memory loss in his evaluation on July 2, 2013 leading to his diagnosis of dementia. Based upon his evaluation, Dr. Verrette further opined that Mr. Dobronich was "not able to direct his affairs concerning person or property in matters consistent with his own interest."
>
> It is my opinion that he lacked the same capacity in the months prior, i.e. during the time in question, February and March of 2014. Dementia (except that caused by a sentinel event such as a massive stroke) has a slow, step-wise progression. It does not spontaneously appear to the degree evident in Mr. Dobronich in June and July without it having also been present in the previous months.

**(Ex. 1, appx. pp. 38-39; Ex. 3, appx. 356-57.)**

Clearly, without this expert testimony, in light of the absence of Mr. Dobronich and the two instances of sworn testimony indicating that the transactions were authorized; the State of Louisiana would not have had legal sufficiency to bring the criminal prosecution against Petitioner or her husband.

7

More importantly, without Mr. Dobronich's availability; Petitioner was effectively required to rebut the State's evidence of the over 30 transactions of $334,000, conducted in less than one month's time with nothing but her own admittedly self serving testimony.

At around the same time that the State was procuring expert testimony regarding Mr. Dobronich's competence to authorize the transactions at issue, in August 2014, the nephews opened a succession of their uncle:  *Succession of Dobronich*, No. 2014-30680, 22nd J.D.C., Div "I" ("the Succession Proceeding"). **(Ex. 1, appx. pp. 22-23; Ex. 3, appx. pp. 706-07.)**  In this Succession Proceeding, the Nephews probated a hand written testament of Mr. Dobronich purporting to leave all of his property to his Nephews, and other nieces and nephews of Mr. Dobronich.  **(Ex. 1, appx. p.30; Ex. 3, appx. p.714.)**   The hand written will was dated July 18, 2013, within two weeks of the date of the Verrette Reports declaring the diagnosis of dementia and the mental incapacity of Mr. Dobronich.  **(Ex. 1, appx. p.28; Ex. 3, appx. p. 712.)**

On December 9, 2014, petitioner filed a Motion to Exclude the Testimony of Dr. Garriga, based on a violation of Louisiana Rules of Evidence Rule 702 (*Daubert*), in which the Petitioner specifically contested the reliability of Dr. Garriga's testimony as to the mental competency of Mr. Dobronich.  **(Ex. 9, Appx. pp. 3-5.)**  On December 16, 2014, a hearing on the Defense Motion to Exclude Expert Testimony was held, wherein Dr. Garriga specifically explained that Major Neurocognitive Disorder was of such a nature that Mr. Dobronich was completely mentally incompetent and did not and could not have any instances of mental capacity to conduct any transactions during the existence of the disorder.  **(Ex. 14; Ex. 1,  appx. p.40.)**  In her testimony of December 16, 2014, Dr. Garriga explained the basis for her determination that Sidney Dobronich's dementia had progressed

8

to such an extent at the time Dr. Verrette examined him on July 2, 2013, that the dementia would have had to have been present and February and March of 2013. **(Ex. 14.)** Furthermore, Dr. Garriga explicitly testified further the Sidney Dobronich could not have had any lucid moments in the timeframe of February and March of 2013, and hence could not have had any such lucid moments in July of 2013 as well. **(Ex. 14: Ex. 1, appx. p.40.)** The LaAG did not in any way attempt to qualify or correct this testimony; and the Court subsequently denied the Petitioner's Motion at that time. **(Ex. 14.)**

As a result of the potential testimony of Dr. Garriga, and being functionally deprived of Mr. Dobronich's exculpatory testimony, in December 17, 2014, Petitioner and her husband changed their pleas to guilty as charged. **(Ex. 3, appx. pp. 358-372.)** The prosecution, while agreeing to a sentence of probation for Petitioner's husband Calvin Thibodaux, insisted on a pre-sentence investigation as to Petitioner. *Id.* The Court set the sentencing hearing for January 29, 2015. *Id.*

On January 9, 2015, Defendant herein filed a Motion to withdraw her guilty plea and to dismiss the indictment on the grounds that the Nephews, in coordination with the State of Louisiana, deprived her of Mr. Dobronich's favorable testimony in violation of the Compulsory Process Clause of the 6th Amendment and the Due Process Clause of the 5th and 14th Amendments to the United States Constitution. **(Ex. 15.)** In opposition Petitioner's motion to withdraw her plea, the LaAG, in brief to the District Court, again relied on the opinion of Dr. Garriga in asserting that no Compulsory Process Clause violation occurred because the Compulsory Process Clause only applied to competent witnesses. **(Ex. 5, appx. pp. 4, 7-12.)** In making this argument, the State made this unequivocal statement:

> Mr. Sidney Dobronich had no knowledge of this transaction, had no knowledge that a check drawn on his

9

> account was used, **nor was he capable of consenting to this transaction because he was suffering from dementia** all of which is why he was not a party to the transaction.

**(Ex. 5, appx. pp. 11-12)** (emphasis added).

On January 29, 2015, the State of Louisiana, in arguing against the petitioner's motion to Withdraw Plea/Dismiss, made the following statement in open court:

> . . . There's no state involving here, whatsoever, with Mr. Dobronich's inability to testify. Judge, he died. The doctors **declared him incompetent to testify**. He was **declared incompetent to testify**, even in the civil suit. Judge, the State had no point in him being **declared incompetent**. Judge Garcia saw him, questioned him, and determined, while he was testifying on June 25, 2013, that he **was incompetent to testify**, Judge. Plain and simple. The Judge subsequently issued an order **declaring that he was incompetent to testify**.
>
> Last year, December 12, 2013, there was a hearing based on a motion filed by Mr. Roy Burns that sought to exclude Mr. Dobronich's testimony because he was **declared incompetent**, Judge. So that was resolved that day. Y'all [petitioner] agreed that he was **incompetent to testify**.

**(Ex. 3, appx. 389-90.)**

The Court subsequently denied the petitioner's Motion to Withdraw Plea/Dismiss, making the following statement:

> The Court is familiar with this case having began [sic] a trial in this matter, **listened to the testimony of Dr. Garriga**. The Court does believe that any testimony that would have been favorable to the Thibodauxes is **all speculative at this point**; and, further, **he would not have been allowed to testify**.

**(Ex. 3, appx. 391.)**

Sentencing followed, wherein the Court sentenced petitioner to 10 years in prison with 5 years suspended, and 5 years probation. **(Ex. 1, appx. p.3.)**

10

Petitioner filed her Application for Writ of Supervisory Review to the Louisiana First Circuit Court of Appeals on February 17, 2015, *State v. Thibodaux*, 22nd J.D.C. No. 534840-1, 1st Cir. C.A. No. 2015-KW-0280, which application was denied on February 19, 2015. **(Ex. 15.)** Petitioner filed her Application for Writ of Supervisory Review to the Louisiana Supreme Court on March 9, 2015, which application was denied on May 15, 2015. **Id.** In opposition Petitioner's motion to withdraw her plea, the LaAG, in brief to the Louisiana Supreme Court, again relied on the opinion of Dr. Garriga in asserting that no Compulsory Process Clause violation occurred because the Compulsory Process Clause only applied to competent witnesses, citing its brief to the District Court in which it expressly asserted as to Sidney Dobronich, "nor was he capable of consenting to this transaction because he was suffering from dementia." **(Ex. 5, appx. pp. 4, 7-12.)**

Subsequent to the District Court's rulings and sentence on January 29, 2015, on February 24, 2015, the Court in the Successions proceeding held a hearing on the petition to annul testament filed by Petitioner herein. **(Ex. 1, appx. pp. 42-43.)** Within that hearing, the proponents of the July 18, 2013 testament offered the sworn testimony of the Nephews, as well as Detective Stefan Montgomery of the St. Tammany Parish Sheriff's Office, that, at all times from February 2013 through his death in March of 2014, Sidney Dobronich was fully mentally competent. **(Ex. 1, appx. pp. 42-43; Ex. 3, appx. pp. 756-57, 780-82, 786-87, 795-96.)** Additionally, upon attempting to introduce the Verrette Report, the critical evidence supporting the State's expert testimony against Petitioner, the Nephew's through their counsel, objected to the introduction of the report on the grounds that the Verrette Reports constituted unreliable hearsay. **(Ex. 3, appx. pp. 736, 766, 770, 804-806.)** Additionally, Forest Dobronich testified that he was certainly

11

aware of the report and its conclusions, and stated that he "disagreed" with the conclusions.  **(Ex. 3, appx. pp. 765-66, 786-87.)**

The hearsay objections and "disagree[ment]" with the Verrette Report notwithstanding, Forest Dobronich admitted that the Verrette Report was submitted to the Court in the Civil Revocation Action, **(Ex. 3, appx. p.769)**, though he could not remember if the Verrette Report had been shown to Sidney Dobronich, **(Ex. 3, appx. pp. 767-68)**.  On that point, the Nephews did testify that Sidney Dobronich lived with Forest Dobronich from April 2, 2013 until his death in March of 2014, **(Ex. 3, appx. p.756)**, and was under what was described as "24/7 supervision" during that time, including personal supervision of Forest Dobronich on the date that Sidney Dobronich purportedly executed his July 18, 2013 handwritten will, **(Ex. 3, appx. pp. 760-62)**.

Pursuant to that testimony, the Court in the Successions Proceedings accepted the testimony offered by the Nephews, sustained the hearsay objection as to the Verrette report, and issued a Judgment upholding Sidney Dobronich's execution of the July 18, 2013 hand written will.  **(Ex. 1, appx. pp. 42-43; Ex. 3, appx. pp. 807-09.)**

**2) Procedural History:**

On July 28, 2016, petitioner filed her claims for post conviction relief.  **Ex. 16.)**   In those claims, petitioner largely re-asserted the facts previously raised in her prior Motion to Withdraw her Guilty Plea and to Dismiss the Indictment against her as well as her unsuccessful writ applications.  **(Ex. 1.)**  The Post Conviction Relief petition was predicated largely on the new evidence, not originally before the District Court in her previous Motion to Withdraw Plea/Dismiss, containing sworn testimony of George and Forest Dobronich, Det. Montgomery and Courtney Dobronich unequivocally asserting the mental

competence of Mr. Sidney Dobronich, as well as the District Court's ruling in the case of Successions Proceedings, that Mr. Dobronich was mentally competent on July 18, 2013 (4 months after the transactions that are the subject of the criminal proceedings were conducted). *Id.* In particular, petitioner's claims consisted of the following: 1) a violation of the Due Process Clause for the knowing submission of the expert testimony of Dr. Garriga, which the State knew was false; 2) a reassertion of the compulsory process clause/due process clause violation based on the State's involvement in preventing Mr. Dobronich's favorable testimony. *Id.*

On September 7, 2016, petitioner supplemented her initial petition with an additional claim, claiming a violation of the due process clause resulting from Det. Montgomery's failure to record the second interview of March 21, 2013, in which petitioner asserts that Sidney Dobronich told Det. Montgomery that all of the transactions of February and March of 2013 were authorized. **(Ex. 2; Ex. 16.)**

On October 27, 2016, the State of Louisiana submitted its response to petitioner's claims. **(Ex. 3.)** The State obtained and introduced various filings and the verbatim transcripts for the civil proceedings, including the February 24, 2015 hearing in the matter of Successions Proceedings as well as the May 20 hearing in the matter of *Dobronich, et al. v. Thibodaux, et al.*, No. 2013-11784, 22nd J.D.C., Div. "D", (hereinafter, "the Civil Revocation Action"). The state also introduced the entire investigation report of Det. Montgomery, with exhibits, as well as the various filings in the criminal proceedings. **(Ex. 3, appx.)** Finally, the State of Louisiana introduced the transcripts for the petitioner's guilty plea in the criminal proceedings on December 17, 2014; the transcript of the motions and sentencing hearing on January 29, 2015. *Id.*

13

Conspicuously, the State of Louisiana did not introduce any transcript of the December 16, 2014 testimony of Dr. Garriga at the hearing on petitioner's motion to exclude her testimony. *Id.*

In its response, the State of Louisiana generally asserted that the evidence was insufficient to establish any of the claims asserted by petitioner in her Petition for Post Conviction Relief. **(Ex. 3.)** However, in so asserting, the State of Louisiana specifically acknowledged the testimony of Forest Dobronich, quoting that "from the time he moved in [April 2, 2013] until the time he died [March 24, 2014]", that Sidney Dobronich was "in good shape mentally" and that "really he was competent". **(Ex. 3, pp. 9-10.)** In referring to the Verrette Report which was the primary basis for Dr. Garriga's opinion, the State of Louisiana again quoted Forest Dobronich's March 24, 2015 testimony that he disagreed with the diagnosis of "incompetency and dementia." **(Ex. 3, p.10.)** The State of Louisiana also referenced the testimony of Det. Montgomery's March 24, 2015 testimony that Sidney Dobronich appeared "lucid" each of the three times he interviewed him at the hospital, **(Ex. 3, p.10)**, as well as the March 24, 2015 testimony of George Dobronich in which he "testified that he visited Sidney Dobronich seven or eight times after his March 2013 hospitalization, and that each time he visited, Sidney Dobronich appeared to be lucid", **Ex. 3, p.11**).

The State of Louisiana's explanation for these discrepancies was not to contest the above testimony, nor did the State contest the specific instances in which these witnesses testified that he was mentally competent, leading to a finding by the Court that Sidney Dobronich was mentally competent to execute an olographic testament on July 18, 2013. The State of Louisiana explained its position as follows:

> Initially, the State never contended that Sidney
> Dobronich ws completely mentally incompetent on a

14

> 24/7 basis.   Instead, the State contended (and still
> believes) that Mr. Dobronich was at times alert and
> oriented but could become disoriented quickly when in a
> foreign environment and/or exposed to psychological
> pressure.

**(Ex. 3, p.9.)**

In a supplemental response, dated October 31, 2016, the State of Louisiana

elaborated:

> The prosecution believes that one may both (i) suffer
> from dementia and (ii) from time to time experience
> moments of lucidity.   For that reason, the opinion of Dr.
> Garriga is not inconsistent with the observations of
> Detective Montgomery.   In any event, to the extent that
> the opinion of Dr. Garriga conflicts with the observations
> of Detective Montgomery, the prosecution was prepared
> to present such conflicts to the jury for the jury's
> consideration.

**(Ex. 4., p.2.)**

On November 15, 2016, in light of the positions taken by the State of

Louisiana regarding not only Dr. Garriga's testimony; but its own position

regarding the mental competence of Sidney Dobronich; petitioner filed a motion to

compel production of the transcript of the December 16, 2014 testimony of Dr.

Garriga wherein she explicitly testified that, in her opinion, Sidney Dobronich

could not have any lucid moments or moments of mental competency.  **(Ex. 6; Ex.**

**14; Ex. 16.)**   This motion was also accompanied by attempts by undersigned

counsel, by telephone and e-mail, to procure said transcript.  **(Ex. 14.)**

In addition to the evidence submitted by the petitioner and the State of

Louisiana, petitioner, on January 23, 2017; petitioner requested subpoenas be

issued for several witnesses, including Det. Montgomery, for live testimony to be

given at a hearing tentatively set for March 8, 2017.  **(Ex. 10; Ex. 16.)**   In response,

the State of Louisiana filed a request for summary adjudication of the petitioner's

claims on February 14, 2017.  **(Ex. 11.)**

On February 23, 2013, the District Court granted the request of the State of Louisiana and summarily denied petitioner's claims for post conviction relief. **(Ex. 12.)** Specifically, as to Claim I (knowing submission of false testimony of Dr. Garriga), the District Court accepted the State's assertion that its position was that Mr. Sidney Dobronich was both mentally incompetent but had "lucid intervals"; and that petitioner had failed to produce sufficient evidence to disprove that position. *Id.* As to Claim II (Compulsory Process Clause Violation), the District Court noted that petitioner's initial Motion to Exclude Mr. Dobronich's testimony, filed in November of 2013 and joined by the State of Louisiana in December of 2013, conspicuously omitting that not only the petitioner, but also the District Court, relied upon the State's contention that Mr. Dobronich was incompetent to testify. *Id.* As to Claim III (Spoliation of additional favorable testimony by Det. Montgomery), the District Court again simply found that petitioner failed to produce sufficient proof to support the claim. *Id.* Finally, as to Claim IV, the District Court found that the assertion as to the constitutionality of La. R.S. 14:93.4 as applied had been waived by petitioner's guilty plea of December 17, 2014. *Id.*

As to the Motion to Compel, the District Court did not explicitly make a ruling on same; though given the rulings of the District Court on all other claims; the Motion, presumably, was denied. Based on the below issues and arguments, the rulings of the District Court as to petitioner's Claims I, II, and III, as well as the Motion to Compel, are erroneous and should be reversed by this Court.

## ISSUES TO BE CONSIDERED

**(1) Did the District Court Err in Denying Petitioner's Claims for Post Conviction Relief?**

**(2) Did the District Court Err in Failing to Compel Production of the Transcript of Dr. Garriga's Testimony?**

16

## SPECIFICATIONS OF ERROR

**(1)** **The District Court Erred in Finding Insufficient Evidence to Support Violations of the Due Process Clause and the Compulsory Process Clause Underpinning all Four of Petitioner's Claims for Post Conviction Relief.**

**(2)** **The District Court Erred in Failing to Compel Production of the Transcript of the Testimony of Dr. Garriga.**

## SUMMARY OF ARGUMENT

**Specification No. 1:** The assertion of the State in its October 27, 2016 response to petitioner's claims constitutes an admission that Sidney Dobronich had both transactional mental competent to authorize all transactions petitioner made on his behalf in February and March of 2013 and that he had testimonial mental competence to testify to that authorization thereafter. Under the uncontested evidence presented to the District Court, the admission is materially inconsistent with the State's prior position that Sidney Dobronich lacked mental competence both to testify and to conduct transactions, rendering erroneous the District Court's denial of all claims for post conviction relief.

**Specification No. 2:** Petitioner is unquestionably entitled to production of the transcript of Dr. Garriga's December 16, 2014 testimony in which she directly contradicted the State's revision of its assertions as to Sidney Dobronich's transactional and testimonial mental capacity. To the extent that this Court is not convinced that petitioner is entitled to relief as per Specification No. 1, by not compelling production of the transcript, the District Court has potentially deprived petitioner of the ability to directly challenge the State's contention. Thus, the District Court erroneously deprived petitioner of a meaningful opportunity to appeal the decision of the

District Court regarding the State's materially inconsistent position and potentially the correctness of the District Court's ruling.

## ARGUMENT

**(1)** **The District Court Erred in Finding Insufficient Evidence to Support Violations of the Due Process Clause and the Compulsory Process Clause Underpinning all Four of Petitioner's Claims for Post Conviction Relief.**

Petitioner herein generally asserts that assignment of error as to all claims for post conviction relief denied by the District Court herein. All four claims for post conviction relief are predicated on the fundamental fact that the State's prosecution against the petitioner, as well as its opposition to her previous writ application to this Court, was EXPLICITLY based on the assertion that Sidney Dobronich, the purported victim in this case, was BOTH mentally incompetent to authorize any of the transactions executed on his behalf by the petitioner in February and March of 2013 AND mentally incompetent to testify on her behalf as to that authorization. The primary basis of that position was espoused by the expert opinion of Dr. Michelle Garriga, who opined as such, based largely on a report of Dr. Paul Verrette, who concluded based on a purported medical examination conducted on July 2, 2013 that Sidney Dobronich "[was] not able to direct his affairs concerning person or property in matters consistent with his own interest." This report of Dr. Verrette was submitted to a division of the 22nd Judicial District Court on behalf of Mr. Dobronich's Nephews, George and Forest Dobronich, in a related civil action against petitioner. The expert testimony of Dr. Garriga was the SOLE basis for the prosecution of petitioner after Mr. Dobronich, resulting in the commencement of a trial on December 16, 2014 and to her succumbing to the pressures of said trial and pleading guilty on December 17, 2014.

18

Less than two months after her guilty plea and one month after sentencing, the very same Nephews who unequivocally represented to Division "D" of the 22nd Judicial District Court that Sidney Dobronich was mentally incompetent in July and August of 2013 (upon which representations the Court relied); unequivocally and repeatedly represented, through sworn testimony, that he was mentally competent on July 18, 2013 (when Sidney Dobronich purportedly executed a hand written will naming these Nephews as heirs to his entire estate).  This sworn testimony was not available for consideration by this Court or by the Louisiana Supreme Court in the prior writ application.  The State of Louisiana asserted the evidence of Sidney Dobronich's mental incompetence as the primary basis for opposition.  The District Court relied on the State's assertions in its January 29, 2015 holding that was the subject of that writ application; and this Court, as well as the Louisiana Supreme Court, so relied in their respective denials of writs.

In response to the claims for post conviction relief herein, the State of Louisiana now states that its position was (and was consistently so throughout the proceedings) that Sidney Dobronich was not "completely incompetent" but was "at times alert and oriented".  The District Court, without challenge, accepted this position and denied post conviction relief.  As more fully set forth below, this assertion by the State of Louisiana, as well as its acceptance by the District Court is a dangerously oxymoronic and, with all deliberate understatement, threatens to render meaningless any semblance of the rule of law.  As such, it should be conspicuously rejected by this Court.

(a)    **Claim I:  Submission of False Testimony of Dr. Michelle Garriga.**

First and foremost, the jurisprudence has unanimously and uniformly recognized that "the Due Process Clause of the Fourteenth Amendment forbids the government from knowingly using false testimony against a criminal defendant, or

failing to correct said false testimony. *U.S. v. Mason*, 293 F.3d 826, 828 (5th Cir. 2002) (citing *Giglio v. United States*, 405 U.S. 150, 153 (1972)). To prove a due process violation, the plaintiff (criminal defendant) must establish that (1) the testimony was false; (2) the government knew the testimony was false; and (3) the testimony was material. *Id.* Additionally, the Fifth Circuit has also recognized that a Due Process violation where the government official deliberately conceals exculpatory evidence. *See Geter v. Fortenberry*, 849 F.2d 1550, 1559 (5th Cir. 1988). Additionally, the court in *Mason* specifically held that reversal for knowingly using false testimony is proper even where the defense had an opportunity to correct the error. 293 F.3d at 829.[1]

At this point, it is important to analyze the State's admission in its responses of October 27, 2016 and October 31, 2016, within the context of the evidence which the State has submitted in support of those responses. The State's two assertions, as accepted by the District Court, are that 1) Sidney Dobronich "was at times alert and oriented but could become disoriented quickly when in a foreign environment and/or exposed to psychological pressure;" and 2) "that one may both (i) suffer from dementia and (ii) from time to time experience moments of lucidity." These assertions, as written, can be used to describe virtually any individual, and as such, is patently meaningless. The legally significant questions in the context of the State's assertions are these: (1) Whether Sidney Dobronich

---

[1] In *U.S. v. Mason*, the Fifth Circuit reversed a criminal defendant's convictions regarding charges for possession with intent to distribute crack cocaine and conspiracy. 293 F.3d at 826. The reversal was predicated on the testimony regarding the government's primary witness, who falsely testified that he did not enter into a plea agreement with the government and the government failed to correct the witness's misrepresentation. *Id.* at 828. In addressing the government's argument as to the defense counsel's opportunity to correct the error, the court specifically explained that the defense counsel's ability and potential failure to correct the error had no effect on the government's ability to do so and would not render the government's violation as harmless error. *Id.* at 829.

20

was mentally competent to authorize the transactions conducted on his behalf by petitioner in February and March of 2013 (transactional competence); and (2) whether Sidney Dobronich was mentally competent to testify as to his authorizations to those transactions, as he attempted to do on March 27, 2013 and again on June 25, 2013 (testimonial competence).

In light of the States' significant actions in submitting to the District Court as evidence, without qualification, the transcript of the February 24, 2015 proceedings in the matter of the Successions Proceedings and the Judgment issued therewith; the State of Louisiana, in asserting that Sidney Dobronich "was at times alert and oriented" has admitted by clear inference, the following:  That Sidney Dobronich had BOTH transactional and testimonial mental competence on July 18, 2013.  Even more significant, from the State's own admissions, was that the State of Louisiana has always contended that Sidney Dobronich had both transactional and testimonial mental competence on July 18, 2013.

From there, it proceeds that Dr. Garriga's expert testimony was false and that the State of Louisiana knew it was false when it submitted said testimony to the District Court.   As stated in Dr. Garriga's report, major neurocognitive dementia as a "slow, step wise progression".   Based on that "slow, step wise progression," Dr. Garriga opined that the severity of Mr. Dobronich's dementia, as noted by Dr. Verrette, was of such a nature that it had to have been present in February and March of that year.  A necessary predicate to Dr. Garriga's analysis is that Sidney Dobronich's cognitive functions had to have been better in February and March of 2013 than they were later in July of that year.  Because the State has admitted that Sidney Dobronich had both transactional and testimonial mental competence on July 18, 2013, as per Dr. Garriga's analysis, his transactional and testimonial competence, as it existed in February and March of 2013, could not

21

have been affected by the "slow, step wise progression" of the "major neurocognitive dementia" that she found had impacted him in July of that same year.  Furthermore, because the State has effectively admitted that it was aware, at all relevant times, that Sidney Dobronich had transactional and testimonial mental competence on July 18, 2013, it also stands as an admission that it was aware of this transactional and testimonial mental competence in February and March of 2013.  As such, the testimony of Dr. Garriga is clearly false and the State of Louisiana knew it was false.

Evidence that directly makes this point is the testimony of Det. Montgomery and the purported "victims" of petitioner on February 24, 2015 in the Successions Proceeding in which they testified to his general mental competence throughout 2013 and up until his death in March of 2014, including on March 18, 21 and April 2, 2013 (Det. Montgomery) and March 28 (George Dobronich) at St. Tammany Parish Hospital.  Additionally, this point is also illuminated by the testimony of Forest Dobronich on February 24, 2015 in which he specifically "disagree[d]" with the opinion of Dr. Verrette, the very opinion that his own attorney submitted to the District Court to have a judgment prepared declaring Sidney Dobronich incompetent to testify on August 27, 2013 in the Civil Revocation Action (again, contrary to the State's admitted understanding of the testimonial mental competence of Sidney Dobronich at that time).  Further, to the extent that George and Forest Dobronich, and their attorney, were confronted with the Verrette Report in the Succession Proceeding, on February 24, 2015, their attorney objected to the admission of said report on the basis of unreliable hearsay.  Again, as acknowledged by the State of Louisiana in its responses to the petitioner's claims, and the State's necessarily close relationship and coordination

22

with these individuals as the "victims" of petitioner; these inconsistencies were known by the State of Louisiana at all relevant times.

Perhaps one of the more insidious signs of the malfeasance of the State of Louisiana with regard to the submission of Dr. Garriga's testimony is the acknowledgement that Dr. Garriga's opinion was generated on the basis of "records review only", despite the clear availability of the Nephews and Det. Montgomery for live interviews and despite the fact that a legally reliable forensic psychiatric evaluation under *Daubert* clearly contemplate information gathering "from as many sources as possible." *See In re Succession of Pardue*, 40,177 (La. App. 2 Cir. 11/8/05), 915 So. 2d 415, 420 (emphasis added); *see also Succession of Werner v. Zarate*, 2007-0829 (La. App. 1 Cir. 12/21/07), 979 So. 2d 506, 509.

The State of Louisiana specifically attempts to argue that Dr. Garriga's testimony and report are not false due to the limitation of said testimony and reports to the sum of the records presented:

> Initially, the caption of the report authorized by Dr. Garriga is "Forensic Psychiatric Evaluation of Sidney Dobronich *by Records Review Only*. (emphasis supplied). It consists of two parts: a summary of the records reviewed and an "assessment" along with a "basis for opinion".
>
> The petitioner argues that the records reviewed by Dr. Garriga are contradicted by other evidence which was not reviewed by Dr. Garriga. The petitioner does not argue that Dr. Garriga misrepresented the records she did review. Nor does the petitioner argue the Dr. Garriga's opinion is unsupported by the records she actually reviewed.

**(Ex. 3, pp. 11-12.)** Far from being exculpatory in any way, this brazenly arrogant statement is damning. Dr. Garriga's report was purportedly not false because she did not know it was not false: the State of Louisiana knew it was false. The State of Louisiana controlled the evidence reviewed by Dr. Garriga, specifically allowing her only to review certain evidentiary materials and not permitting an

23

interview of the witnesses, who testified unambiguously to Sidney Dobronich's transactional and testimonial mental competency on February 24, 2015.  Given the admissions that the State of Louisiana "never contended that Sidney Dobronich was completely incompetent on a 24/7 basis" and that Sidney Dobronich was "at times alert and oriented", the State of Louisiana deliberately prevented Dr. Garriga from interviewing Det. Montgomery, George and Forest Dobronich in order to achieve a desired outcome regarding her opinion.  As such the "records only" limitation is conclusive proof of the malfeasance of the State of Louisiana in submitting Dr. Garriga's testimony to the District Court as evidence against the petitioner in the criminal matter.

**(b)    Claims II, III and IV:  Due Process Clause, Compulsory Process Clause; Spoliation and Unconstitutional Vagueness of La. R.S. 14:93.4 as Applied to Petitioner.**

As mentioned above, the State's knowing misrepresentations regarding Sidney Dobronich's transactional and testimonial mental competence, while most directly pertaining to the submission of the knowingly false report of Dr. Garriga; is also the foundation for all other claims submitted by petitioner herein.

With regard to Claim II, petitioner extensively argued and briefed the District Court, this Court and the Louisiana Supreme Court as to how the circumstances of this case implicated a violation of the Compulsory Process Clause, and the State's participation in preventing the favorable testimony of Sidney Dobronich from being presented on petitioner's behalf.  In responding to the previous arguments of petitioner, the State unequivocally asserted to the District Court, and again to the Louisiana Supreme Court, that Sidney Dobronich was "[not] was he capable of consenting to this transaction because he was suffering from dementia" and asserted numerous times in open court on January 29, 2015 that Sidney Dobronich was "incompetent to testify".   The District Court

24

specifically relied upon the State's assertion when it explicitly held in open court that Sidney Dobronich was not competent to testify. Arguably, this Court, as well as the Louisiana Supreme Court accepted the District Court's finding that Sidney Dobronich was incompetent to testify, in accordance with the jurisprudence that the Compulsory Process Clause applies only as to "competent" witnesses. *See Washington v. Texas,* 388 U.S. 14, 23, n.21, 87 S. Ct. 1920 (1967).

In its October 27, 2016 response to the petitioner's claims, the State of Louisiana accepted the sworn testimony in favor of upholding Sidney Dobronich's July 18, 2013 handwritten will, and in particular Forest Dobronich's testimony that "from the time he moved in [April 2, 2013] until the time he died [March 24, 2014]", that Sidney Dobronich was "in good shape mentally" and that "really he was competent". With that response, the State of Louisiana essentially made a judicial confession that Sidney Dobronich was mentally competent to testify, in direct repudiation of its prior position that was previously accepted by the District Court and upheld by this Court.

Based on this apparent concession by the State of Louisiana regarding this testimonial mental competence, the District Court relied solely on the fact that the petitioner, through her counsel at the time, initially moved to have Sidney Dobronich's testimony excluded in October of 2013, to find an absence of any Compulsory Clause violation on behalf of the State of Louisiana. This analysis erroneously ignores the uncontroverted fact that the State of Louisiana, as per its October 27, 2016 submission to this Court regarding Mr. Dobronich's mental capacity, committed fraud by omission in its statements to this Court on December 12, 2013, when it joined in petitioner's Motion to Exclude Sidney Dobronich's testimony. Further, the State's avowed position of October 27, 2016 regarding Mr. Dobronich's mental capacity, taken at face value, is tantamount to an admission of

25

fraudulently inducing petitioner's prior counsel to seek to exclude Mr. Dobronich's testimony based on circumstances not known by petitioner or by this Court, but known by the State. As such, the District Court's sole reliance on the fact that the Motion to Exclude Sidney Dobronich's testimony was initiated by petitioner is patently erroneous. More significantly, and ominously, the admittedly fraudulent statements made by the LaAG Office to the District Court in support of the motion to exclude Sidney Dobronich's testimony raise the ominous question as to whether that Office was aware of, or even intended to procure the testimony of Dr. Garriga at that time. In any event, the District Court's ruling at to an absence of any Compulsory Process Clause violation, as stated in Claim II of petitioner's claims for post conviction relief, is erroneous.

With regard to Claim III, potential spoliation of an additional exculpatory statement of Sidney Dobronich by Det. Montgomery, the State's October 27, 2016 response, again, raises this claim to an evidentiary level that has erroneously been disregarded by the District Court. The same evidence that established as conclusive Sidney Dobronich's transactional and testimonial mental competence on July 18, 2013, and all times prior thereto, also established such competence up until the time of his death, when he could have, at any time, ended this prosecution against petitioner herein. Far from being a mere technical question of the accuracy of Dr. Garriga's testimony; the evidence naturally drives the additional questions myopically avoided by the State of Louisiana and the District Court, but germane to this inquiry: if Sidney Dobronich had transactional mental competence and authorized the transactions at issue in this prosecution, and had testimonial mental competence; was he wrongfully prevented from so testifying as such. Further, was he, in fact, wrongfully and illegally coerced to cooperate with the prosecution, and with various actors in the civil litigation, against his will.

Specifically, in light of his sworn exculpatory statements of March 27, 2013 and June 25, 2013 testimony, the latter being under circumstances clearly indicative of Sidney Dobronich overcoming coercion on the part of his nephews; it is probable that Sidney Dobronich had attempted to make additional statements favorable to the petitioner that were deliberately concealed.  The evidence is clear that such illegal suppression was done on the part of the nephews, who clearly and unambiguously sought to have Sidney Dobronich declared incompetent to testify and overtly thwarted petitioner's numerous attempts to obtain a sworn statement from him.  The evidence is also clear that such a statement was probably made to Det. Montgomery on March 21, 2013, being the only statement of the three taken by Det. Montgomery that was not recorded.   Given the totality of the circumstances, as more fully set forth in the previous writ application to this Court, and the fact that Sidney Dobronich's March 27, 2013 affidavit and June 25, 2013 must be credited as having been made by someone with testimonial mental competence; the District Court's finding of a lack of sufficient evidence to support a spoliation claim regarding Det. Montgomery's March 21, 2013 interview with Sidney Dobronich was manifestly erroneous.

Finally, with regard to Claim IV, petitioner asserted that the position espoused in the testimony of Dr. Garriga (and the position apparently taken by the state in its averments to the District Court) regarding the mental competence of Sidney Dobronich were conditions precedent for sustaining a constitutionally viable prosecution against Petitioner and placing the State in the position to obtain a guilty plea from Petitioner in the first place.  Further, allowing the State to change its position to accommodate the February 24, 2015 testimony, and to assert that Sidney Dobronich had transactional and testimonial mental competence specifically on July 18, 2013 (and at all times prior to that date as per the analysis

27

of Dr. Garriga); rendered its prosecution against petitioner, without specific testimony that the transactions at issue were not authorized, rendered La. R.S. 14:93.4 unconstitutional as applied.

The State argues that Petitioner's claim that La. R.S. 14:93.4 is unconstitutional as applied, made by petitioner in response to the State's revision of its position on October 27, 2016 regarding Mr. Dobronich's mental capacity; was waived by plaintiff's guilty plea of December 17, 2014.  The District Court accepted without any scrutiny, the position of the State and found a lack of evidence to suggest that the State of Louisiana had changed its position on October 27, 2016 regarding the mental competence of Sidney Dobronich.  With utmost respect to the District Court, given the evidence in the form of the pleadings and statement in open court of the LaAG Office with respect to the mental competence of Sidney Dobronich, the evidence speaks for itself, and the District Court's ruling on this point is patently erroneous.

**(2)** **The District Court Erred in Failing to Compel Production of the Transcript of the Testimony of Dr. Garriga.**

In addition to denying all four claims for post conviction relief submitted by petitioner, the District Court erred by effectively denying petitioner's Motion to Compel Production of the transcript of the December 16, 2014 testimony of Dr. Garriga regarding the specific nature of the "major neurocognitive dementia" purportedly present in Sidney Dobronich at all relevant times herein.  While petitioner avers that the evidence submitted heretofore is conclusive as to the nature of Dr. Garriga's opinion regarding Sidney Dobronich's transactional and testimonial mental competence at all relevant times in these proceedings; petitioner further avers that Dr. Garriga specifically and unequivocally testified that the nature of the major neurocognitive dementia was such that Sidney Dobronich did not have, and could not have had ANY lucid moments or any instances of

28

transactional or testimonial mental competence at any time "prior to February 2013 and up until his death in March of 2014.  To the extent that this Court agrees with the District Court as to the State's position regarding the mental competence of Sidney Dobronich, which position has been placed squarely at issue herein; the District Court has erred in not requiring the State of Louisiana to produce the transcript of the December 16, 2016 testimony of Dr. Garriga.

It is well settled jurisprudence that petitioner has a right under the Due Process Clause of the United States Constitution to have a record of his criminal proceedings sufficient to allow for an "adequate" and "meaningful" appellate review of those proceedings.  *See Draper v. Washington*, 372 U.S. 487, 495 (1963); *Griffin v. Illinois*, 351 U.S. 12, 20 (1956) (recognizing a criminal defendant's right to "adequate" and "effective" appellate review); *U.S. v. Selva*, 559 F.2d 1303, 1305-06 (5th Cir. 1977); *U.S. v. Charles*, 313 F.3d 1278, 1283 (11th Cir. 2002)(recognizing a due process right of a criminal defendant to have a record of his criminal proceedings sufficient to " 'accord effective appellate review' of the issues raised on appeal").

In this case, the State of Louisiana has produced verbatim transcripts of the trials in the two accompanying civil proceedings as well as petitioner's December 17, 2014 guilty plea and the motions and sentencing hearing of January 29, 2015 and the December 12, 2013 hearing on the motion to exclude Sidney Dobronich's testimony.  To the extent that the Court would now indulge the State's oxymoronic position that Sidney Dobronich was mentally incompetent, except when he was mentally competent, as the District Court has done; that transcript is now critical to petitioner's ability to appeal the District Court's denial of her claims for post conviction relief.   Undersigned counsel's affidavit is not merely a proffer of anticipated testimony, it is a statement of  Dr. Garriga's actual testimony in the

29

Criminal Proceedings.  The affidavit provides that Dr. Garriga specifically denied that Sidney Dobronich had any transactional or testimonial mental competence whatsoever, during the time in which the transactions at issue in the criminal proceedings were performed.  The affidavit also spells out undersigned counsel unsuccessful attempts at obtaining said transcript.  As that testimony squarely refutes the averments of the State of Louisiana and the District Court's acceptance of same, the District Court's denial of production of that transcript severely hinders petitioner's ability to a meaningful appeal.  As such, the District Court erred in not compelling the State of Louisiana to produce the December 16, 2014 testimony of Dr. Garriga in the criminal proceedings.

<u>**CONCLUSION and PRAYER**</u>

**WHEREFORE,** based on the above, applicant prays for, and is entitled to, post conviction relief under La. C. Cr. P. Articles 926, *et seq.* arising from several distinct violations of the Due Process Clause and Compulsory Process Clause of the United States Constitution and Louisiana Constitution.  Additionally, and alternatively, to the extent that this Court accepts the averments of the State of Louisiana and the holdings of the District Court regarding the State's "revised" position on the mental competence of Sidney Dobronich; applicant is entitled to compel the deposition testimony of Dr. Michelle Garriga, in order to meaningfully appeal the rulings of the District Court below.

Respectfully Submitted,

**CLAIBORNE W. BROWN (25594)**
1070-B West Causeway Approach
Mandeville, LA  70471
Telephone:  (985) 845-2824
Facsimile:  (985) 246-3199
*cwbrown@cwbrownlaw.com*

30

## **CERTIFICATE OF SERVICE**

I do hereby certify that I have served a copy of the above and foregoing pleading on all counsel of record herein by mailing same by electronic mail or United States Mail, properly addressed and first class postage prepaid, on this 7th day of April, 2017.

**CLAIBORNE W. BROWN (25594)**
1070-B West Causeway Approach
Mandeville, LA  70471
Telephone:  (985) 845-2824
Facsimile:  (985) 246-3199
*cwbrown@cwbrownlaw.com*

# STATE OF LOUISIANA

# COURT OF APPEAL, FIRST CIRCUIT

STATE OF LOUISIANA

VERSUS

DARNAY THIBODAUX

NO.   2017 KW 0487

MAY 2 5 2017

In Re:   Darnay Thibodaux, applying for supervisory writs, 22nd
Judicial District Court, Parish of St. Tammany, No.
543,638-1.

BEFORE:   WHIPPLE, C.J., GUIDRY AND McCLENDON, JJ.

WRIT NOT CONSIDERED.   Relator failed to comply with Local
Rules of the Court of Appeal, First Circuit, Rules 8(G) and (H)
by   failing   to   include   an   electronic   signature   in   the
application. Supplementation of this writ application and/or an
application for rehearing will not be considered.   See Uniform
Rules of Louisiana Courts of Appeal, Rules 2-18.7 & 4-9.   In the
event relator elects to file a new application with this Court,
the application shall be filed on or before July 31, 2017.   Any
future filing on this issue should include the entire contents
of this application, the missing item noted above, and a copy of
this ruling.

PMc
VGW
JMG

COURT OF APPEAL, FIRST CIRCUIT

DEPUTY CLERK OF COURT
FOR THE COURT

# STATE OF LOUISIANA

# COURT OF APPEAL, FIRST CIRCUIT

STATE OF LOUISIANA

VERSUS

DARNAY THIBODAUX

NO.   2017 KW 0736

JUL 2 4 2017

---

In Re:     Darnay Thibodaux, applying for supervisory writs, 22nd
           Judicial District Court, Parish of St. Tammany, No.
           543,638-1.

---

BEFORE:   THERIOT, CHUTZ AND PENZATO, JJ.

     WRIT DENIED.

                         AHP
                         MRT
                         WRC

COURT OF APPEAL, FIRST CIRCUIT

_Renee L Reid_
DEPUTY CLERK OF COURT
        FOR THE COURT

**SUPREME COURT**

**STATE OF LOUISIANA**

* * * * * * * *

**DOCKET NUMBER: _____**

* * * * * * * *

**DARNAY THIBODAUX**

**versus**

**KEVIN HIDALGO**

* * * * * * * *

**APPLICATION FOR SUPERVISORY REVIEW BY
DARNAY THIBODAUX FROM THE DENIAL OF WRIT BY
THE LOUISIANA FIRST CIRCUIT COURT OF APPEALS
DOCKET NO. 2017-KW-0736
PANEL JUDGES TERRIO, CHUTZ, PENZATO PRESIDING**

* * * * * * * *

**JUDGMENT OF THE 22nd JUDICIAL DISTRICT COURT
PARISH OF ST. TAMMANY, STATE OF LOUISIANA
DOCKET NO. 543638-1,
THE HONORABLE RICHARD A. SWARTZ PRESIDING**

* * * * * * * *

**ORIGINAL APPLICATION OF DEFENDANT/PETITIONER
DARNAY THIBODAUX**

**Defendant/Petitioner**

* * * * * * * *

**Respectfully submitted,**

**CLAIBORNE W. BROWN (25594)
1070-B West Causeway Approach
Mandeville, LA  70471
Telephone:  (985) 845-2824
Facsimile:  (985) 246-3199**

## S.C. RULE X(2)(D) VERIFICATION

I, **CLAIBORNE W. BROWN,** under penalty of perjury and contempt of court, do hereby declare that on behalf of my client, DARNAY THIBODAUX, I have applied for Supervisory Review to the Supreme Court of the State of Louisiana based on a denial of an application for supervisory review by the Louisiana First Circuit Court of Appeals as to a decision of the Honorable Richard A. Swartz, Judge, 22nd Judicial District, regarding the claims for post conviction relief of DARNAY THIBODAUX and that all allegations in this Writ Application are true and correct to the best of my knowledge, information and belief.

**THAT I DO HEREBY CERTIFY** that the District Court and all counsel have been notified of this Writ Application and that all concerned have been served with these documents.

**THAT I DO HEREBY CERTIFY** that a copy of this Writ Application has been filed with the First Circuit Court of Appeal in Baton Rouge, Louisiana, and sent to the Honorable Richard A. Swartz, and the following counsel of record by hand delivery and/or by depositing same in the U. S. Mail, postage prepaid and properly addressed this 23th day of August, 2017.

TRIAL COUNSEL FOR THE STATE OF LOUISIANA:
   Office of the District Attorney for the 22nd Judicial District
   Mr. Matthew Caplan, Assistant District Attorney
   701 N. Columbia Street
   Covington, LA 70433
   Telephone: (985) 809-8383

COUNSEL FOR THE LOUISIANA ATTORNEY GENERAL'S OFFICE
   Office of the Louisiana Attorney General
   Mr. Winston White, Assistant Attorney General
   1885 N. Third Street
   Baton Rouge, LA 70804-9005
   Telephone: (225) 326-6200

PRESIDING JUDGE, 22nd JUDICIAL DISTRICT COURT:
   The Honorable Richard A. Swartz
   22nd Judicial District Court
   701 N. Columbia Street
   Covington, LA 70433
   Telephone: (985) 809-5315

**CLAIBORNE W. BROWN**

ii

# I N D E X

**PAGE**

WRIT APPLICATION FILING SHEET…………………………………………… iv

TABLE OF AUTHORITIES…………………………………………………… v

STATEMENT OF CONSIDERATION……………………………………… vi

STATEMENT OF THE CASE………………………………………………… 1

    1) Background Facts…………………………………………………… 1

    2) Procedural History………………………………………………… 9

ASSIGNMENT OF ERROR………………………………………………… 13

SUMMARY OF ARGUMENT…………………………………………………… 13

ARGUMENT…………………………………………………………………… 14

    1)  The District Court Erred in Finding
    Insufficient Evidence to Support Violations
    of the Due Process Clause and the Compulsory
    Process Clause Underpinning all Four of
    Petitioner's Claims for Post Conviction Relief………………………… 14

    2)  The District Court Erred in Failing to
    Compel Production of the Transcript
    of the Testimony of Dr. Garriga……………………………………… 22

CONCLUSION………………………………………………………………… 24

JUDGMENT (La. App. 1 Cir. dated 5/25/2017)

JUDGMENT (La. App. 1 Cir. dated 7/24/2017)

APPENDIX

    Writ Application to 1st Circuit Court of Appeals………………………… 1
    Orders and Reasons of the District Court…………………………………… 37
    Petition for Post Conviction Relief………………………………………… 45
    Supplemental Petition for Post Conviction Relief………………………… 66
    State's Response (10/27/2016)……………………………………………… 87
    State's 10/27/2016 Response Appendix Index……………………………… 105
    State's Supplemental Response (10/31/2016)……………………………… 107
    Petitioner's Reply…………………………………………………………… 109
    Petitioner's Motion to Compel……………………………………………… 120
    Petitioner's Motion for Sanctions………………………………………… 123
    State's Response of November 30, 2016…………………………………… 132
    Petitioner's Reply to Response of November 30 2016…………………… 137
    State's Request for Summary Disposition………………………………… 149
    State Opposition, *State v. Thibodaux*,
    La. S. Ct., No. 2015 KK 491 (w/ Exhibits)……………………………… 15

## SUPREME COURT OF LOUISIANA
## WRIT APPLICATION FILING SHEET

NO._____

## TO BE COMPLETED BY COUNSEL or PRO SE LITIGANT FILING APPLICATION

**TITLE**

State of Louisiana
_____
VS.

Darnay Thibodaux
_____

Applicant: _Darnay Thibodaux_
Have there been any other filings in this
Court in this matter? ☑ Yes   ☐ No

Are you seeking a Stay Order?_No_
Priority Treatment?_No_
**If so you MUST complete & attach a Priority Form**

### LEAD COUNSEL/PRO SE LITIGANT INFORMATION

APPLICANT:

Name: _Claiborne W. Brown_

Address: _1070 West Causeway Approach_

_Mandeville, LA 70471_

PhoneNo._(985) 845-2824_   Bar Roll No._25594_

RESPONDENT:

Name: _Asst. DA Matthew Caplan_

Address: _701 N. Columbia Street_

_Covington, LA 70433_

PhoneNo._(985) 809-8383_   Bar Roll No._31650_

Pleading being filed: ☐ In proper person,   ☐ In Forma Pauperis
**Attach a list of additional counsel/pro se litigants, their addresses, phone numbers and the parties they represent.**

### TYPE OF PLEADING

☑ Civil, ☑ Criminal, ☐ R.S. 46:1844 protection, ☐ Bar, ☑ Civil Juvenile, ☑ Criminal Juvenile, ☐ Other

☐ CINC,   ☐ Termination,   ☐ Surrender,   ☐ Adoption,   ☐ Child Custody

### ADMINISTRATIVE OR MUNICIPAL COURT INFORMATION

Tribunal/Court:_____   Docket No._____

Judge/Commissioner/Hearing Officer:_____   Ruling Date:_____

### DISTRICT COURT INFORMATION

Parish and Judicial District Court: _St. Tammany Parish, 22nd J.D.C._   Docket Number: _538643-1_

Judge and Section:_Hon. Richard A. Swartz, Division "C"_   Date of Ruling/Judgment:_Feb 23, 2017_

### APPELLATE COURT INFORMATION

Circuit:_First_   Docket No._2017 KW 0736_   Action:_Denial of Writ of Supervisory Review_

Applicant in Appellate Court:_Darnay Thibodaux_   Filing Date:_May 26, 2017_

Ruling Date:_Jul 24, 2017_   Panel of Judges:_Terrio, Chutz, Penzato_   En Banc:☐

### REHEARING INFORMATION

Applicant:_____   Date Filed:_____   Action on Rehearing:_____

Ruling Date:_____   Panel of Judges:_____   En Banc:☐

### PRESENT STATUS

☐ Pre-Trial, Hearing/Trial Scheduled date:_____, ☐ Trial in Progress, ☑ Post Trial

Is there a stay now in effect?_No_   Has this pleading been filed simultaneously in any other court?_No_

If so, explain briefly_____
_____.

### VERIFICATION

**I certify that the above information and all of the information contained in this application is true and correct to the best of my knowledge and that all relevant pleadings and rulings, as required by Supreme Court Rule X, are attached to this filing. I further certify that a copy of this application has been mailed or delivered to the appropriate court of appeal (if required), to the respondent judge in the case of a remedial writ, and to all other counsel and unrepresented parties.**

August 22, 2017
_____
DATE

_____
SIGNATURE

O:\lasc\rules\filings0.wpd

Revised 12-9-98

## TABLE OF AUTHORITIES

**CASES**                                                                          **PAGE**

*Draper v. Washington,*
372 U.S. 487, 495 (1963)……………………………………………………………    23

*Geter v. Fortenberry,*
849 F.2d 1550 (5th Cir. 1988)………………………………………………………    16

*Griffin v. Illinois,*
351 U.S. 12 (1956)…………………………………………………………………… 23

*In re Succession of Pardue,*
40,177 (La. App. 2 Cir. 11/8/05), 915 So. 2d 415…………………………………… 18

*Succession of Werner v. Zarate,*
2007-0829 (La. App. 1 Cir. 12/21/07), 979 So. 2d 506………………………………… 18

*United States v. Charles,*
313 F.3d 1278 (11th Cir. 2002)………………………………………………………    23

*United States v. Mason,*
293 F.3d 826 (5th Cir. 2002)…………………………………………………………   15, 16

*United States v. Selva,*
559 F.2d 1303 (5th Cir. 1977)……………………………………………………… 23

*Washington v. Texas,*
388 U.S. 14, 87 S. Ct. 1920 (1967)…………………………………………………    20

**STATUTES**

La. R.S. 14:93.4……………………………………………………………………  1, 12, 22

La. C. Cr. P. art. 926……………………………………………………………………   24

## STATEMENT OF CONSIDERATIONS

Pursuant to Rule X, Section 4; the following considerations as outlined in Section 1(a) are present in this case.

**(1)     Erroneous Interpretation or Application of Constitution or Laws:**

On May 15, 2015, this Court denied a writ application in this case in which petitioner asserted that her guilty plea was defective due to a violation of the Compulsory Process Clause whereby the purported "victim" in the case, who had made two sworn exculpatory statements, was prevented, under highly suspicious circumstances, from making further such statements and testifying in favor of petitioner therein.  The denial of relief by the District Court, the Court of Appeals and ultimately this Court, was based, in no small part, on the UNEQUIVOCAL representations of the State of Louisiana that the purported "victim" in this case lacked BOTH transactional and testimonial competence at all relevant times.

Since those rulings previously considered, petitioner has filed the instant petition for post conviction relief, during which the State of Louisiana has averred that the purported victim had AT LEAST PARTIAL testimonial and transactional competence, at all relevant times* ("all relevant times" is explained *infra*), and that its position in this regard has ALWAYS been as such.  The State's assertion in this case, and its acceptance by the District Court and the Court of Appeals lead to two inescapable conclusions:

1)     The conditions upon which the petitioner's guilty plea was obtained were based necessarily upon a material fraud upon the petitioner, her counsel, and the District Court, upon which the District Court, and the Court of Appeals, and this very Court had previously relied.

2)     The District Court (and by extension the Court of Appeals) has accepted the concept of partial testimonial and transactional competence, without any further proof regarding the manifestation of such partial competence, which has, in this case been used to:   a) arbitrarily prevent use and further procurement of exculpatory testimony and evidence (conclusory assumption that the "victim" was incompetent at times when such testimony was made); b) arbitrarily validate

vi

hearsay inculpatory statements and evidence (conclusory assumption that "victim" was competent at time "statements" were made); c) arbitrarily decimate petitioner's right of cross examination of said hearsay evidence (conclusory assumption that "victim" was incompetent at times when opportunity to confront inculpatory hearsay statements was sought); and d) create material prejudice by the further arbitrary injection of partial transactional and testimonial competence of the purported "victim" in petitioner's trial, by virtue of the State's forensic psychiatric expert testimony (leaving petitioner with the impossible task of overcoming said prejudice), directly leading to petitioner's coerced guilty plea.

Petitioner respectfully avers that the adverse effect of the District Court's ruling and the acceptance of same by the Court of Appeals thereof as pertains to the potential creation of material injustice, its significant adverse effect on the public interest, and the assault upon the very concept of the rule of law as applied to the Louisiana criminal justice system; are *ipse dixit* and cannot be overstated.

## STATEMENT OF THE CASE

### 1) Background Facts:

The facts and circumstances of this case have been thoroughly briefed to this Court in a previous writ application in this matter entitled, *State v. Thibodaux*, No. 22nd J.D.C. No. 534840-1, 1st C.C. A. No. 2015-KW-0280, La. S. Ct. No. 2015 KK 491, which application was denied on May 15, 2015, the assertions made therein are incorporated as if copied herein *in extenso*. The State of Louisiana, via the Louisiana Attorney General's Office ("LaAG"), maintained a criminal prosecution against Petitioner and her husband, *State v. Thibodaux*, No. 534840-1, 22nd J.D.C., Div. "C" for two counts of violations of La. R.S. 14:93.4, Exploitation of the Infirmed, purportedly by petitioner of an elderly gentleman named Sidney Dobronich.

The prosecution which is the subject of this petition for post conviction relief was predicated upon several transactions executed by Petitioner on Mr. Dobronich's behalf, pursuant to a power of attorney executed in favor of Petitioner, which occurred from February through mid-March of 2013, Petitioner, and which totaled over 30 transactions, including purchases, cash withdrawals and transfers, totaling over $334,000. Petitioner herein asserts that all of these transactions were specifically authorized by Sidney Dobronich.

This criminal prosecution was conducted concurrently with several civil proceedings prosecuted by two of Mr. Dobronich's nephews, George and Forest Dobronich ("the Nephews"), whereby the Nephews were attempting to obtain control and ultimate ownership of Sidney Dobronich's finances.

During the pendency of the criminal investigation and the civil revocation action, and despite being under intense coercion and almost exclusive physical control of the Nephews, Sidney Dobronich had the opportunity to provide sworn testimony in two instances in which he attempted to state that all transactions performed by the Petitioner were specifically authorized and he did not want to prosecute the Petitioner or her husband. On March 27, 2013, Mr. Sidney Dobronich made the following statement, duly sworn by a notary in good standing in the State of Louisiana:

Before me, Rebecca D. Crawford, Notary Public, personally appeared:

1

Sidney Dobronich

who being first duly sworn, states that

1) He does not want to press charges against Calvin and/or Darnay Thibodaux for acting on his behalf with a Power of Attorney he executed in the presents [sic] of a Notary Public and two witnesses;

2) Anything purchased was with his consent and were authorized with his full knowledge;

3) Items such as, Kubota Tractor, a 4-wheeler, 2001 Chevy PK, a 2013 Nissan Altima and property(s) [sic] were purchased with my knowledge; the money came from my account;

On June 25, 2013, Mr Dobronich testified in open court in the matter of *Forest Dobronich and George Dobronich v. Darnay Thibodaux and Calvin Thibodaux*, No. 2013-11784, 22nd J.D.C., Div. "D", (hereinafter, "the Civil Revocation Action"), as follows.

> Q.      Now, I want to show you an affidavit, sir, and this is an affidavit that I'm going to mark as Defense Exhibit Number 4. Take your time and look at it, and it's dated March 27, 2013, affidavit, okay. When you finish reading just acknowledge your head, okay, please. Are you finished reading it?
> A.      Uhm-hum (Affirmative response).
> Q.      Would you look at the bottom of it. Do you remember I pointed out Mrs. Crawford. Do you know Rebecca Crawford?
> A.      Yeah.
> Q.      Is that her name on the bottom of it?
> A.      It is.
> Q.      And is that your signature on the bottom of it?
> A.      Yeah.
> Q.      And without going into it, it says - - and we're going to go into it - - that you gave her the power of attorney to buy a Kubota tractor, a four-wheeler, a 2001 Chevy pickup, a Nissan, other property with your full knowledge and with your account and with your consent with your money from your account. Does it say that? And you do not wish to pursue these people for criminal charges. It says what it says; does it not, sir? Yes?
> A.      Yeah.
> Q.      And whose signature is on the bottom of that affidavit? Is that your signature on the bottom?
> A.      Yeah.

Again, on June 25, 2013; Mr. Dobronich specifically testified in the Civil Revocation Action, under direct questioning by the Court, as follows:

> BY THE COURT:
>          Wait. I have a question, Mr. Burns.
> BY MR. BURNS:
>          Yes, sir, surely.
> BY THE COURT:

2

> Why did you do this?  Did somebody ask you to do this?
> BY THE WITNESS:
> I don't know.
> BY THE COURT:
> You don't know why you did this?  You don't remember who asked you to do it?
> BY THE WITNESS:
> (Negative Response).
> BY THE COURT:
> Was it your idea? You came up with this by yourself?
> BY THE WITNESS:
> (Affirmative Response)
> BY THE COURT:
> You called up Ms. Crawford and said I want to do an affidavit?
> BY THE WITNESS:
> Yeah.
> BY THE COURT:
> You called her up?  Ms. Crawford is right there.  You called her up and said I want to do an affidavit and say that everything I did I don't want to prosecute them for and I want to give this to them?  You called them up and said that?  It was your idea?
> BY THE WITNESS:
> (Affirmative response).

It should be noted that Sidney Dobronich made the above independent exculpatory statements on June 25, 2013 after being in the exclusive custody and control of his Nephews, George and Forest Dobronich (hereinafter, "the Nephews"), while he stayed at the home of Forest Dobronich, in which Mr. Dobronich was under what was described as 24/7 supervision.

In line with these instances of exculpatory testimony of Mr. Dobronich, prior to August of 2013, petitioner, through her counsel at the time, made repeated attempts within the Civil Revocation Action proceedings to obtain Mr. Dobronich's testimony in a deposition.  These efforts were consistently thwarted by the Nephews.  These efforts included the filing of a rule to compel Mr. Dobronich's deposition testimony, filed on June 13, 2013, in which counsel for petitioner asserted, as follows:

> Incidental to the above captioned suit #2 the plaintiffs [Nephews] have filed multiple pleadings all of which are intended to keep Mr. Sidney Dobronich from testifying truthfully about the facts that would exonerate the defendants from any claim of wrongdoing.

On July 9, 2013, the Nephews, in their capacity as agents-in-fact of Sidney Dobronich, submitted a medical report of Dr. Paul Verrette to the Court in the Civil Revocation Action, which declared that Mr. Dobronich suffered from "dementia" and that "and that "[h]is dementia

3

is such that he is not able to direct his affairs concerning person or property in matters consistent with his own interest."

This report notwithstanding, counsel for Defendant continued to persist with obtaining a deposition of Sidney Dobronich.  On July 17, 2013, counsel in the Civil Revocation Action held a status conference with the Court, which counsel for Nephews summarized as follows:

> This is to confirm my conversation with you during the Status Conference with Judge Garcia wherein I informed you and the judge that we oppose the setting of Sidney Dobronich's deposition based on his incompetency and dementia.  As a result of that information, Judge Garcia has set this matter on the docket for August 27, 2013.

The "setting of Sidney Dobronich's deposition", as a contested matter, was set for hearing on August 27, 2013.

On August 13, 2013, the Nephews send another report of Dr. Verrette, dated July 25, 2013, not only stating that Sidney Dobronich was not competent to handle his affairs, but also "that [Sidney Dobronich] is not mentally stable enough to be able to provide any competent testimony in a court of law, including a deposition."  On August 27, 2013, the Court in the Civil Revocation Action issued a judgment declaring Sidney Dobronich incompetent to testify at trial or deposition.

Petitioner acknowledges filing a motion, through her counsel at the time, with the District Court in the Criminal Proceedings seeking to exclude the testimony of Sidney Dobronich, and entering into a stipulation with the State of Louisiana to that effect on December 12, 2013.  Petitioner submits that said motion and stipulation were predicated upon the August 27, 2013 judgment declaring Sidney Dobronich incompetent to testify.  *Id.*  Petitioner also was unaware that Sidney Dobronich purportedly executed a handwritten will on July 18, 2013 (naming the Nephews as beneficiaries), nor could she have been aware of the Nephew's attempt to probate same on August 6, 2014.

During the hearing of December 12, 2013 concerning the petitioner's Motion to Exclude Testimony, the following statements were made in open court:

> THE COURT:
>     Now we have the motion to exclude testimony from Sidney Dobronich.  I think we've had a discussion about that in chambers.

4

> And there was an agreement that there would be no testimony from
> Sidney Dobronich, as Mr. Dobronich **has been declared
> incompetent.**
> Is that correct?
> MR. BLAKE:
> **That is correct**, your Honor.
> MR. BURNS:
> That is correct, if that's a stipulation that he is not going to
> testify in the court proceedings.
> THE COURT:
> I believe that's what Mr. Blake has indicated.
>
> *       *       *
>
> THE COURT:
> No. That motion is denied.
> Now, Mr. Dobronich cannot assist the State in the
> presentation of their case **because he is incompetent,** so he will
> not be sitting at the counsel table. But he is allowed to come into
> the courtroom.

Petitioner was precluded from obtaining any potentially exculpatory testimony from

Sidney Dobronich through his death on March 25, 2014.

Notwithstanding the death of Sidney Dobronich in March of 2014, in August of 2014; the

LaAG, which was handling the prosecution in the criminal case, procured expert testimony from

Dr. Michelle Garriga regarding a forensic psychiatric analysis of Mr. Sidney Dobronich. The

explicitly stated purpose of the evaluation was "to address [Sidney Dobronich's] mental status

and capacity to make decisions regarding his financial affairs in February and March of 2013."

This expert testimony relied heavily upon the Verrette Reports and the written statements of the

Nephews, as well as the investigation report of Det. Montgomery. Conspicuously, Dr. Garriga's

evaluation was "by Records Review Only", despite the availability of the Nephews and Det.

Montgomery for live interviews. Based on the acknowledged limited evidentiary review, Dr.

Garriga concluded that Mr. Dobronich suffered from Major Neurocognitive Disorder (Dementia)

and lacked the capacity to consent to any of the transactions conducted within the last two years

of his life, including between February and March of 2013 for which petitioner was being

prosecuted:

> Mr. Dobronich demonstrated confusion and memory loss, and
> problems with concentration, executive function, and social
> cognition during his court testimony on June 25, 2013. Dr.
> Verrette found disorientation and memory loss in his evaluation on
> July 2, 2013 leading to his diagnosis of dementia. Based upon his
> evaluation, Dr. Verrette further opined that Mr. Dobronich was

5

> "not able to direct his affairs concerning person or property in matters consistent with his own interest."

> It is my opinion that he lacked the same capacity in the months prior, i.e. during the time in question, February and March of 2014. Dementia (except that caused by a sentinel event such as a massive stroke) has a slow, step-wise progression. It does not spontaneously appear to the degree evident in Mr. Dobronich in June and July without it having also been present in the previous months.

Clearly, without this expert testimony, in light of the absence of Mr. Dobronich and the two instances of sworn testimony indicating that the transactions were authorized; the State of Louisiana would not have had legal sufficiency to bring the criminal prosecution against Petitioner or her husband. More importantly, without Mr. Dobronich's availability; Petitioner was effectively required to rebut the State's evidence of the over 30 transactions of $334,000, conducted in less than one month's time with nothing but her own admittedly self serving testimony.

At around the same time that the State was procuring expert testimony regarding Mr. Dobronich's competence to authorize the transactions at issue, in August 2014, the nephews opened a succession of their uncle: *Succession of Dobronich*, No. 2014-30680, 22nd J.D.C., Div "I" ("the Succession Proceeding"). In this Succession Proceeding, the Nephews probated a hand written testament of Mr. Dobronich purporting to leave all of his property to his Nephews, and other nieces and nephews of Mr. Dobronich. The hand written will was dated July 18, 2013, within two weeks of the date of the Verrette Reports declaring the diagnosis of dementia and the mental incapacity of Mr. Dobronich.

On December 9, 2014, petitioner filed a Motion to Exclude the Testimony of Dr. Garriga, based on a violation of Louisiana Rules of Evidence Rule 702 (*Daubert*), in which the Petitioner specifically contested the reliability of Dr. Garriga's testimony as to the mental competency of Mr. Dobronich. On December 16, 2014, a hearing on the Defense Motion to Exclude Expert Testimony was held, wherein Dr. Garriga specifically explained that Major Neurocognitive Disorder was of such a nature that Mr. Dobronich was completely mentally incompetent and did not and could not have any instances of mental capacity to conduct any transactions during the existence of the disorder. In her testimony of December 16, 2014, Dr. Garriga explained the

6

basis for her determination that Sidney Dobronich's dementia had progressed to such an extent at the time Dr. Verrette examined him on July 2, 2013, that the dementia would have had to have been present and February and March of 2013.  Furthermore, Dr. Garriga explicitly testified further the Sidney Dobronich could not have had any lucid moments in the timeframe of February and March of 2013, and hence could not have had any such lucid moments in July of 2013 as well.  The LaAG did not in any way attempt to qualify or correct this testimony; and the Court subsequently denied the Petitioner's Motion at that time.

As a result of the potential testimony of Dr. Garriga, and being functionally deprived of Mr. Dobronich's exculpatory testimony, in December 17, 2014, Petitioner and her husband changed their pleas to guilty as charged.  The prosecution, while agreeing to a sentence of probation for Petitioner's husband Calvin Thibodaux, insisted on a pre-sentence investigation as to Petitioner.  The Court set the sentencing hearing for January 29, 2015.

On January 9, 2015, Defendant herein filed a Motion to withdraw her guilty plea and to dismiss the indictment on the grounds that the Nephews, in coordination with the State of Louisiana, deprived her of Mr. Dobronich's favorable testimony in violation of the Compulsory Process Clause of the 6th Amendment and the Due Process Clause of the 5th and 14th Amendments to the United States Constitution.  In opposition Petitioner's motion to withdraw her plea, the LaAG, in brief to the District Court, again relied on the opinion of Dr. Garriga in asserting that no Compulsory Process Clause violation occurred because the Compulsory Process Clause only applied to competent witnesses.   In making this argument, the State made this unequivocal statement:

> Mr. Sidney Dobronich had no knowledge of this transaction, had no knowledge that a check drawn on his account was used, **nor was he capable of consenting to this transaction because he was suffering from dementia** all of which is why he was not a party to the transaction.

**Appx. at 161-62.**

On January 29, 2015, the State of Louisiana, in arguing against the petitioner's motion to Withdraw Plea/Dismiss, made the following statement in open court:

> . . .  There's no state involving here, whatsoever, with Mr. Dobronich's inability to testify.  Judge, he died.  The doctors

> **declared him incompetent to testify**.  He was **declared incompetent to testify**, even in the civil suit.  Judge, the State had no point in him being **declared incompetent**.  Judge Garcia saw him, questioned him, and determined, while he was testifying on June 25, 2013, that he **was incompetent to testify**, Judge.  Plain and simple.  The Judge subsequently issued an order **declaring that he was incompetent to testify**.
>
> Last year, December 12, 2013, there was a hearing based on a motion filed by Mr. Roy Burns that sought to exclude Mr. Dobronich's testimony because he was **declared incompetent**, Judge. So that was resolved that day.  Y'all [petitioner] agreed that he was **incompetent to testify**.

**Appx. at 194-95.**

The Court subsequently denied the petitioner's Motion to Withdraw Plea/Dismiss, making the following statement:

> The Court is familiar with this case having began [sic] a trial in this matter, **listened to the testimony of Dr. Garriga**.  The Court does believe that any testimony that would have been favorable to the Thibodauxes is **all speculative at this point**; and, further, **he would not have been allowed to testify**.

**Appx. at 196.**

Sentencing followed, wherein the Court sentenced petitioner to 10 years in prison with 5 years suspended, and 5 years probation.

Petitioner filed her Application for Writ of Supervisory Review to the Louisiana First Circuit Court of Appeals on February 17, 2015, *State v. Thibodaux*, 22nd J.D.C. No. 534840-1, 1st Cir. C.A. No. 2015-KW-0280, which application was denied on February 19, 2015.  Petitioner filed her Application for Writ of Supervisory Review to the Louisiana Supreme Court on March 9, 2015, which application was denied on May 15, 2015.  In opposition Petitioner's motion to withdraw her plea, the LaAG, in brief to the Louisiana Supreme Court, again relied on the opinion of Dr. Garriga in asserting that no Compulsory Process Clause violation occurred because the Compulsory Process Clause only applied to competent witnesses, citing its brief to the District Court in which it expressly asserted as to Sidney Dobronich, "nor was he capable of consenting to this transaction because he was suffering from dementia." **Appx. at 161-62.**

Subsequent to the District Court's rulings and sentence on January 29, 2015, on February 24, 2015, the Court in the Successions proceeding held a hearing on the petition to annul

8

testament filed by Petitioner herein.  Within that hearing, the proponents of the July 18, 2013 testament offered the sworn testimony of the Nephews, as well as Detective Stefan Montgomery of the St. Tammany Parish Sheriff's Office, that, at all times from February 2013 through his death in March of 2014, Sidney Dobronich was fully mentally competent.  **Appx. at 95-96.** Additionally, upon attempting to introduce the Verrette Report, the critical evidence supporting the State's expert testimony against Petitioner, the Nephew's through their counsel, objected to the introduction of the report on the grounds that the Verrette Reports constituted unreliable hearsay.  **Appx. at 96.**  Additionally, Forest Dobronich testified that he was certainly aware of the report and its conclusions, and stated that he "disagreed" with the conclusions.  *Id.*

The hearsay objections and "disagree[ment]" with the Verrette Report notwithstanding, Forest Dobronich admitted that the Verrette Report was submitted to the Court in the Civil Revocation Action, though he could not remember if the Verrette Report had been shown to Sidney Dobronich.  On that point, the Nephews did testify that Sidney Dobronich lived with Forest Dobronich from April 2, 2013 until his death in March of 2014, and was under what was described as "24/7 supervision" during that time, including personal supervision of Forest Dobronich on the date that Sidney Dobronich purportedly executed his July 18, 2013 handwritten will.

Pursuant to that testimony, the Court in the Successions Proceedings accepted the testimony offered by the Nephews, sustained the hearsay objection as to the Verrette report, and issued a Judgment upholding Sidney Dobronich's execution of the July 18, 2013 hand written will.

**2) Procedural History:**

On July 28, 2016, petitioner filed her claims for post conviction relief.  **Appx. at 45-65.** In those claims, petitioner largely re-asserted the facts previously raised in her prior Motion to Withdraw her Guilty Plea and to Dismiss the Indictment against her as well as her unsuccessful writ applications.  *Id.*  The Post Conviction Relief petition was predicated largely on the new evidence, not originally before the District Court in her previous Motion to Withdraw Plea/Dismiss, containing sworn testimony of George and Forest Dobronich, Det. Montgomery

9

and Courtney Dobronich unequivocally asserting the mental competence of Mr. Sidney Dobronich, as well as the District Court's ruling in the case of Successions Proceedings, that Mr. Dobronich was mentally competent on July 18, 2013 (4 months after the transactions that are the subject of the criminal proceedings were conducted).  *Id.*  In particular, petitioner's claims consisted of the following:  1) a violation of the Due Process Clause for the knowing submission of the expert testimony of Dr. Garriga, which the State knew was false; 2) a reassertion of the compulsory process clause/due process clause violation based on the State's involvement in preventing Mr. Dobronich's favorable testimony.  *Id.*

On September 7, 2016, petitioner supplemented her initial petition with an additional claim, claiming a violation of the due process clause resulting from Det. Montgomery's failure to record the second interview of March 21, 2013, in which petitioner asserts that Sidney Dobronich told Det. Montgomery that all of the transactions of February and March of 2013 were authorized.  **Appx. at 66-86.**

On October 27, 2016, the State of Louisiana submitted its response to petitioner's claims. **Appx. at 87-104.**  The State obtained and introduced various filings and the verbatim transcripts for the civil proceedings, including the February 24, 2015 hearing in the matter of Successions Proceedings as well as the May 20 hearing in the matter of *Dobronich, et al. v. Thibodaux, et al.*, No. 2013-11784, 22nd J.D.C., Div. "D", (hereinafter, "the Civil Revocation Action").  The state also introduced the entire investigation report of Det. Montgomery, with exhibits, as well as the various filings in the criminal proceedings.  **Appx. 105-06.**  Finally, the State of Louisiana introduced the transcripts for the petitioner's guilty plea in the criminal proceedings on December 17, 2014; the transcript of the motions and sentencing hearing on January 29, 2015. *Id.*

Conspicuously, the State of Louisiana did not introduce any transcript of the December 16, 2014 testimony of Dr. Garriga at the hearing on petitioner's motion to exclude her testimony. *Id.*

In its response, the State of Louisiana generally asserted that the evidence was insufficient to establish any of the claims asserted by petitioner in her Petition for Post

Conviction Relief.  **Appx. 92.**  However, in so asserting, the State of Louisiana specifically acknowledged the testimony of Forest Dobronich, quoting that "from the time he moved in [April 2, 2013] until the time he died [March 24, 2014]", that Sidney Dobronich was "in good shape mentally" and that "really he was competent".  **Appx. at 95-96.**  In referring to the Verrette Report which was the primary basis for Dr. Garriga's opinion, the State of Louisiana again quoted Forest Dobronich's February 24, 2015 testimony that he disagreed with the diagnosis of "incompetency and dementia."  **Appx. at 96.**  The State of Louisiana also referenced the testimony of Det. Montgomery's February 24, 2015 testimony that Sidney Dobronich appeared "lucid" each of the three times he interviewed him at the hospital, ***id.***, as well as the March 24, 2015 testimony of George Dobronich in which he "testified that he visited Sidney Dobronich seven or eight times after his March 2013 hospitalization, and that each time he visited, Sidney Dobronich appeared to be lucid", **Appx. at 97**.

The State of Louisiana's explanation for these discrepancies was not to contest the above testimony, nor did the State contest the specific instances in which these witnesses testified that he was mentally competent, leading to a finding by the Court that Sidney Dobronich was mentally competent to execute an olographic testament on July 18, 2013.  The State of Louisiana explained its position as follows:

> Initially, the State never contended that Sidney Dobronich ws completely mentally incompetent on a 24/7 basis.  Instead, the State contended (and still believes) that Mr. Dobronich was at times alert and oriented but could become disoriented quickly when in a foreign environment and/or exposed to psychological pressure.

**Appx. at 95**

In a supplemental response, dated October 31, 2016, the State of Louisiana elaborated:

> The prosecution believes that one may both (i) suffer from dementia and (ii) from time to time experience moments of lucidity.  For that reason, the opinion of Dr. Garriga is not inconsistent with the observations of Detective Montgomery.  In any event, to the extent that the opinion of Dr. Garriga conflicts with the observations of Detective Montgomery, the prosecution was prepared to present such conflicts to the jury for the jury's consideration.

**Appx. at 108.**

11

On November 15, 2016, in light of the positions taken by the State of Louisiana regarding not only Dr. Garriga's testimony; but its own position regarding the mental competence of Sidney Dobronich; petitioner filed a motion to compel production of the transcript of the December 16, 2014 testimony of Dr. Garriga wherein she explicitly testified that, in her opinion, Sidney Dobronich could not have any lucid moments or moments of mental competency.  **Appx. 120-21.**  This motion was also accompanied by attempts by undersigned counsel, by telephone and e-mail, to procure said transcript.

In addition to the evidence submitted by the petitioner and the State of Louisiana, petitioner, on January 23, 2017; petitioner requested subpoenas be issued for several witnesses, including Det. Montgomery, for live testimony to be given at a hearing tentatively set for March 8, 2017.  In response, the State of Louisiana filed a request for summary adjudication of the petitioner's claims on February 14, 2017.  **Appx. at 149.**

On February 23, 2013, the District Court granted the request of the State of Louisiana and summarily denied petitioner's claims for post conviction relief.   **Appx. at 37-44.**  Specifically, as to Claim I (knowing submission of false testimony of Dr. Garriga), the District Court accepted the State's assertion that its position was that Mr. Sidney Dobronich was both mentally incompetent but had "lucid intervals"; and that petitioner had failed to produce sufficient evidence to disprove that position.  **Appx. at 39-40.**  As to Claim II (Compulsory Process Clause Violation), the District Court noted that petitioner's initial Motion to Exclude Mr. Dobronich's testimony, filed in November of 2013 and joined by the State of Louisiana in December of 2013, conspicuously omitting that not only the petitioner, but also the District Court, relied upon the State's contention that Mr. Dobronich was incompetent to testify.  **Appx. at 40.**  As to Claim III (Spoliation of additional favorable testimony by Det. Montgomery), the District Court again simply found that petitioner failed to produce sufficient proof to support the claim.  **_Id._**  Finally, as to Claim IV, the District Court found that the assertion as to the constitutionality of La. R.S. 14:93.4 as applied had been waived by petitioner's guilty plea of December 17, 2014.  **Appx. at 40-41.**

As to the Motion to Compel, the District Court did not explicitly make a ruling on same; though given the rulings of the District Court on all other claims; the Motion, presumably, was denied.

On May 26, 2017, petitioner filed an application for supervisory writs to the Louisiana First Circuit Court of Appeals, raising the following issues:  (1) that the District Court erred in finding insufficient evidence to support violations of the Due Process Clause and the Compulsory Process Clause underpinning all four of petitioner's claims for post conviction relief; and (2) that the District Court erred in failing to compel production of the transcript of the testimony of Dr. Garriga.  On July 24, 2017, the Louisiana First Circuit Court of Appeals denied writs, without comment.

Based on the below issues and arguments, the rulings of the District Court as to petitioner's Claims I, II, and III, as well as the Motion to Compel, are erroneous.  Further, the Louisiana First Circuit Court of Appeals erred in denying writs.  As such, the ruling of the District Court and should be reversed by this Court.

## ASSIGNMENT OF ERROR

**(1) The District Court Erred in Finding Insufficient Evidence to Support Violations of the Due Process Clause and the Compulsory Process Clause Underpinning all Four of Petitioner's Claims for Post Conviction Relief.**

**(2) The District Court Erred in Failing to Compel Production of the Transcript of the Testimony of Dr. Garriga.**

## SUMMARY OF ARGUMENT

**Specification No. 1:**  The assertion of the State in its October 27, 2016 response to petitioner's claims constitutes an admission that Sidney Dobronich had both transactional mental competent to authorize all transactions petitioner made on his behalf in February and March of 2013 and that he had testimonial mental competence to testify to that authorization thereafter. Under the uncontested evidence presented to the District Court, the admission is materially inconsistent with the State's prior position that Sidney Dobronich lacked mental competence both to testify and to conduct transactions, rendering erroneous the District Court's denial of all claims for post conviction relief.

13

Specification No. 2:  Petitioner is unquestionably entitled to production of the transcript of Dr. Garriga's December 16, 2014 testimony in which she directly contradicted the State's revision of its assertions as to Sidney Dobronich's transactional and testimonial mental capacity. To the extent that this Court is not convinced that petitioner is entitled to relief as per Specification No. 1, by not compelling production of the transcript, the District Court has potentially deprived petitioner of the ability to directly challenge the State's contention. Thus, the District Court erroneously deprived petitioner of a meaningful opportunity to appeal the decision of the District Court regarding the State's materially inconsistent position and potentially the correctness of the District Court's ruling.

## ARGUMENT

**(1)  The District Court Erred in Finding Insufficient Evidence to Support Violations of the Due Process Clause and the Compulsory Process Clause Underpinning all Four of Petitioner's Claims for Post Conviction Relief.**

Petitioner herein generally asserts that assignment of error as to all claims for post conviction relief denied by the District Court herein.  All four claims for post conviction relief are predicated on the fundamental fact that the State's prosecution against the petitioner, as well as its opposition to her previous writ application to this Court, was EXPLICITLY based on the assertion that Sidney Dobronich, the purported victim in this case, was BOTH mentally incompetent to authorize any of the transactions executed on his behalf by the petitioner in February and March of 2013 AND mentally incompetent to testify on her behalf as to that authorization.  The primary basis of that position was espoused by the expert opinion of Dr. Michelle Garriga, who opined as such, based largely on a report of Dr. Paul Verrette, who concluded based on a purported medical examination conducted on July 2, 2013 that Sidney Dobronich "[was] not able to direct his affairs concerning person or property in matters consistent with his own interest."  This report of Dr. Verrette was submitted to a division of the 22nd Judicial District Court on behalf of Mr. Dobronich's Nephews, George and Forest Dobronich, in a related civil action against petitioner.  The expert testimony of Dr. Garriga was the SOLE basis for the prosecution of petitioner after Mr. Dobronich, resulting in the

commencement of a trial on December 16, 2014 and to her succumbing to the pressures of said trial and pleading guilty on December 17, 2014.

Less than two months after her guilty plea and one month after sentencing, the very same Nephews who unequivocally represented to Division "D" of the 22nd Judicial District Court that Sidney Dobronich was mentally incompetent in July and August of 2013 (upon which representations the Court relied); unequivocally and repeatedly represented, through sworn testimony, that he was mentally competent on July 18, 2013 (when Sidney Dobronich purportedly executed a hand written will naming these Nephews as heirs to his entire estate). This sworn testimony was not available for consideration by this Court or by the Louisiana Supreme Court in the prior writ application.  The State of Louisiana asserted the evidence of Sidney Dobronich's mental incompetence as the primary basis for opposition.  The District Court relied on the State's assertions in its January 29, 2015 holding that was the subject of that writ application; and this Court, as well as the Louisiana Supreme Court, so relied in their respective denials of writs.

In response to the claims for post conviction relief herein, the State of Louisiana now states that its position was (and was consistently so throughout the proceedings) that Sidney Dobronich was not "completely incompetent" but was "at times alert and oriented".  The District Court, without challenge, accepted this position and denied post conviction relief.  As more fully set forth below, this assertion by the State of Louisiana, as well as its acceptance by the District Court is a dangerously oxymoronic and, with all deliberate understatement, threatens to render meaningless any semblance of the rule of law.  As such, it should be conspicuously rejected by this Court.

(a)    **Claim I:  Submission of False Testimony of Dr. Michelle Garriga.**

First and foremost, the jurisprudence has unanimously and uniformly recognized that "the Due Process Clause of the Fourteenth Amendment forbids the government from knowingly using false testimony against a criminal defendant, or failing to correct said false testimony.  *U.S. v. Mason*, 293 F.3d 826, 828 (5th Cir. 2002) (citing *Giglio v. United States*, 405 U.S. 150, 153 (1972)).  To prove a due process violation, the plaintiff (criminal defendant) must establish that

15

(1) the testimony was false; (2) the government knew the testimony was false; and (3) the testimony was material.  *Id.*  Additionally, the Fifth Circuit has also recognized that a Due Process violation where the government official deliberately conceals exculpatory evidence.  *See Geter v. Fortenberry*, 849 F.2d 1550, 1559 (5th Cir. 1988).  Additionally, the court in *Mason* specifically held that reversal for knowingly using false testimony is proper even where the defense had an opportunity to correct the error.  293 F.3d at 829.[1]

At this point, it is important to analyze the State's admission in its responses of October 27, 2016 and October 31, 2016, within the context of the evidence which the State has submitted in support of those responses.  The State's  two assertions, as accepted by the District Court, are that 1) Sidney Dobronich "was at times alert and oriented but could become disoriented quickly when in a foreign environment and/or exposed to psychological pressure;"  and 2) "that one may both (i) suffer from dementia and (ii) from time to time experience moments of lucidity."  These assertions, as written, can be used to describe virtually any individual, and as such, is patently meaningless.  The legally significant questions in the context of the State's assertions are these: (1) Whether Sidney Dobronich was mentally competent to authorize the transactions conducted on his behalf by petitioner in February and March of 2013 (transactional competence); and (2) whether Sidney Dobronich was mentally competent to testify as to his authorizations to those transactions, as he attempted to do on March 27, 2013 and again on June 25, 2013 (testimonial competence).

In light of the States' significant actions in submitting to the District Court as evidence, without qualification, the transcript of the February 24, 2015 proceedings in the matter of the Successions Proceedings and the Judgment issued therewith; the State of Louisiana, in asserting that Sidney Dobronich "was at times alert and oriented" has admitted by clear inference, the following:  That Sidney Dobronich had BOTH transactional and testimonial mental competence

---

[1] In *U.S. v. Mason*, the Fifth Circuit reversed a criminal defendant's convictions regarding charges for possession with intent to distribute crack cocaine and conspiracy.  293 F.3d at 826.  The reversal was predicated on the testimony regarding the government's primary witness, who falsely testified that he did not enter into a plea agreement with the government and the government failed to correct the witness's misrepresentation.  *Id.* at 828.  In addressing the government's argument as to the defense counsel's opportunity to correct the error, the court specifically explained that the defense counsel's ability and potential failure to correct the error had no effect on the government's ability to do so and would not render the government's violation as harmless error.  *Id.* at 829.

on July 18, 2013.  Even more significant, from the State's own admissions, was that the State of Louisiana has always contended that Sidney Dobronich had both transactional and testimonial mental competence on July 18, 2013.

From there, it proceeds that Dr. Garriga's expert testimony was false and that the State of Louisiana knew it was false when it submitted said testimony to the District Court.  As stated in Dr. Garriga's report, major neurocognitive dementia as a "slow, step wise progression".  Based on that "slow, step wise progression," Dr. Garriga opined that the severity of Mr. Dobronich's dementia, as noted by Dr. Verrette, was of such a nature that it had to have been present in February and March of that year.  A necessary predicate to Dr. Garriga's analysis is that Sidney Dobronich's cognitive functions had to have been better in February and March of 2013 than they were later in July of that year.  Because the State has admitted that Sidney Dobronich had both transactional and testimonial mental competence on July 18, 2013, as per Dr. Garriga's analysis, his transactional and testimonial competence, as it existed in February and March of 2013, could not have been affected by the "slow, step wise progression" of the "major neurocognitive dementia" that she found had impacted him in July of that same year.  Furthermore, because the State has effectively admitted that it was aware, at all relevant times, that Sidney Dobronich had transactional and testimonial mental competence on July 18, 2013, it also stands as an admission that it was aware of this transactional and testimonial mental competence in February and March of 2013.  As such, the testimony of Dr. Garriga is clearly false and the State of Louisiana knew it was false.

Evidence that directly makes this point is the testimony of Det. Montgomery and the purported "victims" of petitioner on February 24, 2015 in the Successions Proceeding in which they testified to his general mental competence throughout 2013 and up until his death in March of 2014, including on March 18, 21 and April 2, 2013 (Det. Montgomery) and March 28 (George Dobronich) at St. Tammany Parish Hospital.  Additionally, this point is also illuminated by the testimony of Forest Dobronich on February 24, 2015 in which he specifically "disagree[d]" with the opinion of Dr. Verrette, the very opinion that his own attorney submitted to the District Court to have a judgment prepared declaring Sidney Dobronich incompetent to testify on August 27,

17

2013 in the Civil Revocation Action (again, contrary to the State's admitted understanding of the testimonial mental competence of Sidney Dobronich at that time).  Further, to the extent that George and Forest Dobronich, and their attorney, were confronted with the Verrette Report in the Succession Proceeding, on February 24, 2015, their attorney objected to the admission of said report on the basis of unreliable hearsay.  Again, as acknowledged by the State of Louisiana in its responses to the petitioner's claims, and the State's necessarily close relationship and coordination with these individuals as the "victims" of petitioner; these inconsistencies were known by the State of Louisiana at all relevant times.

Perhaps one of the more insidious signs of the malfeasance of the State of Louisiana with regard to the submission of Dr. Garriga's testimony is the acknowledgement that Dr. Garriga's opinion was generated on the basis of "records review only", despite the clear availability of the Nephews and Det. Montgomery for live interviews and despite the fact that a legally reliable forensic psychiatric evaluation under *Daubert* clearly contemplate information gathering "from as many sources as possible." *See In re Succession of Pardue*, 40,177 (La. App. 2 Cir. 11/8/05), 915 So. 2d 415, 420 (emphasis added); *see also Succession of Werner v. Zarate*, 2007-0829 (La. App. 1 Cir. 12/21/07), 979 So. 2d 506, 509.

The State of Louisiana specifically attempts to argue that Dr. Garriga's testimony and report are not false due to the limitation of said testimony and reports to the sum of the records presented:

> Initially, the caption of the report authorized by Dr. Garriga is "Forensic Psychiatric Evaluation of Sidney Dobronich *by Records Review Only*.  (emphasis supplied).  It consists of two parts:  a summary of the records reviewed and an "assessment" along with a "basis for opinion".
>
> The petitioner argues that the records reviewed by Dr. Garriga are contradicted by other evidence which was not reviewed by Dr. Garriga.  The petitioner does not argue that Dr. Garriga misrepresented the records she did review.  Nor does the petitioner argue the Dr. Garriga's opinion is unsupported by the records she actually reviewed.

**Ex. 3 (Appx. at 111-112).**  Far from being exculpatory in any way, this brazenly arrogant statement is damning.  Dr. Garriga's report was purportedly not false because she did not know it was not false:  the State of Louisiana knew it was false.  The State of Louisiana controlled the

18

evidence reviewed by Dr. Garriga, specifically allowing her only to review certain evidentiary materials and not permitting an interview of the witnesses, who testified unambiguously to Sidney Dobronich's transactional and testimonial mental competency on February 24, 2015. Given the admissions that the State of Louisiana "never contended that Sidney Dobronich was completely incompetent on a 24/7 basis" and that Sidney Dobronich was "at times alert and oriented", the State of Louisiana deliberately prevented Dr. Garriga from interviewing Det. Montgomery, George and Forest Dobronich in order to achieve a desired outcome regarding her opinion.  As such the "records only" limitation is conclusive proof of the malfeasance of the State of Louisiana in submitting Dr. Garriga's testimony to the District Court as evidence against the petitioner in the criminal matter.

**(b)** **Claims II, III and IV:  Due Process Clause, Compulsory Process Clause; Spoliation and Unconstitutional Vagueness of La. R.S. 14:93.4 as Applied to Petitioner.**

As mentioned above, the State's knowing misrepresentations regarding Sidney Dobronich's transactional and testimonial mental competence, while most directly pertaining to the submission of the knowingly false report of Dr. Garriga; is also the foundation for all other claims submitted by petitioner herein.

With regard to Claim II, petitioner extensively argued and briefed the District Court, this Court and the Louisiana Supreme Court as to how the circumstances of this case implicated a violation of the Compulsory Process Clause, and the State's participation in preventing the favorable testimony of Sidney Dobronich from being presented on petitioner's behalf.  In responding to the previous arguments of petitioner, the State unequivocally asserted to the District Court, and again to the Louisiana Supreme Court, that Sidney Dobronich was "[not] was he capable of consenting to this transaction because he was suffering from dementia" and asserted numerous times in open court on January 29, 2015 that Sidney Dobronich was "incompetent to testify".   The District Court specifically relied upon the State's assertion when it explicitly held in open court that Sidney Dobronich was not competent to testify.  Arguably, this Court, as well as the Louisiana Supreme Court accepted the District Court's finding that Sidney Dobronich was incompetent to testify, in accordance with the jurisprudence that the

19

Compulsory Process Clause applies only as to "competent" witnesses. *See Washington v. Texas,* 388 U.S. 14, 23, n.21, 87 S. Ct. 1920 (1967).

In its October 27, 2016 response to the petitioner's claims, the State of Louisiana accepted the sworn testimony in favor of upholding Sidney Dobronich's July 18, 2013 handwritten will, and in particular Forest Dobronich's testimony that "from the time he moved in [April 2, 2013] until the time he died [March 24, 2014]", that Sidney Dobronich was "in good shape mentally" and that "really he was competent". With that response, the State of Louisiana essentially made a judicial confession that Sidney Dobronich was mentally competent to testify, in direct repudiation of its prior position that was previously accepted by the District Court and upheld by this Court.

Based on this apparent concession by the State of Louisiana regarding this testimonial mental competence, the District Court relied solely on the fact that the petitioner, through her counsel at the time, initially moved to have Sidney Dobronich's testimony excluded in October of 2013, to find an absence of any Compulsory Clause violation on behalf of the State of Louisiana. This analysis erroneously ignores the uncontroverted fact that the State of Louisiana, as per its October 27, 2016 submission to this Court regarding Mr. Dobronich's mental capacity, committed fraud by omission in its statements to this Court on December 12, 2013, when it joined in petitioner's Motion to Exclude Sidney Dobronich's testimony. Further, the State's avowed position of October 27, 2016 regarding Mr. Dobronich's mental capacity, taken at face value, is tantamount to an admission of fraudulently inducing petitioner's prior counsel to seek to exclude Mr. Dobronich's testimony based on circumstances not known by petitioner or by this Court, but known by the State. As such, the District Court's sole reliance on the fact that the Motion to Exclude Sidney Dobronich's testimony was initiated by petitioner is patently erroneous. More significantly, and ominously, the admittedly fraudulent statements made by the LaAG Office to the District Court in support of the motion to exclude Sidney Dobronich's testimony raise the ominous question as to whether that Office was aware of, or even intended to procure the testimony of Dr. Garriga at that time. In any event, the District Court's ruling at to

20

an absence of any Compulsory Process Clause violation, as stated in Claim II of petitioner's claims for post conviction relief, is erroneous.

With regard to Claim III, potential spoliation of an additional exculpatory statement of Sidney Dobronich by Det. Montgomery, the State's October 27, 2016 response, again, raises this claim to an evidentiary level that has erroneously been disregarded by the District Court. The same evidence that established as conclusive Sidney Dobronich's transactional and testimonial mental competence on July 18, 2013, and all times prior thereto, also established such competence up until the time of his death, when he could have, at any time, ended this prosecution against petitioner herein. Far from being a mere technical question of the accuracy of Dr. Garriga's testimony; the evidence naturally drives the additional questions myopically avoided by the State of Louisiana and the District Court, but germane to this inquiry: if Sidney Dobronich had transactional mental competence and authorized the transactions at issue in this prosecution, and had testimonial mental competence; was he wrongfully prevented from so testifying as such. Further, was he, in fact, wrongfully and illegally coerced to cooperate with the prosecution, and with various actors in the civil litigation, against his will.

Specifically, in light of his sworn exculpatory statements of March 27, 2013 and June 25, 2013 testimony, the latter being under circumstances clearly indicative of Sidney Dobronich overcoming coercion on the part of his nephews; it is probable that Sidney Dobronich had attempted to make additional statements favorable to the petitioner that were deliberately concealed. The evidence is clear that such illegal suppression was done on the part of the nephews, who clearly and unambiguously sought to have Sidney Dobronich declared incompetent to testify and overtly thwarted petitioner's numerous attempts to obtain a sworn statement from him. The evidence is also clear that such a statement was probably made to Det. Montgomery on March 21, 2013, being the only statement of the three taken by Det. Montgomery that was not recorded. Given the totality of the circumstances, as more fully set forth in the previous writ application to this Court, and the fact that Sidney Dobronich's March 27, 2013 affidavit and June 25, 2013 must be credited as having been made by someone with testimonial mental competence; the District Court's finding of a lack of sufficient evidence to

21

support a spoliation claim regarding Det. Montgomery's March 21, 2013 interview with Sidney Dobronich was manifestly erroneous.

Finally, with regard to Claim IV, petitioner asserted that the position espoused in the testimony of Dr. Garriga (and the position apparently taken by the state in its averments to the District Court) regarding the mental competence of Sidney Dobronich were conditions precedent for sustaining a constitutionally viable prosecution against Petitioner and placing the State in the position to obtain a guilty plea from Petitioner in the first place. Further, allowing the State to change its position to accommodate the February 24, 2015 testimony, and to assert that Sidney Dobronich had transactional and testimonial mental competence specifically on July 18, 2013 (and at all times prior to that date as per the analysis of Dr. Garriga); rendered its prosecution against petitioner, without specific testimony that the transactions at issue were not authorized, rendered La. R.S. 14:93.4 unconstitutional as applied.

The State argues that Petitioner's claim that La. R.S. 14:93.4 is unconstitutional as applied, made by petitioner in response to the State's revision of its position on October 27, 2016 regarding Mr. Dobronich's mental capacity; was waived by plaintiff's guilty plea of December 17, 2014. The District Court accepted without any scrutiny, the position of the State and found a lack of evidence to suggest that the State of Louisiana had changed its position on October 27, 2016 regarding the mental competence of Sidney Dobronich. With utmost respect to the District Court, given the evidence in the form of the pleadings and statement in open court of the LaAG Office with respect to the mental competence of Sidney Dobronich, the evidence speaks for itself, and the District Court's ruling on this point is patently erroneous.

**(2)** **The District Court Erred in Failing to Compel Production of the Transcript of the Testimony of Dr. Garriga.**

In addition to denying all four claims for post conviction relief submitted by petitioner, the District Court erred by effectively denying petitioner's Motion to Compel Production of the transcript of the December 16, 2014 testimony of Dr. Garriga regarding the specific nature of the "major neurocognitive dementia" purportedly present in Sidney Dobronich at all relevant times herein. While petitioner avers that the evidence submitted heretofore is conclusive as to the nature of Dr. Garriga's opinion regarding Sidney Dobronich's transactional and testimonial

22

mental competence at all relevant times in these proceedings; petitioner further avers that Dr. Garriga specifically and unequivocally testified that the nature of the major neurocognitive dementia was such that Sidney Dobronich did not have, and could not have had ANY lucid moments or any instances of transactional or testimonial mental competence at any time "prior to February 2013 and up until his death in March of 2014.  To the extent that this Court agrees with the District Court as to the State's position regarding the mental competence of Sidney Dobronich, which position has been placed squarely at issue herein; the District Court has erred in not requiring the State of Louisiana to produce the transcript of the December 16, 2016 testimony of Dr. Garriga.

It is well settled jurisprudence that petitioner has a right under the Due Process Clause of the United States Constitution to have a record of his criminal proceedings sufficient to allow for an "adequate" and "meaningful" appellate review of those proceedings.  *See Draper v. Washington*, 372 U.S. 487, 495 (1963); *Griffin v. Illinois*, 351 U.S. 12, 20 (1956) (recognizing a criminal defendant's right to "adequate" and "effective" appellate review); *U.S. v. Selva*, 559 F.2d 1303, 1305-06 (5th Cir. 1977); *U.S. v. Charles*, 313 F.3d 1278, 1283 (11th Cir. 2002)(recognizing a due process right of a criminal defendant to have a record of his criminal proceedings sufficient to " 'accord effective appellate review' of the issues raised on appeal").

In this case, the State of Louisiana has produced verbatim transcripts of the trials in the two accompanying civil proceedings as well as petitioner's December 17, 2014 guilty plea and the motions and sentencing hearing of January 29, 2015 and the December 12, 2013 hearing on the motion to exclude Sidney Dobronich's testimony.  To the extent that the Court would now indulge the State's oxymoronic position that Sidney Dobronich was mentally incompetent, except when he was mentally competent, as the District Court has done; that transcript is now critical to petitioner's ability to appeal the District Court's denial of her claims for post conviction relief.  Undersigned counsel's affidavit is not merely a proffer of anticipated testimony, it is a statement of  Dr. Garriga's actual testimony in the Criminal Proceedings.  The affidavit provides that Dr. Garriga specifically denied that Sidney Dobronich had any transactional or testimonial mental competence whatsoever, during the time in which the

23

transactions at issue in the criminal proceedings were performed.  The affidavit also spells out undersigned counsel unsuccessful attempts at obtaining said transcript.  As that testimony squarely refutes the averments of the State of Louisiana and the District Court's acceptance of same, the District Court's denial of production of that transcript severely hinders petitioner's ability to a meaningful appeal.  As such, the District Court erred in not compelling the State of Louisiana to produce the December 16, 2014 testimony of Dr. Garriga in the criminal proceedings.

## CONCLUSION and PRAYER

**WHEREFORE,** based on the above, applicant prays for, and is entitled to, post conviction relief under La. C. Cr. P. Articles 926, *et seq.* arising from several distinct violations of the Due Process Clause and Compulsory Process Clause of the United States Constitution and Louisiana Constitution.  Additionally, and alternatively, to the extent that this Court accepts the averments of the State of Louisiana and the holdings of the District Court regarding the State's "revised" position on the mental competence of Sidney Dobronich; applicant is entitled to compel the deposition testimony of Dr. Michelle Garriga, in order to meaningfully appeal the rulings of the District Court below.

Respectfully Submitted,

**CLAIBORNE W. BROWN (25594)**
1070-B West Causeway Approach
Mandeville, LA  70471
Telephone:  (985) 845-2824
Facsimile:  (985) 246-3199
*cwbrown@cwbrownlaw.com*

24

## CERTIFICATE OF SERVICE

I do hereby certify that I have served a copy of the above and foregoing pleading on all counsel of record herein by hand delivery and/or mailing same by electronic mail or United States Mail, properly addressed and first class postage prepaid, on this 26th day of May, 2017.

**CLAIBORNE W. BROWN (25594)**
1070-B West Causeway Approach
Mandeville, LA  70471
Telephone:  (985) 845-2824
Facsimile:  (985) 246-3199
*cwbrown@cwbrownlaw.com*

25



Office Of The Clerk
## Court of Appeal, First Circuit
State of Louisiana
www.la-fcca.org

**Rodd Naquin**
**Clerk of Court**

### Notice of Writ

April 10, 2017

Post Office Box 4408
Baton Rouge, LA
70821-4408
(225) 382-3000

2017-KW-0487

State Of Louisiana
    Versus
Darnay Thibodaux

TO:   Claiborne W. Brown          Matthew Caplan
      1070-B West Causeway Appi    701 N. Columbia Street
      Mandeville, LA 70471         Covington, LA 70433
                                   mcaplan@22da.com

      Warren LeDoux Montgomery
      701 N. Columbia Street
      Covington, LA 70433
      wmontgomery@22da.com

Re: 22nd Judicial District Court, No. 5436381, "C"

The application for writs by **Darnay Thibodaux** in the matter entitled and bearing the Court of Appeal Docket number as shown above in which you are listed as counsel of record has been received and filed.

Cordially yours,

RODD NAQUIN
CLERK OF COURT

cc:   Hon. Richard A. Swartz      22nd Judicial District Court

# STATE OF LOUISIANA

# COURT OF APPEAL, FIRST CIRCUIT

STATE OF LOUISIANA

VERSUS

DARNAY THIBODAUX

NO.  2017 KW 0487

MAY 2 5 2017

In Re:   Darnay Thibodaux, applying for supervisory writs, 22nd
         Judicial District Court, Parish of St. Tammany, No.
         543,638-1.

**BEFORE:   WHIPPLE, C.J., GUIDRY AND McCLENDON, JJ.**

**WRIT NOT CONSIDERED.**  Relator failed to comply with Local
Rules of the Court of Appeal, First Circuit, Rules 8(G) and (H)
by failing to include an electronic signature in the
application. Supplementation of this writ application and/or an
application for rehearing will not be considered. See Uniform
Rules of Louisiana Courts of Appeal, Rules 2-18.7 & 4-9.  In the
event relator elects to file a new application with this Court,
the application shall be filed on or before July 31, 2017.  Any
future filing on this issue should include the entire contents
of this application, the missing item noted above, and a copy of
this ruling.

                          **PMc**
                          **VGW**
                          **JMG**

COURT OF APPEAL, FIRST CIRCUIT

_____
     DEPUTY CLERK OF COURT
        FOR THE COURT

# STATE OF LOUISIANA

# COURT OF APPEAL, FIRST CIRCUIT

STATE OF LOUISIANA

NO.   2017 KW 0736

VERSUS

JUL 2 4 2017

DARNAY THIBODAUX

In Re:   Darnay Thibodaux, applying for supervisory writs, 22nd Judicial District Court, Parish of St. Tammany, No. 543,638-1.

BEFORE:   THERIOT, CHUTZ AND PENZATO, JJ.

WRIT DENIED.

AHP
MRT
WRC

COURT OF APPEAL, FIRST CIRCUIT

DEPUTY CLERK OF COURT
FOR THE COURT



**Supreme Court**
STATE OF LOUISIANA
New Orleans

CHIEF JUSTICE
   BERNETTE J. JOHNSON     Seventh District

JUSTICES
   GREG G. GUIDRY          First District
   SCOTT J. CRICHTON     Second District
   JAMES T. GENOVESE    Third District
   MARCUS R. CLARK       Fourth District
   JEFFERSON D. HUGHES III  Fifth District
   JOHN L. WEIMER        Sixth District

JOHN TARLTON OLIVIER
CLERK OF COURT

400 Royal St., Suite 4200
NEW ORLEANS, LA 70130-8102

TELEPHONE (504) 310-2300
HOME PAGE http://www.lasc.org

August 24, 2017

Claiborne Wood Brown Esq.
1070B W Causeway Approach
Mandeville, LA 70471

Re:  2017 - KP - 1452

State of Louisiana
vs.
Darnay Thibodaux

This is to advise that the pleadings in the above entitled matter were received and filed on 8/22/2017.
The filing was Electronically Filed on 8/22/2017. The case bears the above number on the Docket of this
Court.

By copy of this letter, all counsel are advised that in cases not involving a request for a stay or priority
treatment an opposition or response may be filed without leave of court within fifteen days of the filing
of this writ application.

John Tarlton Olivier
Clerk of Court

JTO: ss
ccs: Hon. Jeffrey Martin Landry
     Matthew Caplan Esq.
     Winston Eric White Esq.
     Hon. Richard A. Swartz
     Hon. Melissa R. Henry, Clerk
     Hon. Rodd Naquin, Clerk
     White, Winston Eric, Esq.

     Court of Appeal, First Circuit, Number(s)     2017 KW 0736
     22nd Judicial District Court  Div. "C" Number(s)   543,638-1

SUPREME COURT

STATE OF LOUISIANA

* * * * * * * *

DOCKET NUMBER:  2017-KP-1452

* * * * * * * *

DARNAY THIBODAUX

versus

KEVIN HIDALGO

* * * * * * * *

APPLICATION FOR SUPERVISORY REVIEW BY
DARNAY THIBODAUX FROM THE DENIAL OF WRIT BY
THE LOUISIANA FIRST CIRCUIT COURT OF APPEALS
DOCKET NO. 2017-KW-0736
PANEL JUDGES TERRIO, CHUTZ, PENZATO PRESIDING

* * * * * * * *

JUDGMENT OF THE 22nd JUDICIAL DISTRICT COURT
PARISH OF ST. TAMMANY, STATE OF LOUISIANA
DOCKET NO. 543638-1,
THE HONORABLE RICHARD A. SWARTZ PRESIDING

* * * * * * * *

SUPPLEMENT TO
ORIGINAL APPLICATION OF DEFENDANT/PETITIONER
DARNAY THIBODAUX

Defendant/Petitioner

* * * * * * * *

Respectfully submitted,


CLAIBORNE W. BROWN (25594)
1070-B West Causeway Approach
Mandeville, LA  70471
Telephone:  (985) 845-2824
Facsimile:  (985) 246-3199

## S.C. RULE X(2)(D) VERIFICATION

I, **CLAIBORNE W. BROWN,** under penalty of perjury and contempt of court, do hereby declare that on behalf of my client, DARNAY THIBODAUX, I have supplemented the Original Application for Supervisory Review to the Supreme Court of the State of Louisiana based on a denial of an application for supervisory review by the Louisiana First Circuit Court of Appeals as to a decision of the Honorable Richard A. Swartz, Judge, 22nd Judicial District, regarding the claims for post conviction relief of DARNAY THIBODAUX and that all allegations in this Writ Application are true and correct to the best of my knowledge, information and belief.

**THAT I DO HEREBY CERTIFY** that the District Court and all counsel have been notified of this Supplement to the Writ Application and that all concerned have been served with these documents.

**THAT I DO HEREBY CERTIFY** that a copy of this Supplement to the Writ Application has been filed with the First Circuit Court of Appeal in Baton Rouge, Louisiana, and sent to the Honorable Richard A. Swartz, and the following counsel of record by hand delivery and/or by depositing same in the U. S. Mail, postage prepaid and properly addressed this 12th day of April, 2018.

TRIAL COUNSEL FOR THE STATE OF LOUISIANA:
Office of the District Attorney for the 22nd Judicial District
Mr. Matthew Caplan, Assistant District Attorney
701 N. Columbia Street
Covington, LA 70433
Telephone:  (985) 809-8383

COUNSEL FOR THE LOUISIANA ATTORNEY GENERAL'S OFFICE
Office of the Louisiana Attorney General
Mr. Winston White, Assistant Attorney General
1885 N. Third Street
Baton Rouge, LA 70804-9005
Telephone:  (225) 326-6200

PRESIDING JUDGE, 22nd JUDICIAL DISTRICT COURT:
The Honorable Richard A. Swartz
22nd Judicial District Court
701 N. Columbia Street
Covington, LA 70433
Telephone:  (985) 809-5315

**CLAIBORNE W. BROWN**

ii

# I N D E X

**PAGE**

SUPPLEMENTAL TABLE OF AUTHORITIES……………………………………… iv

SUPPLEMENTAL STATEMENT OF THE CASE…………………………………   1

SUPPLEMENTAL ASSIGNMENT OF ERROR…………………………………… 3

SUPPLEMENTAL SUMMARY OF ARGUMENT…………………………………   3

SUPPLEMENTAL ARGUMENT……………………………………………………   3

SUPPLEMENTAL CONCLUSION…………………………………………………   7

SUPPLEMENT APPENDIX

      Transcript of Dr. Garriga's Testimony,
      dated December 16, 2014

## SUPPLEMENTAL TABLE OF AUTHORITIES

**CASES**                                                                          **PAGE**

*Avondale Indus. Inc. v. NLRB,*
90 F.3d 955 (5th Cir. 1996)……………………………………………………… 5

*Draper v. Washington,*
372 U.S. 487, 495 (1963)………………………………………………………  6

*Griffin v. Illinois,*
351 U.S. 12 (1956)………………………………………………………………  6

*Marler v. 22nd J.D.C,*
93-2394 (La. App. 1 Cir. 11/10/94),
645 So. 2d 821………………………………………………………………  4, 5

*Pesnell v. Sessions,*
51,871 (La. App. 2 Cir. 2/28/2018)………………………………………4, 5, 6

*United States v. Charles,*
313 F.3d 1278 (11th Cir. 2002)…………………………………………………  6

*United States v. Selva,*
559 F.2d 1303 (5th Cir. 1977)…………………………………………………  6

## CONSTITION AND STATUTES

U.S. Const. Amend V, XIV………………………………………………………  6

La. Const. of 1974………………………………………………………………  6

La. R.S. 37:2554…………………………………………………………………  2

La. Admin. Code., Title 46, Part XXI, § 511……………………………………1, 2

iv

**SUPPLEMENTAL CASE STATEMENT**

On Friday, April 6, 2018, the State of Louisiana provided petitioner with a copy of what it purports is a transcript of the testimony of Dr. Michelle Garriga, given on December 16, 2014 and the issue of the Second Assignment of Error to this Writ Application herein.    The "Reporter's Certificate" provides, as follows:

> I, Karen Carite Jenkins, CCR, Certified Court Reporter, Certificate No. 91227, which is at this time current and in good standing, Official Court Reporter in and for the Parish of St. Tammany, State of Louisiana, do hereby certify the the [sic] foregoing testimony taken by Oneita Graham on December 16, 2014, on said date before the Honorable Richard Swartz, Judge Presiding, Division "C", was transcribed to the best of my ability and understanding from the backup recordings of Oneita Graham, Official Court Reporter, in and for the Parish of St. Tammany.

**Supp. Appx.; Tr. at p.50.**

The court reporter who originally recorded the testimony of Dr. Garriga, Ms. Oneita Graham (hereinafter, "the recording court reporter") is retired and is no longer certified as a Certified Court Reporter under Louisiana law, was previously certified in the "penwriter" method of reporting as per Louisiana Administrative Code, Title 46, Part XXI, §511; and had recorded the December 17, 2014 testimony of Dr. Garriga in the penwriter method of recording.

The court reporter who transcribed the proceedings, Ms. Karen Jenkins, (hereinafter, "the transcribing court reporter") is not certified in the penwriter method of recording, but is certified only in the "stenographic" method of reporting as per Louisiana Administrative Code Title 46, Part XXI, § 511.    The transcribing court reporter has advised she is not aware of anyone else who is certified in the penwriter method of reporting; and that, per the direction of the Judicial Administrator of the 22nd Judicial District Court, transcription from the backup recordings is the acceptable practice for Certified Court Reporters to transcribe the raw recordings reported in the penwriter method.    On Monday, April 9, 2018; undersigned counsel lodged an objection to the certification and transcription procedure of the December 16, 2014 testimony of Dr. Garriga in this case.    Undersigned reiterates the following objections to this Court:    1) the Reporter's Certificate fails to identify the method of reporting for which the recording court reporter is certified, *see* La. Admin. Code., Title 46, Pt. XXI, §511; 2) the Reporter's Certificate fails to

1

identify the method of reporting for which the transcribing court reporter is certified, *see id.*; and 3) the transcription process identified in the Reporter's Certificate is not specifically authorized by Statute or Regulations, particularly the Louisiana Administrative Code, Title 46, Part XXI, Chapter 5.  *Id.*; *see also* La. R.S. 37:2554(C) (prohibiting "change" of systems of reporting by certified court reporters).

      With respect to the substance of the purported transcript of Dr. Garriga's December 14, 2014 testimony, the transcript provides as follows:

> Q.     . . . . Can you have a neurocognitive disorder and still have capacity?
>
> A.     Yes.

**Supp. Appx.; Tr. at p.32, ll. 20-23.**

      With utmost respect to the transcribing court reporter, who was not present during the testimony and was given the arguably difficult task of blindly determining testimony from an audio recording of undetermined quality (and without the benefit of "readable" recorder notes); the answer to that particular question was "No".  Furthermore, the testimony included AT LEAST one follow-up question to Dr. Garriga's "No" response in the previous question, confirming said "No" response; which question(s) and answer(s) do not appear anywhere following the initial "No" response (transcribed as a "Yes" response in the purported transcript).[1] Again, while not in any way impugning the integrity of the transcribing court reporter, the nature of the errors and the arguably difficult methodology employed in transcription calls into question the accuracy of the entire transcript.

      As such, petitioner herein objects specifically to the accuracy of the portion of the transcript cited above, and to the accuracy of the transcript as a whole.  Furthermore, undersigned counsel, on behalf of petitioner, re-affirms his initial assertions in the Writ Application to this honorable Court regarding the unequivocal nature of Dr. Garriga's testimony pertaining to Mr. Dobronich's mental competence, testimonial and transactional capacity.

---

[1] With regard to the appropriate proffer, undersigned avers that affidavits have not been attached to the Supplemental Writ Application, per Rule X, Pt. 4, §6(f).  Undersigned avers that affidavits of petitioner and her husband, Mr. Antione Dufrene, who was present at the proceedings on December 16, 2014, will be submitted to the Court upon instruction.

In petitioner's Motion to Compel "the transcript of the December 16, 2014 testimony of Dr. Michelle Garriga", petitioner's motion also included production "of all raw audio and notes from which a transcript can be produced." **Appx. 120-21.** As more fully set forth below, petitioner herein submits that the State's production of the transcript on April 6, 2018, petitioner's specific objections to the certification and accuracy of said transcript, and the pendency of the issue of production before this Court; petitioner is entitled to an order from this Court directing the State to produce said requested raw audio and notes, or a remand to the district court directing such production.

## SUPPLEMENTAL ASSIGNMENT OF ERROR

**The Purported Transcript of the Testimony of Dr. Garriga Having Been Produced, Petitioner's Specific Objections to the Certification and Accuracy Thereof Entitle Her to Production of the Raw Audio and Reporter Notes of Said Testimony, as Originally Requested in Her Motion to Compel Production to the District Court.**

## SUPPLEMENTAL SUMMARY OF ARGUMENT

**Supplemental Specification No. 2:** The transcript of Dr. Garriga's December 16, 2014 testimony has been produced on April 6, 2018, to which the petitioner has supplemented her Original Writ Application with a copy of said transcript and has made specific objections as to the certification and material accuracy of the transcript. As the initial Motion to Compel the transcript Testimony of Dr. Garriga, filed by the petitioner with the District Court on November 15, 2016, also requested production of "all raw audio and notes from which a transcript can be produced"; petitioner is entitled to production of said requested audio and notes. Specifically, petitioner is seeking access to these records pursuant to her Due Process Rights to adequate, meaningful and effective appellate review of her criminal proceedings.

## SUPPLEMENTAL ARGUMENT

**(2)**   **The Purported Transcript of the Testimony of Dr. Garriga Having Been Produced, Petitioner's Specific Objections to the Certification and Accuracy Thereof Entitle Her to Production of the Raw Audio and Reporter Notes of Said Testimony, as Originally Requested in Her Motion to Compel Production to the District Court.**

Now that the State has produced a purported transcript of the December 16, 2014 testimony of Dr. Garriga, petitioner is entitled to additional production of the raw audio and reporter notes of said testimony. While not within the context of the particular legal predicate at

3

hand, Louisiana law has addressed the specific issue of a criminal defendant's access to an audio recording of his/her criminal proceedings. The case of *Marler v. 22ⁿᵈ J.D.C*, 93-2394 (La. App. 1 Cir. 11/10/94), 645 So. 2d 821, provides the general provision that a criminal defendant is entitled to access to his criminal file and cannot be denied access to same after his conviction becomes final. *Id.* at p.3, 645 So. 2d at 822. The court in *Marler* did, however, find that the criminal defendant in that case was ultimately not entitled to the raw audio of the trial proceedings:

> In the instant case, after Marler's conviction became final, he requested from the clerk of court various portions of his criminal file. Pursuant to that request, the clerk of court forwarded to Marler his entire criminal file, including a certified copy of the transcript of his criminal trial. Thus, it is clear that Marler has obtained a full reproduction of the proceedings in the trial court, and the actual tape recordings of the trial would serve no useful purpose.

*Id.* at p.3, 645 So. 2d at 822-23. However, critical to the application of the holding in *Marler* is the court's citation to the relevant contents of plaintiff's assertions as to his right to access to the raw audio recording of his criminal proceedings:

> 1.   The tapes are crucial to plaintiff's pursuit of post-conviction remedies;
>
> 2.   The trial court previously granted plaintiff's motion for production of documents relative to his criminal conviction, including "all tangible evidence and things, as well as a copy of all other data compilations from which information could be obtained . . .;
>
> 3.   The Louisiana Constitution and the Fourteenth Amendment to the United States Constitution provide litigants with equal protection of the law, due process, and access to the courts.

*Id.* at p.2, 645 So. 2d at 822. What is conspicuously absent from plaintiff's pleading in the *Marler* decision was 1) a specific objection to the accuracy of the transcript that was provided, 2) a proffer as to the specific inaccuracy of the provided transcript, and 3) a showing as to the materiality of the proffered inaccuracy. *See id.*

In the recent Second Circuit case of *Pesnell v. Sessions*, 51,871 (La. App. 2 Cir. 2/28/2018), the court examined the plaintiff's right of access to the raw audio recording of his criminal trial with the context of the Louisiana Public Records Law. In that case, the plaintiff

4

noted several incendiary comments made by the prosecutor in his closing argument, and objections to said comments by his defense counsel, were not reflected in the transcript of the proceedings. *Id.* at p.5. The court found that the plaintiff stated a cause of action to challenge the constitutionality of the provision of the Louisiana Public Records Law that excluded audio recordings of state court proceedings from the provisions of the law. *Id.* at p.14. This constitutional challenge, if successful, would provide plaintiff with a right of access to the audio recording of his criminal proceedings under the Public Records Law. The significance of the court's holding in *Pesnell* to the extant case is that plaintiff's contention to a right of access to the raw audio of his criminal trial was accompanied by a specific objection to the accuracy of the transcript and a showing that the inaccuracy was material to a potential challenge of the validity of his criminal conviction.

At this point, it is important to recognize that, while the cases of *Marler* and *Pesnell* are instructive as to the analysis of a criminal defendant's right of access to an audio recording of his/her criminal proceedings, the context of that analysis within the Louisiana Public Records Law is NOT controlling in this case. It is without question that, in seeking a record or document held by the government, the status of the seeker as a "general member of the public" under the public records act is wholly distinct from the status of the seeker as a "criminal defendant" within a state provided direct appeal or collateral review proceedings. While not specifically provided for by Louisiana jurisprudence applying Louisiana Public Records Law; Federal FOIA jurisprudence provides that, in seeking a record under FOIA, the actual interest of the individual seeker is irrelevant. The only relevant interest analyzed as to the determination of the rights of the seeker to a particular record under FOIA is the interest of the seeker as a general member of the public, no more, no less. *See Avondale Indus. Inc. v. NLRB*, 90 F.3d 955, 958-59 (5th Cir. 1996). Presumably, this analysis applies to the Louisiana Public Records Law as well.

In this particular context, petitioner is NOT seeking production of the raw audio and notes of Dr. Garriga's testimony as a general member of the public under the Louisiana Public Records Law. As previously briefed to this Court, petitioner is seeking this record as a criminal defendant, within a statutorily provided collateral review proceeding, implicating her specific

5

interest in an adequate, meaningful and effective appellate review of her criminal proceedings, as guaranteed by the Due Process Clauses of the United States Constitution and the Louisiana Constitution of 1974.  *See Draper v. Washington*, 372 U.S. 487, 495 (1963); *Griffin v. Illinois*, 351 U.S. 12, 20 (1956); *U.S. v. Selva*, 559 F.2d 1303, 1305-06 (5th Cir. 1977); *U.S. v. Charles*, 313 F.3d 1278, 1283 (11th Cir. 2002).  It is this specific interest in adequate, meaningful and effective appellate review which is controlling:  the potential restrictions of the Louisiana Public Records Act, and the pending determination of the constitutionality thereof as reflected in *Pesnell*, is irrelevant to this Court's determination.

Similar to the circumstances in *Pesnell* (the contextual legal predicates notwithstanding), petitioner has identified specific inaccuracies in the transcript of Dr. Garriga's December 16, 2014 testimony, particularly as it relates to her testimony as to Mr. Dobronich's testimonial and transactional mental capacity.  Furthermore, the portion of transcript that has been challenged by petitioner is material to a critical issue before this Court in plaintiff's post conviction relief petition, whether the State materially misrepresented its position with respect to said transactional and testimonial capacity of Mr. Dobronich, which issue was essential to the prosecution of petitioner in this case.

Petitioner's Motion to Compel filed on November 15, 2016, seeking both "the transcript of the December 16, 2014 testimony of Dr. Michelle Garriga", and "all raw audio and notes from which a transcript can be produced", was arguably premature as to the latter request.  However, as the State has provided a copy of the transcript in question, and as the petitioner has objected to specific and material inaccuracies as to same; petitioner submits that request for the raw audio and notes has ripened into a question for which this Court can now consider.

It is unfortunate that the State finds itself in its current position, that it potentially cannot obtain a court reporter who can transcribe a recording, reported in an arguably outdated format, in compliance with statute and regulations regarding the preparation of said transcript.  Having said that, the State's predicament is due to no fault, at all, of petitioner, who stands to sustain material prejudice and has made a timely and legitimate request to fully pursue her rights to challenge her criminal conviction.  As such, within the context of this currently pending Writ

6

Application for post conviction relief, plaintiff herein supplements her original application to this Court to require the State to produce the raw audio and notes of the December 16, 2014 testimony of Dr. Garriga, as originally requested, in accordance with her Due Process rights of adequate, meaningful, and effective appellate review.

<u>**CONCLUSION and PRAYER**</u>

**WHEREFORE,** based on the above, applicant prays for, and is entitled to, post conviction relief under La. C. Cr. P. Articles 926, *et seq.* arising from several distinct violations of the Due Process Clause and Compulsory Process Clause of the United States Constitution and Louisiana Constitution. Additionally, and alternatively, to the extent that this Court accepts the averments of the State of Louisiana and the holdings of the District Court regarding the State's "revised" position on the mental competence of Sidney Dobronich; applicant is entitled to compel the deposition testimony of Dr. Michelle Garriga, in order to meaningfully appeal the rulings of the District Court below.

As a supplement to the previous paragraph, petitioner further prays that the State be required to produce the raw audio and notes of the December 16, 2014 testimony of Dr. Garriga, as originally requested in her November 15, 2016 Motion to Compel.

Respectfully Submitted,

**CLAIBORNE W. BROWN (25594)**
1070-B West Causeway Approach
Mandeville, LA 70471
Telephone: (985) 845-2824
Facsimile: (985) 246-3199
*cwbrown@cwbrownlaw.com*

7

## CERTIFICATE OF SERVICE

I do hereby certify that I have served a copy of the above and foregoing pleading on all counsel of record herein by hand delivery and/or mailing same by electronic mail or United States Mail, properly addressed and first class postage prepaid, on this 12th day of April, 2018.

**CLAIBORNE W. BROWN (25594)**
1070-B West Causeway Approach
Mandeville, LA  70471
Telephone:  (985) 845-2824
Facsimile:  (985) 246-3199
*cwbrown@cwbrownlaw.com*

# The Supreme Court of the State of Louisiana

**STATE OF LOUISIANA**

NO.   2017-KP-1452

**VS.**

**DARNAY THIBODAUX**

— — — — — —

IN RE: Darnay Thibodaux; - Defendant; Applying For Supervisory and/or Remedial Writs, Parish of St. Tammany,  22nd Judicial District Court Div. C, No. 543,638-1; to the Court of Appeal, First Circuit, No. 2017 KW 0736;

— — — — — —

**January 18, 2019**

Denied. See per curiam.

MRC

BJJ

JLW

GGG

JDH

SJC

JTG

Supreme Court of Louisiana
January 18, 2019

_____
Deputy  Clerk of Court
        For the Court

SUPREME COURT OF LOUISIANA

No. 17-KP-1452

JAN 1 8 2019          STATE OF LOUISIANA

v.

DARNAY THIBODAUX

ON SUPERVISORY WRITS TO THE TWENTY-SECOND
JUDICIAL DISTRICT COURT, PARISH OF ST. TAMMANY

*MRC*

PER CURIAM:

Denied. Relator's guilty plea waived all non-jurisdictional defects in the proceedings leading to her conviction. *State v. Crosby*, 338 So.2d 584, 586 (La. 1976).

Relator has now fully litigated her application for post-conviction relief in state court. Similar to federal habeas relief, *see* 28 U.S.C. § 2244, Louisiana post-conviction procedure envisions the filing of a successive application only under the narrow circumstances provided in La.C.Cr.P. art. 930.4 and within the limitations period as set out in La.C.Cr.P. art. 930.8. Notably, the Legislature in 2013 La. Acts 251 amended that article to make the procedural bars against successive filings mandatory. Relator's claims have now been fully litigated *in accord with* La.C.Cr.P. art. 930.6, and this denial is final. Hereafter, unless she can show that one of the narrow exceptions authorizing the filing of a successive application applies, relator has exhausted her right to state collateral review. The district court is ordered to record a minute entry consistent with this per curiam.